**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| JEROME CORSI,                                          ) | |
|                                                                  ) | |
|           Plaintiff,                                          ) | |
|                                                                  ) | |
| v.                                                               )           CASE NO. 1:18cv2885 (ESH) | |
|                                                                  ) | |
| ROBERT MUELLER, individually and in his    ) | |
| official capacity as Special Counsel,  FEDERAL ) | |
| BUREAU OF INVESTIGATION, NATIONAL  ) | |
| SECURITY AGENCY, CENTRAL                    ) | |
| INTELLIGENCE AGENCY, UNITED                ) | |
| STATES DEPARTMENT OF JUSTICE, JEFF  ) | |
| BEZOS, THE WASHINGTON POST, and        ) | |
| MANUEL ROIG-FRANZIA,                          ) | |
|                                                                  ) | |
|           Defendants.                                       ) | |
| _____ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>THE GOVERNMENT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    I.    Factual Background .................................................................................. 2

    II.    Statutory Background ............................................................................... 4

    III.    Procedural Background.............................................................................. 5

STANDARD OF REVIEW ......................................................................................... 7

ARGUMENT ............................................................................................................... 8

    I.    Plaintiff's Fourth Amendment Claim Should Be Dismissed Pursuant to
        Fed. R. Civ. P. 12(b)(1)............................................................................ 8

        A.    Legal Standards............................................................................. 8

        B.    Plaintiff Lacks Standing for His Challenge to Purported Section
                702 Surveillance and His Alternative Theory Is Patently
                Insubstantial. ...................................................................... 10

    II.    Plaintiff's Claim that the Special Counsel's Office Unlawfully Leaked
        Grand Jury Information Should Be Dismissed Pursuant to Fed. R. Civ. P.
        12(b)(6). ................................................................................................. 14

        A.    Plaintiff Does Not Plausibly Allege a Violation of Rule 6(e). ................. 14

        B.    Plaintiff Has Not Employed the Exclusive Procedure for a Private
                Litigant to Challenge an Alleged Rule 6(e) Violation. ............................ 18

    III.    Plaintiff's Claims for "Abuse of Process" and "Tortious Interference with
        Business Relationships" Should Be Dismissed for Lack of Subject Matter
        Jurisdiction and/or for Failure to State a Claim on Which Relief May Be
        Granted.................................................................................................... 20

CONCLUSION............................................................................................................ 22

## TABLE OF AUTHORITIES

### CASES

*Ali v. Rumsfeld,*
  649 F.3d 762 (D.C. Cir. 2011) .............................................................................. 21

*Art Metal-U.S.A., Inc. v. United States,*
  753 F.2d 1151 (D.C. Cir. 1985) ............................................................................ 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................... *passim*

*Barry v. United States,*
  865 F.2d 1317 (D.C. Cir. 1989) ................................................................. 15, 16, 19

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................ 7, 16

*Best v. Kelly,*
  39 F.3d 328 (D.C. Cir. 1994) ............................................................................... 10

*Clapper v. Amnesty Int'l,*
  568 U.S. 398 (2013) ...................................................................................... 4, 9, 11

*Curran v. Holder,*
  626 F. Supp. 2d 30 (D.D.C. 2009) ....................................................................... 13

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) .............................................................................................. 9

*Eagle Tr. Fund v. United States Postal Serv.,*
  No. 1:17-CV-2450 (KBJ), 2019 WL 451350 (D.D.C. Feb. 4, 2019) ................. 19, 20

*EEOC v. St. Francis Xavier Parochial Sch.,*
  117 F.3d 621 (D.C. Cir. 1997) ............................................................................... 8

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ............................................................................................ 20

*Gulf Coast Mar. Supply, Inc. v. United States,*
  867 F.3d 123 (D.C. Cir. 2017) ............................................................................... 8

*Hagans v. Lavine,*
  415 U.S. 528 (1974) .............................................................................................. 9

*Hamilton v. Stevens*,
  No. CV 18-1158 (CKK), 2019 WL 1046632 (D.D.C. Mar. 5, 2019) ...................................... 21

*Hui v. Castaneda*,
  559 U.S. 799 (2010) ...................................................................................................................... 21

*In re Sealed Case No. 98-3077*,
  151 F.3d 1059 (D.C. Cir. 1998) .............................................................................................. 15, 19

*In re Sealed Case No. 99-3091*,
  192 F.3d 995 (D.C. Cir. 1999) ................................................................................................ 15, 16

*Johnson v. Veterans Affairs Med. Ctr.*,
  133 F. Supp. 3d 10 (D.D.C. 2015) .............................................................................................. 20

*Klayman v. Nat'l Sec. Agency*,
  280 F. Supp. 3d 39 (D.D.C. 2017), *aff'd sub nom. Klayman v. Obama*,
  2019 WL 668267 (D.C. Cir. Feb. 5, 2019). ........................................................................ 10, 12

*Klayman v. Obama*,
  957 F. Supp. 2d 1 (D.D.C. 2013), *vacated and remanded on other grounds*,
  800 F.3d 559 (D.C. Cir. 2015). .................................................................................................. 12

*Klayman v. Obama*,
  No. 17-5281, --- F. App'x ----, 2019 WL 668267 (D.C. Cir. Feb. 5, 2019) .......................... 5, 9

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .......................................................................................................................... 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................................ 9

*Magowan v. Lowery*,
  166 F. Supp. 3d 39 (D.D.C. 2016) .............................................................................................. 21

*Martinek v. United States*,
  254 F. Supp. 2d 777 (S.D. Ohio 2003) ....................................................................................... 21

*McNeil v. United States*,
  508 U.S. 106 (1993) ...................................................................................................................... 21

*McQueen v. United States*,
  5 F.Supp.2d 473 (S.D. Tex. 1998) .............................................................................................. 19

*Montgomery v. Comey*,
   300 F. Supp. 3d 158 (D.D.C. 2018), *aff'd as modified*, 752 F. App'x 3 (Mem)
   (D.C. Cir. 2019) .................................................................................................... 12

*Montgomery v. Comey*,
   752 F. App'x 3 (Mem) (D.C. Cir. 2019)........................................................... 12, 13

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
   785 F.3d 684 (D.C. Cir. 2015) ................................................................................. 9

*Newburyport Water Co. v. Newburyport*,
   193 U.S. 561 (1904)................................................................................................ 10

*Richardson v. Yellen*,
   167 F. Supp. 3d 105 (D.D.C. 2016), *order clarified*, No. CV 14-1673 (RMC),
   2016 WL 10688800 (D.D.C. May 26, 2016), *and aff'd sub nom. Richardson v.*
   *Fed. Reserve Bd. of Governors of Fed. Reserve Sys.*, No. 16-5166,
   2017 WL 2332597 (D.C. Cir. Feb. 2, 2017) ......................................................... 20

*Rivera v. Rosenberg & Assocs., LLC*,
   142 F. Supp. 3d 149 (D.D.C. 2015) ....................................................................... 17

*Sacks v. Reynolds Sec., Inc.*,
   593 F.2d 1234 (D.C. Cir. 1978) ........................................................................ 20, 22

*Sandza v. Barclays Bank PLC*,
   151 F. Supp. 3d 94 (D.D.C. 2015) ......................................................................... 16

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) ............................................................................. 14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).................................................................................................. 9

*Tooley v. Napolitano*,
   586 F.3d 1006 (D.C. Cir. 2009) ............................................................................. 13

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
   454 U.S. 464 (1982)............................................................................................. 8, 9

*Wasserman v. Rodacker*,
   557 F.3d 635 (D.C. Cir. 2009) ............................................................................... 21

## STATUTES

28 U.S.C. § 2675(a) ............................................................................................... 21

28 U.S.C. § 2680(h) ............................................................................................... 20

28 U.S.C. §§ 1346, 2671-2680 ............................................................................. 20

50 U.S.C. § 1881a ......................................................................................... 4, 5, 10

FISA Amendments Act of 2008, Pub. L. No. 110-261............................................ 4

FISA Amendments Reauthorization Act of 2017, Pub. L. No. 115-118 ...................... 4

## RULES

Fed. R. Civ. P. 12(b)(1)............................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................... *passim*

Fed. R. Crim. P. 6(e)................................................................................... *passim*

Fed. R. Crim. P. 6(e)(2) .............................................................................. *passim*

Local Crim. R. 6.1............................................................................................... 19

## OTHER AUTHORITIES

Department of Justice, Order No. 3915-2017, Appointment of Special Counsel to Investigate
Russian Interference with the 2016 Presidential Election and Related
Matters (May 17, 2017) ........................................................................................ 3

Defendants Federal Bureau of Investigation, National Security Agency, Central Intelligence Agency, United States Department of Justice, and Robert Mueller in his official capacity as Special Counsel (together, "the Government") respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

In his amended complaint, plaintiff Jerome Corsi ("Plaintiff" or "Corsi") asserts four putative claims against the Government, all of which are facially deficient:

First, Corsi claims that the Government violated his Fourth Amendment rights through surveillance conducted pursuant to Section 702 of the Foreign Intelligence Surveillance Act, at unspecified times, in unspecified places, and targeting unspecified individuals. Corsi alleges no facts sufficient to support a reasonable inference that he was subject to such surveillance, and hence lacks standing for his Fourth Amendment claim. In addition, to the extent Corsi alleges that the Government violated his rights through some other unspecified surveillance, his allegations are patently insubstantial. The Court should therefore dismiss Corsi's Fourth Amendment claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Second, Corsi claims that Special Counsel Robert Mueller (the "Special Counsel") and the Special Counsel's Office leaked information about grand jury proceedings to the press in violation of Rule 6(e)(2) of the Federal Rules of Criminal Procedure. In support of this claim, Corsi relies on reporting about investigative matters that are not specific to a grand jury proceeding, and for which Government agents or attorneys are not the reported sources. Accordingly, because Corsi alleges no facts sufficient to support a reasonable inference that the Special Counsel or personnel in the Special Counsel's Office disclosed grand jury information in violation of Fed. R. Crim. P.

6(e), his second cause of action should be dismissed for failure to state a claim on which relief may be granted under Rule 12(b)(6). Further, Corsi has not filed a proper action to enforce Rule 6(e)(2)'s secrecy provision, as the D.C. Circuit has recognized only a limited right to seek injunctive relief or civil contempt of court through the district court supervising the grand jury. His claim may be dismissed on that ground as well.

Finally, in the third and fourth counts of the Amended Complaint, Corsi claims that the Government committed "abuse of process" by "threatening [him] with prosecution and prison" if he did not provide false testimony, and interfered with Corsi's "business and contractual relationships" with a publisher and book seller. However, the Federal Tort Claims Act's limited waiver of sovereign immunity does not extend to such tort claims, and, in any case, Corsi has neither sued the United States nor complied with the Act's jurisdictional requirements. Moreover, Plaintiff has identified no federal cause of action that would allow him to seek injunctive relief with respect to those claims. Accordingly, Plaintiff's third and fourth claims against the Government should also be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to state a claim on which relief may be granted under Rule 12(b)(6).

## BACKGROUND

### I.     Factual Background

The following facts are taken from the allegations in Plaintiff's amended complaint and materials incorporated into the complaint by reference or of which judicial notice may be taken.

Plaintiff is a journalist and author who is a supporter of President Donald J. Trump. Amended Complaint ("Am. Compl."), ECF No. 15, ¶ 15. He routinely speaks with persons located overseas. *Id.* ¶ 33.

On May 17, 2017, Acting Attorney General Rod Rosenstein appointed Robert S. Mueller,

III as Special Counsel for the Department of Justice to investigate the Russian government's efforts to interfere in the 2016 presidential election, including (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a). Department of Justice, Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017), *available at* https://www.justice.gov/opa/press-release/file/967231/download.

An article published by ABC News on October 31, 2018, reported that Plaintiff had "emerged as a central figure of interest to [Special Counsel] Mueller as he builds his case," and that Mueller had "evidence that suggests Corsi may have had advance knowledge that the email account of [Hillary] Clinton's campaign manager, had been hacked and that WikiLeaks had obtained a trove of damning emails from it."  Ali Dukakis, *Conspiracy theorist becomes key figure as Mueller builds his case*, ABC News, Oct. 31, 2018, https://abcnews.go.com/Politics/conspiracy-theorist-key-figure-mueller-builds-case/story?id=58886291 (last accessed March 18, 2019) (quoted in Am. Compl. ¶ 27).

An article by Chuck Ross published on The Daily Caller on December 13, 2018, reported that Corsi had raised money for an Alaskan man to have cancer surgery performed by a "Dr. Eliat Mendelsohn" who does not appear to exist. Chuck Ross, *Mueller Target Raised $25,000 in Charity to Pay Cancer Doctor Who Doesn't Appear to Exist*, The Daily Caller, Dec. 13, 2018, https://dailycaller.com/2018/12/13/corsi-mueller-doctor-cancer/ (last accessed March 18, 2019) (cited in Am. Compl. ¶ 28 n.4). The article also reported, among other things, that the man for whose surgery Corsi was purportedly raising money "is the registered owner of Mendelsohn

Consulting Group, the same clinic Corsi links to on his website boosting Dr. Mendelsohn," and that the Israeli clinic where Corsi claimed Dr. Mendelsohn was based stated that it had no doctor by that name. *See id.* The article reported that "[i]t is not clear if Mueller is investigating the Mendelsohn matter." *Id.* It also reported that, "[w]hen asked if he is aware of any interest by Mueller in the fundraiser, Corsi said: 'They can look at that all they want. I'm not going to talk about it. It's too private,'" and that Corsi further stated, "'If they want to accuse me of running a fraud to raise $25,000 for Tommy Sickler, they can go ahead and accuse me of that if they want to.'" *Id.* The article included no other discussion of any actual or possible connection between Dr. Mendelsohn and the Special Counsel's investigation. *See id.*

## II.    Statutory Background

In 2008, Congress amended the Foreign Intelligence Surveillance Act ("FISA") and enacted Section 702. *See* FISA Amendments Act of 2008 ("FAA"), Pub. L. No. 110-261. Section 702 of FISA, 50 U.S.C. § 1881a, "supplement[ed] pre-existing FISA authority by creating a new framework under which the Government may seek the FISC's authorization of certain foreign intelligence surveillance targeting the communications of non-U.S. persons located abroad." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 404 (2013).[1]

Section 702 generally provides that, upon FISC approval of a "certification" submitted by the Government, and of targeting and minimization procedures, the Attorney General and the Director of National Intelligence ("DNI") may jointly authorize, for up to one year, the "targeting of persons reasonably believed to be located outside the United States to acquire foreign

---

[1] In 2018, Congress amended Section 702, adding provisions related to the querying of information collected pursuant to that authority, specifying certain limits on the use of such information, and revising various provisions regarding disclosures to the Foreign Intelligence Surveillance Court and Congressional review. *See* FISA Amendments Reauthorization Act of 2017, Pub. L. No. 115-118, 132 Stat. 3 (Jan. 19, 2018).

intelligence information." 50 U.S.C. § 188la(a), (h). The Government must acquire the information from or with the assistance of an electronic communications service provider, to which end the Attorney General and the DNI may issue "directives" to providers compelling their assistance in the acquisition of the targeted communications. 50 U.S.C. § 1881a(h)(2)(A)(vi), (i)(1). Under the express terms of Section 702, the Government cannot intentionally target a U.S. person overseas or persons (including U.S. persons) known at the time of acquisition to be in the United States. 50 U.S.C. § 1881a(b). The acquisition must also be "conducted in a manner consistent with the [F]ourth [A]mendment." *Id.* § 188la(b)(6). One surveillance activity conducted under Section 702 is "a program known as PRISM." *Klayman v. Obama*, No. 17-5281, --- F. App'x ----, 2019 WL 668267, at *2 (D.C. Cir. Feb. 5, 2019) (per curiam) (unpublished).

### III.   Procedural Background

On December 9, 2018, Plaintiff filed his original complaint in this case, which named as defendants the Federal Bureau of Investigation; National Security Agency; Central Intelligence Agency; United States Department of Justice; and Robert Mueller, in his official and individual capacities. ECF No. 1. Plaintiff's original complaint asserted two causes of action: First, Plaintiff alleged that all the defendants had violated his Fourth Amendment rights by "unreasonably search[ing] and seiz[ing] . . . Plaintiff's phone and other digital records without probable cause." *Id.* ¶ 31. Second, Plaintiff alleged that "Defendant Mueller" and "his staff" had violated Rule 6(e) of the Federal Rules of Criminal Procedure by "leaking grand jury information concerning Plaintiff Corsi to the media." *Id.* ¶ 38.

On January 21, 2019, Plaintiff filed his Amended Complaint, which added three new defendants and three new causes of action, including two new causes of action against the Government: (i) a claim that the defendants had "abused and perverted the Court's judicial

5

processes by threatening Plaintiff Corsi with prosecution and prison if he did not provide sworn testimony that defendants know to be false," Am. Compl. ¶ 55, and (ii) a claim that the defendants "intentionally and/or negligently tortuously (sic) interfered with Plaintiff's existing business relationships" with publishers and sellers of Plaintiff's book, *id.* ¶ 63.

With respect to Plaintiff's Fourth Amendment claim, the operative complaint alleges that "Defendants Mueller, DOJ, NSA, CIA, and FBI have engaged in ongoing illegal, unconstitutional surveillance on Plaintiff Corsi . . . as well as targeted 'PRISM' collection under Section 702 of the Foreign Intelligence Surveillance Act . . . at the direction of Defendant Mueller." *Id.* ¶ 30. The complaint alleges that "[e]xamples of this illegal surveillance include . . . [n]ecessarily intercepting Plaintiff's text and other messages without probable cause or a warrant so that they could illegally obtain information about and interrogate Plaintiff Corsi and his stepson, Andrew Stettner," and "repeated attempts by government authorities to intercept electronically Plaintiff Corsi's telephone conversations." *Id.* ¶ 31. Plaintiff alleges that "evidence" of the alleged "repeated attempts . . . to intercept electronically [his] telephone conversations" was identified by "Author Jim Garrow," who "has developed a 'DEAF' system to prevent electronic surveillance of telephone conversations and has applied DEAF to [Plaintiff's] cellphone." *Id.* Plaintiff further alleges that the "[e]xamples of . . . illegal surveillance" include "[m]ore instances . . . to be uncovered during discovery." *Id.*

With respect to Plaintiff's claim that the Special Counsel's Office leaked grand jury information in violation of Fed. R. Crim P. 6(e), the operative complaint alleges that "example[s]" of "illegal grand jury leaks" can be found in the above-described ABC News article published on October 31, 2018, *id.* ¶ 26, and the above-described article by Chuck Ross published in The Daily Caller on December 13, 2018, *id.* ¶ 28. Plaintiff further alleges that an unidentified BuzzFeed

article "revealed a major leak concerning President [Trump] was made by Defendant Mueller," and that the information purportedly revealed in this unidentified article is "[c]onsistent with the leaks concerning Plaintiff Corsi." *Id.* ¶ 26.

Plaintiff's "tortious interference with business relationships" claim relies on an allegation that "Defendants . . . threatened Amazon.com, a distributor of . . . Corsi's new book, . . . with a subpoena to obtain a pre-publication copy of the hardback in-print version." *Id.* ¶ 34. Plaintiff further alleges that the "Defendants" somehow caused Dr. David Jones, the father of Alex Jones of InfoWars, to inform Plaintiff that he was being "terminated and would no longer be receiving $15,000 per month." *Id.* ¶¶ 36, 39. Plaintiff does not specify from what position he was purportedly being "terminated" or why Dr. Jones had been providing him with $15,000 per month.

With respect to his "abuse of process" claim, Plaintiff alleges that "Defendants" have attempted to coerce him into providing false sworn testimony, id. ¶ 55, but does not specify what false testimony "Defendants" have purportedly tried to elicit, which Special Counsel's Office personnel or other Government agents allegedly "threaten[ed] [him] with prosecution and prison if he did not provide" such testimony, *id.*, or when or where these alleged threats were made. Plaintiff further alleges that the Special Counsel has "abused this Court's grand jury and other legal processes by subpoenaing . . . members of Plaintiff's family to appear before the grand jury and/or to be interviewed by FBI agents." *Id.* ¶ 57.

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies the plausibility standard when the "factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* Although "Rule 8 [of the Federal Rules of Civil Procedure] marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

The standard applicable to a Rule 12(b)(1) motion that raises a facial challenge to the court's subject matter jurisdiction is similar to the Rule 12(b)(6) standard, in that the court must accept as true the plaintiff's well-pleaded allegations, but also must "disregard any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (per curiam).

## ARGUMENT

### I.   Plaintiff's Fourth Amendment Claim Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1).

#### A.  Legal Standards

"[T]he judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for*

*Separation of Church & State*, 454 U.S. 464, 471 (1982); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "A core element of Article III's case-or-controversy requirement is that a plaintiff have standing to sue." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To establish Article III standing, a plaintiff must seek relief from an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Amnesty Int'l*, 568 U.S. at 409. The Supreme Court has emphasized that the standing inquiry must be "especially rigorous" when reaching the merits of a case would force a court to decide whether actions taken by the other branches of the federal government, especially in the fields of intelligence gathering and foreign affairs, are unconstitutional. *Id.*

Plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). As to any claims for prospective relief, "it would not be enough . . . to demonstrate past harm"; instead, Plaintiff must show that he is "suffering an ongoing injury or faces an immediate threat of injury." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 689 (D.C. Cir. 2015) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). To meet that standard at the pleading stage, Plaintiff must allege an "actual" injury, *Amnesty Int'l*, 568 U.S. at 409, or "allege injury that is 'certainly impending' without relying on a 'highly attenuated chain of possibilities,'" *Klayman v. Obama*, 2019 WL 668267, at *3 (quoting *Amnesty Int'l*, 568 U.S. at 410).

"Those who do not possess Art[icle] III standing may not litigate as suitors in the courts of the United States." *Valley Forge*, 454 U.S. at 475-76. In addition, "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)

(quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)). Thus, a claim also may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction if it is "patently insubstantial." *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994).

### B. Plaintiff Lacks Standing for His Challenge to Purported Section 702 Surveillance and His Alternative Theory Is Patently Insubstantial.

Plaintiff lacks standing for his Fourth Amendment claim challenging purported Section 702 "PRISM" surveillance because he does not plausibly allege that his communications have been or will be intercepted via that program. To the extent Plaintiff's Fourth Amendment claim is premised on some other unspecified Government surveillance, it may also be dismissed for want of jurisdiction because the claim is patently insubstantial.

First, Plaintiff does not plausibly allege that he has suffered, is suffering, or will imminently suffer, any concrete and particularized injury in connection with surveillance conducted under Section 702. Plaintiff offers only one non-conclusory allegation in support of his claim that the Government is unlawfully intercepting his communications under Section 702: He "routinely speaks with persons located overseas." Am. Compl. ¶ 33. While Plaintiff also alleges in a conclusory manner that these persons are located in "regions that are surveilled under PRISM," *id.*, he does not identify the "regions" purportedly "surveilled under PRISM," nor does he offer any other details regarding the communications allegedly intercepted by the Government via PRISM surveillance. Indeed, the scope of PRISM collection is a classified fact that the Government has not publicly disclosed. *See Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 45 (D.D.C. 2017), *aff'd sub nom. Klayman v. Obama*, 2019 WL 668267 (D.C. Cir. Feb. 5, 2019).

As noted above, Section 702 of FISA does not permit the targeting of U.S. persons, 50 U.S.C. § 1881a(b), and Plaintiff offers no allegations sufficient to support a reasonable inference that, contrary to the statute, the Government has targeted or is targeting his communications under

10

that authority. Further, even if the Court takes as true Plaintiff's conclusory allegation that he communicates with individuals located in regions where the Government is surveilling individuals under Section 702, Am. Compl. ¶ 33, Plaintiff has not plausibly alleged that his communications have been, are being, or will be acquired incidental to the targeting of non-U.S. persons reasonably believed to be located outside the United States, let alone that he is suffering any injury in connection with such surveillance. Rather, Plaintiff's suggestion that his communications are being collected through Section 702 surveillance is pure speculation, and he thus lacks standing for a Fourth Amendment claim challenging such surveillance.

Indeed, the Supreme Court's holding in *Clapper v. Amnesty International* squarely forecloses a conclusion that Plaintiff has standing for his challenge to purported Section 702 surveillance. In *Amnesty International*, the Supreme Court concluded that the plaintiffs lacked standing to seek an injunction against surveillance authorized under Section 702, holding, *inter alia*, that their theory of injury was "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" 568 U.S. at 401. The plaintiffs' claim in that case in fact was supported by more detailed assertions than Plaintiff offers here—including that they interacted and engaged in sensitive communications with persons likely to be considered by the Government as potential terrorists, or persons of interest in terrorism investigations. *See id.* at 406. They further alleged they would suffer harms as a result of the Government surveillance program, including a compromised ability to "locate witnesses, cultivate sources, obtain information, and communicate confidential information," and a need to undertake various costly measures to avoid possible surveillance. *Id.* at 406-07. The Supreme Court, however, held that the plaintiffs' claimed injuries rested on a "speculative chain of possibilities," *id.* at 414, including "that the Government [would] target the communications of non-U.S. persons with whom they

communicate," that it would succeed in intercepting those communications, and that the plaintiffs would be parties to the particular communications intercepted. *Id.* at 410.

Here, Plaintiff's claim rests on an equally speculative chain of possibilities: that the Government is targeting communications of the particular individuals overseas with whom Plaintiff communicates, that the Government has succeeded or will succeed in intercepting those communications, and that Plaintiff is or will be a party to the communications that are intercepted. Courts have repeatedly rejected for lack of standing challenges to purported Government surveillance that rest on such bare speculation, including several claims brought by Plaintiff's counsel, Larry Klayman. *See, e.g.*, *Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d at 57 (holding that Klayman lacked standing to challenge PRISM surveillance even though he alleged that he "frequents and routinely telephones and e-mails individuals and high-ranking government officials in Israel" and communicates with persons in several other nations); *see also Montgomery v. Comey*, 300 F. Supp. 3d 158, 167-68 (D.D.C. 2018) (holding that "plaintiffs' standing to challenge defendants' alleged surveillance under the PRISM program [was] clearly foreclosed" by *Amnesty International* where plaintiffs had not alleged that they communicated with individuals abroad, "let alone that they have reason to believe that their foreign contacts have been targeted under the PRISM program"), *aff'd as modified*, 752 F. App'x 3 (Mem) (D.C. Cir. 2019); *Klayman v. Obama*, 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013) (holding that *Amnesty International* "squarely dictated" that the plaintiffs lacked standing to challenge "challenge the Government's targeted collection of internet data *content* pursuant to Section 702" because plaintiffs had not "alleged sufficient facts to show that the NSA has targeted any of their communications"), *vacated and remanded on other grounds*, 800 F.3d 559 (D.C. Cir. 2015).

Second, to the extent Plaintiff's Fourth Amendment claim rests on a theory that the

Government is engaging in some other, unspecified form of purported "illegal, unconstitutional surveillance," Am. Compl. ¶ 30, there is no Article III case or controversy for the Court to adjudicate because Plaintiff's claim is patently frivolous. Indeed, Plaintiff merely alleges, in a conclusory manner, that the Government is "[n]ecessarily intercepting Plaintiff's text and other messages without probable cause or a warrant." *Id.* ¶ 31(a). Plaintiff's allegation that "[a]uthor Jim Garrow" has acquired unspecified "evidence of repeated attempts by government authorities to intercept electronically Plaintiff Corsi's telephone conversations" using a so-called "DEAF" system, *id.* ¶ 31(b), does not transport Plaintiff's claim out of the realm of frivolity. Plaintiff does not identify any communications that the Government has allegedly intercepted, the manner in which the Government allegedly is electronically intercepting his communications, or any other facts that would suggest that his claim is "anything other than fanciful." *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009) (allegation that plaintiff's "computer frequently malfunctions" failed to make claim of surveillance "anything other than fanciful"). Nor does Plaintiff's speculation that the Government learned the identity of his stepson through such surveillance, Am. Compl. ¶ 31(a), lend plausibility to his allegations. Plaintiff's assertion that the Government is somehow electronically intercepting his telephone conversations is akin to the claims of Government surveillance and "hacking" that courts routinely dismiss as patently insubstantial. *See, e.g.*, *Curran*, 626 F. Supp. 2d at 34; *Montgomery v. Comey*, 752 F. App'x 3, 4 (Mem) (D.C. Cir. 2019) (per curiam) (unpublished) (affirming dismissal of claims that government repeatedly hacked appellant's cellphone and installed malware for lack of jurisdiction on the basis of insubstantiality); *Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) (dismissing claim that government had launched a surveillance program against plaintiff as "patently insubstantial").

Accordingly, Plaintiff's Fourth Amendment claim should be dismissed for lack of subject

matter jurisdiction.

## II.    Plaintiff's Claim that the Special Counsel's Office Unlawfully Leaked Grand Jury Information Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  Plaintiff Does Not Plausibly Allege a Violation of Rule 6(e).

Count Two of the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted because Plaintiff does not plausibly allege that the Special Counsel or the Special Counsel's Office leaked grand jury information to the press in violation of Fed. R. Crim. P. 6(e).

Rule 6(e)(2) of the Federal Rules of Criminal Procedure provides that government attorneys generally may not disclose "a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). "Prosecutors' statements about their investigations . . . implicate the Rule only when they directly reveal grand jury matters." *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999) (per curiam). "[G]rand jury matters" encompass matters "likely to occur" before a grand jury. *Id.* at 1002-03. "But that does not mean that *any* discussion of an investigation is violative of Rule 6(e)." *Id.* at 1003. As the D.C. Circuit has explained, Rule 6(e) does not "require that a 'veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury.'" *Id.* at 1001-02 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). Thus, for example, "the disclosure of information coincidentally before the grand jury which can be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited." *Id.* at at 1002 (alterations, quotation marks, and citations omitted).

In the limited proceeding that is the sole means for a private litigant to raise a Rule 6(e) claim, *see infra* Part II.B., a prima facie case of a violation of Rule 6(e)(2) is made when "the media reports disclosed information about 'matters occurring before the grand jury' and indicated

that the sources of the information included attorneys and agents of the Government." *Barry v.
United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989); *accord In re Sealed Case No. 99-3091*, 192
F.3d at 1001; *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1067 (D.C. Cir. 1998). This standard
for a prima facie showing is distinct from the Rule 12(b)(6) standard, which would require the
plaintiff to plausibly allege that the defendant in fact violated Rule 6(e)(2). *See Iqbal*, 556 U.S. at
678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."). Regardless, for a
plausible claim that the Special Counsel or Special Counsel's Office revealed grand jury
information to the media in violation of Rule 6(e)(2), the allegations in Plaintiff's complaint and
materials incorporated in the complaint by reference must at the very least support the reasonable
inference that information about a "matter occurring before the grand jury" has been disclosed in
media reports, and that Government attorneys and agents from the Special Counsel's Office were
sources of that information.

Here, Plaintiff has not plausibly alleged that the Special Counsel or any personnel in the
Special Counsel's Office "leak[ed] grand jury information concerning Plaintiff Corsi to the media"
in violation of Fed. R. Crim. P. 6(e)(2), Am. Compl. ¶ 51, because none of the reporting he cites
discloses information about "matter[s] occurring before the grand jury," let alone indicates that
personnel in the Special Counsel's Office were sources of such information.

With respect to the ABC News piece, Plaintiff alleges that the article discloses (i) "the fact
that Plaintiff Corsi had 'emerged as a central figure of interest to Mueller as he builds his case,'"
and (ii) "that [the Special Counsel] had 'evidence that suggests Corsi may have had advance
knowledge that the email account of Clinton's campaign manager, John Podesta, had been hacked
and that WikiLeaks had obtained a trove of damning emails from it.'" *Id.* ¶ 27. However, neither

of these two facts comprises information that purports to reveal a "matter occurring before the grand jury" under Rule 6(e)(2). Rather, both reported facts merely describe asserted aspects of the Special Counsel's investigation; unless it "directly reveal[s] grand jury matters," a prosecutor's disclosure of information regarding an investigation does not violate Rule 6(e). *In re Sealed Case No. 99-3091*, 192 F.3d at 1002. The Amended Complaint includes no allegations that would allow a reasonable inference that the reported information reflects a direct disclosure of information regarding a matter occurring before the grand jury. Moreover, the article nowhere indicates that a Government attorney or agent was a source for the cited information. Rather, the report states that unspecified "sources" confirmed that Corsi was a "special figure of interest," and that "two sources with direct knowledge of the matter" told ABC News about the evidence purportedly possessed by the Special Counsel. Ali Dukakis, *Conspiracy theorist becomes key figure as Mueller builds his case*, ABC News, Oct. 31, 2018, https://abcnews.go.com/Politics/conspiracy-theorist-key-figure-mueller-builds-case/story?id=58886291 (last accessed March 18, 2019).[2] *Compare id.* with *Barry*, 865 F.2d at 1325 (agreeing that appellant had made a prima facie showing of a Rule 6(e) violation because a *New York Times* article "disclosed information provided by 'law enforcement officers familiar with [the appellant's] testimony' concerning matters occurring before a grand jury").

Plaintiff's allegations concerning an article by Chuck Ross also do not support a reasonable inference that the Special Counsel's Office violated Rule 6(e). Citing Ross's December 13, 2018,

---

[2] The Court may take judicial notice of the contents of articles referenced in the complaint. *See, e.g.*, *Twombly*, 550 U.S. at 569 n.13 (noting that, on a motion to dismiss, "the District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which . . . truncated quotations were drawn"); *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015) (Huvelle, J.) (holding that court could take judicial notice of the fact that articles contained certain information).

piece in The Daily Caller, Corsi alleges that Ross "reported and published that a physician known as Dr. Mendelsohn and others who received cancer treatment by him and who [sic] were subpoenaed to appear before the Mueller grand jury." Am. Compl. ¶ 28. However, the cited article includes no such information, let alone an attribution to sources in the Special Counsel's Office. *See* Chuck Ross, *Mueller Target Raised $25,000 in Charity to Pay Cancer Doctor Who Doesn't Appear to Exist*, The Daily Caller, Dec. 13, 2018, https://dailycaller.com/2018/12/13/corsi-mueller-doctor-cancer/ (last accessed Mar. 18, 2019). Because Corsi's characterization of the content of the Ross article is directly contradicted by the article itself, the Court need not accept Corsi's allegations as true. *Cf. Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 161 (D.D.C. 2015) ("Where, as here, the complaint's factual allegations are contradicted by exhibits incorporated by reference in the complaint and of which the Court may take judicial notice, the Court need no longer accept as true Plaintiff's version of events."). Corsi alleges that Mr. Ross told Corsi that Ross had obtained "information about this grand jury testimony from persons working under the direction of [the] Special Counsel." Am. Compl. ¶ 28. But, again, the article does not include the information alleged by Corsi, and consequently his assertion that Mr. Ross received information about grand jury testimony from personnel in the Special Counsel's Office, *id.*, is "no more than [a] conclusion[ ]" and "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Corsi's allegations concerning Mr. Ross's report therefore do not support a reasonable inference that the Special Counsel's Office leaked information about matters occurring before the grand jury to the media, let alone grand jury information concerning Corsi.

Nor do any other allegations in the Amended Complaint support a reasonable inference that the Special Counsel's Office leaked grand jury information to the media. Plaintiff asserts that his allegations are "bolstered" by an unspecified BuzzFeed article that, Plaintiff alleges, indicates

BuzzFeed received "leaked" information about President Trump. Am. Compl. ¶ 26. However, Plaintiff does not identify this purported article, nor does he allege that the article contains information about matters occurring before the grand jury, let alone grand jury information concerning himself. *See id.* Thus, Plaintiff's allegations regarding the unspecified BuzzFeed article do not bolster the plausibility of his claim. Similarly, Plaintiff's conclusory allegation that Peter Carr, the spokesperson for the Special Counsel's Office, "has periodically disclosed and released grand jury information to 'favorable media,'" *id.* ¶ 29, is not entitled to the assumption of truth, *see Iqbal*, 556 U.S at 679, and does not support a reasonable inference that the Special Counsel's Office leaked grand jury information concerning Corsi to the media. Nor does apparent email correspondence between the Special Counsel's Office spokesperson and a journalist, attached as Exhibit 1 to the Amended Complaint, allow a reasonable inference that the Special Counsel's Office leaked such grand jury information. Indeed, it merely indicates that the journalist and Special Counsel's Office representative were attempting to schedule a meeting. *See* Am. Compl., Ex. 1.

Because the allegations in the Amended Complaint and materials incorporated in the Amended Complaint by reference do not support a reasonable inference that the Special Counsel or Special Counsel's Office revealed grand jury information concerning Plaintiff to the media, Plaintiff's Rule 6(e) count should be dismissed for failure to state a claim upon which relief may be granted.

### B. Plaintiff Has Not Employed the Exclusive Procedure for a Private Litigant to Challenge an Alleged Rule 6(e) Violation.

In addition, Plaintiff has failed to state a claim upon which relief may be granted because he has not employed the exclusive procedure for a private action to enforce Rule 6(e)'s secrecy provision.

An action to enforce Rule 6(e)'s secrecy provision "is not a typical civil proceeding between two disputants; rather, it resembles more clearly an ancillary proceeding to a criminal grand jury inquest." *In re Sealed Case No. 98-3077*, 151 F.3d at 1070. Therefore, a Rule 6(e)(2) plaintiff has only "a very limited right to seek injunctive relief or civil contempt of court through the district court supervising the grand jury." *Id.* (quoting *McQueen v. United States*, 5 F.Supp.2d 473, 482 (S.D. Tex. 1998)).[3] Private actions to enforce Rule 6(e)(2) are restricted in this manner because normal adversarial procedures, including discovery rules, are incompatible with a proceeding that relates to an ongoing grand jury investigation. *See generally id.* at 1069-73. Indeed, once a prima facie case of a Rule 6(e)(2) violation is made, the court supervising the grand jury must conduct a show-cause hearing to allow the government to "explain its actions," *id.* at 1068 (quoting *Barry*, 865 F.2d at 1325), and the hearing must be conducted in a manner that "acknowledge[s] the essential nature of the proceeding as one designed to guard the sanctity of the grand jury process itself," *id.* at 1070. For example, the hearing will involve *ex parte*, *in camera* submissions "to minimize the intrusion on the interests protected by Rule 6(e)(2)." *Id.* at 1076. Such a proceeding—commenced before the district court supervising the grand jury and conducted in a manner that protects the grand jury investigation itself—is the sole means for a private litigant to challenge an alleged violation of Rule 6(e)(2) under D.C. Circuit precedents. *See id.* at 1070.

Thus, Plaintiff lacks a cause of action to seek to enforce Rule 6(e)(2)'s secrecy provision via a typical civil suit, and his Rule 6(e)(2) claim may be dismissed under Fed. R. Civ. P. 12(b)(6) on this ground as well. *See, e.g.*, *Eagle Tr. Fund v. U.S. Postal Serv.*, No. 1:17-cv-2450 (KBJ),

---

[3] In this District, proceedings in connection with a grand jury investigation must be initiated in accordance with Local Criminal Rule 6.1. Pursuant to Rule 6.1, motions and applications "filed in connection with a . . . matter occurring before a grand jury . . . shall be filed under seal," and will then be assigned a Grand Jury case number and assigned to the Chief Judge, Local Crim. R. 6.1, a procedure Plaintiff clearly did not follow in this case.

2019 WL 451350, at *4 (D.D.C. Feb. 4, 2019) (noting that "a plaintiff who fails to show that the law authorizes him to bring his lawsuit fails to state a claim upon which relief can be granted" (citing *Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978)).

**III.    Plaintiff's Claims for "Abuse of Process" and "Tortious Interference with Business Relationships" Should Be Dismissed for Lack of Subject Matter Jurisdiction and/or for Failure to State a Claim on Which Relief May Be Granted.**

Plaintiffs' newly added tort claims for "abuse of process" and "tortious interference with business relationships" should be dismissed for lack of subject matter jurisdiction because the Government has not waived its sovereign immunity with respect to such claims for money damages. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because "[s]overeign immunity is jurisdictional in nature," *id.*, a claim for which the Government has not waived sovereign immunity must be dismissed under Rule 12(b)(1).

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), does waive the United States' sovereign immunity with respect certain common law tort claims. But the FTCA only allows for suits seeking money damages against the United States—it does not provide for suits against individual federal agencies or against federal officers in their official capacity. *See, e.g.*, *Richardson v. Yellen*, 167 F. Supp. 3d 105, 114 (D.D.C. 2016), *order clarified*, No. CV 14-1673 (RMC), 2016 WL 10688800 (D.D.C. May 26, 2016), *and aff'd sub nom. Richardson v. Fed. Reserve Bd. of Governors of Fed. Reserve Sys.*, No. 16-5166, 2017 WL 2332597 (D.C. Cir. Feb. 2, 2017); *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 16–17 (D.D.C. 2015). And in any event, the FTCA's limited waiver of sovereign immunity specifically excludes "[a]ny claim arising out of … abuse of process" or "interference with contract rights." 28 U.S.C. § 2680(h). Claims that fall within the purview of 28 U.S.C. § 2680(h) fail for lack of subject matter

jurisdiction. *See, e.g.*, *Magowan v. Lowery*, 166 F. Supp. 3d 39, 63 (D.D.C. 2016). There can be no question that this defeats Count Three, explicitly titled "Abuse of Process." Am. Compl. ¶¶ 54-58; *cf. Hui v. Castaneda*, 559 U.S. 799, 805 (2010) (construction of exclusivity-of-remedy provision "begins and ends with the text"). Count Four, "Tortious Interference with Business Relationships," Am. Compl. ¶¶ 59-65, must also fail because it "seeks to recover for the breach of duties identical to those underlying" interference with contract rights, *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1154 (D.C. Cir. 1985); *see also id.* (equating "the duty not to interfere with Art Metal's economic relationship with third parties" with "the duty underlying a claim for interference with contract rights"); *Martinek v. United States*, 254 F. Supp. 2d 777, 790 (S.D. Ohio 2003) (collecting cases establishing that "[i]nterference with business relationships falls within this exclusion").

Moreover, the FTCA "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993) (citing 28 U.S.C. § 2675(a)). Any "failure to exhaust administrative remedies" is a "jurisdictional" flaw. *Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) (internal citations omitted). Where, as here, there is no suggestion that the plaintiff "filed an administrative claim" with respect to his tort claim, the court has no choice but to dismiss "for lack of subject matter jurisdiction." *Ali*, 649 F.3d at 775; *see, e.g.*, *Hamilton v. Stevens*, No. CV 18-1158 (CKK), 2019 WL 1046632, at *2 (D.D.C. Mar. 5, 2019) ("Hamilton does not allege or otherwise demonstrate that she submitted a tort claim to the appropriate federal agency. Her failure to exhaust her administrative remedies deprives this Court of subject matter jurisdiction. . . ."); *see also Wasserman v. Rodacker*, 557 F.3d 635, 640 (D.C. Cir. 2009) (United States properly substituted for federal employee defendant and claims properly dismissed because plaintiff "failed to exhaust his administrative remedies.").

Accordingly, to the extent Plaintiff seeks money damages with respect to his "abuse of process" and "tortious interference with business relationships" claims, those claims should be dismissed for lack of subject matter jurisdiction.

Finally, to the extent the Amended Complaint could be construed to seek injunctive or declaratory relief in connection with Plaintiff's "abuse of process" and "tortious interference" claims, Plaintiff has failed to identify any federal cause of action that would encompass such claims. Nor is any such federal cause of action apparent. Accordingly, any putative claim for injunctive or declaratory relief in Counts Three and Four of the Amended Complaint should be dismissed pursuant to Rule 12(b)(6). *See Sacks*, 593 F.2d at 1239.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against the Government pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: March 19, 2019                     Respectfully submitted,

JAMES J. GILLIGAN
Acting Branch Director

/s/ Elizabeth Tulis
ELIZABETH TULIS
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Tel: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Attorneys for Defendants Federal Bureau of Investigation, National Security Agency, Central Intelligence Agency, United States Department of Justice, and Robert Mueller in his official capacity as Special Counsel*

22

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

_/s/ Elizabeth Tulis_
ELIZABETH TULIS