THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

JEROME CORSI,

             Plaintiff,

v.

ROBERT MUELLER, *et al.*

             Defendants.

Civil Action No. 1:18-cv-02885 ESH

## ROBERT S. MUELLER, III's MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), Special Counsel Robert S. Mueller, III, through undersigned counsel for the U.S. Department of Justice, Civil Division, moves to dismiss of all claims asserted against him in his individual capacity. In support of the motion, Special Counsel Mueller refers the Court to the following memorandum.

Dated: April 15, 2019

Respectfully submitted,

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

*/s/ Richard Montague*
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*/s/ Laura Katherine Smith*
LAURA KATHERINE SMITH
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-0419
Laura.Smith2@usdoj.gov

*Attorneys for Defendant Robert S. Mueller, III,*
*in his individual capacity*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ v

INTRODUCTION ............................................................................................................. 1

STATEMENT .................................................................................................................... 1

I.   Statutory and Regulatory Background: Special Counsels ........................................... 2

II.  Corsi's Criticisms of the Investigation ...................................................................... 5

    A.   Unrealized "Threats" of Indictment.................................................................... 6

    B.   Grand Jury "Leaks" ........................................................................................... 6

    C.   Vague Allegations of Widespread Digital "Surveillance" ............................... 7

    D.   "Abuse of Process"............................................................................................. 8

    E.   Supposed "Interference" with Corsi's "Business Relationships"...................... 8

III. Claims Asserted Against Special Counsel Mueller in His *Individual* Capacity ..................... 8

ARGUMENT ...................................................................................................................... 9

I.   CORSI HAS NOT SERVED SPECIAL COUNSEL MUELLER. ....................................... 9

II.  CORSI HAS NO INDIVIDUAL-CAPACITY CAUSE OF ACTION................................. 10

    A.   Corsi Cannot Recover "Equitable, Declaratory," or "Injunctive" Relief from Special Counsel Mueller in His Personal Capacity (Counts I–IV)............................ 10

    B.   The Grand Jury Rules Create No Independent, Private Right of Action Against Special Counsel Mueller in His Personal Capacity (Count II). ................................. 11

    C.   Special Counsel Mueller Has Absolute *Westfall* Act Immunity to Claims for "Abuse of Process" (Count III) and "Tortious Interference With Business Relationships" (Count IV). ........................................................................................ 12

    D.   Special Counsel Mueller Has Absolute Immunity for Conduct Before an Indicting Grand Jury............................................................................................... 13

    E.   The Judicially Implied *Bivens* Remedy Should Not Be Extended to This New Context............................................................................................................... 13

        1.   A New *Bivens* Claim Must Fail if "Special Factors" Counsel Against It............. 14

        2.   Corsi Proposes a Novel Fourth Amendment Claim.............................................. 15

3.   Special Factors Counsel Against Corsi's Fourth Amendment Claim. .................. 16

   a.   Alternative Processes: For Corsi, It Is Not "Damages or Nothing." ............. 16

      i.   The Federal Criminal Justice System Is the First Line of Defense
           Against Abuses of the Nature Corsi Alleges. ......................................... 17

         (a)  The Attorney General Oversees Special Counsel Activities. ............. 17

         (b)  The Grand Jury Process Acts as a Check on Prosecutors. ................ 18

         (c)  Special Procedures Exist to Address Grand Jury Leaks. ................... 19

         (d)  Courts May Set Aside Plea Bargains Obtained Via Threat. ............. 19

         (e)  Courts May Quash Inappropriate Subpoenas. .................................. 20

      ii.  Injunctive and Other Statutory Relief May Be Available for Unlawful
           Surveillance ................................................................................................ 20

      iii. The Privacy Act Covers "Leaks" by Executive Branch Officials. ........... 23

      iv.  Professional Ethics Rules Protect Against Prosecutorial Misconduct. ...... 24

   b.   Additional Special Factors Counsel Against a *Bivens* Remedy ...................... 24

      i.   Congress' Action in the Field Indicates That It Would Consider a
           *Bivens* Remedy Inappropriate. .................................................................. 24

      ii.  Corsi's Proposed *Bivens* Claim Raises Separation-of-Powers Concerns. 25

         (a)  Corsi Asks This Court to Abridge Prosecutorial Discretion
              Constitutionally Committed to the Executive Branch. ..................... 26

         (b)  Corsi Seeks to Inappropriately Interject Article III Courts Into the
              Grand Jury Process. ........................................................................ 27

      iii. Corsi Proposes an Unmanageable Species of Litigation ......................... 29

      iv.  Corsi's Proposed Remedy Threatens to Undermine the Federal
           Criminal Justice Process as a Whole. ...................................................... 30

      v.   Challenges to Purported Official Policies Are Inappropriate for
           *Bivens* Claims ............................................................................................ 31

III.   QUALIFIED IMMUNITY BARS THE *BIVENS* AND RULE 6 CLAIMS. ...................... 32

   A.  Step One: Corsi Fails to Plausibly Allege That Mr. Mueller Personally Violated
       the Law ................................................................................................................ 32

iii

1. Corsi Has Not Plausibly Alleged Personal Participation. ...................................... 33

2. Corsi States No Fourth Amendment Claim............................................................. 35

    a. Speculative "Surveillance" Contentions Cannot Establish a "Search."............ 36

    b. Corsi Alleges No "Seizure," Let Alone an "Unreasonable" One. ................... 36

    c. The Fourth Amendment Does Not Prohibit Grand Jury "Leaks." .................... 38

B. Step Two: Corsi Alleges No Violation of Clearly Established Law. ............................. 38

1. The Law Gives Prosecutors Wide Latitude, Especially Pre-Indictment. ............... 38

2. Mr. Mueller Could Not Have Been on Notice of the Potential for the Damages Award Corsi Seeks.................................................................................................. 39

IV. CONCLUSION............................................................................................................... 40

# TABLE OF AUTHORITIES

<u>Cases</u>

*Acosta Orellana v. CropLife Int'l,*
 711 F. Supp. 2d 81 (D.D.C. 2010) .......................................................................... 34

*Al-Haramain Islamic Found., Inc. v. Obama,*
 705 F.3d 845 (9th Cir. 2012) ................................................................................... 22

*Amobi v. D.C. Dep't of Corrections,*
 257 F.R.D. 8 (D.D.C. 2009) ..................................................................................... 20

*Anderson v. Creighton,*
 483 U.S. 635 (1987) .......................................................................................... 31, 38

*Apampa v. Layng,*
 157 F.3d 1103 (7th Cir. 1998) ................................................................................. 25

*Apton v. Wilson,*
 506 F.2d 83 (D.C. Cir. 1974) ................................................................................... 16

*Arar v. Ashcroft,*
 585 F.3d 559 (2d Cir. 2009)..................................................................................... 16

*Arce v. Banks,*
 913 F. Supp. 307 (S.D.N.Y. 1996) ........................................................................... 37

*Ashcroft v. al-Kidd,*
 563 U.S. 731 (2011) .......................................................................................... 32, 38

*\*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ........................................................................................ passim

*Attkisson v. Holder,*
 No. 18-1677, 2019 WL 1292886 (4th Cir. Mar. 21, 2019)................................. 15, 22

*Atuahene v. City of Hartford,*
 10 F. App'x 33 (2d Cir. 2001) ................................................................................. 33

*Auleta v. U.S. Dep't of Justice,*
 80 F. Supp. 3d 198 (D.D.C. 2015) ........................................................................... 10

*Azam v. D.C. Taxicab Comm'n,*
 46 F. Supp. 3d 38 (D.D.C. 2014) ............................................................................. 35

*Bank of Nova Scotia v. United States,*
 487 U.S. 250 (1988)......................................................................................... 16, 27

*Barry v. United States*,
   865 F.2d 1317 (D.C. Cir. 1989) ................................................................. 12, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................... 1, 32, 34, 36

*Berman v. Crook*,
   293 F. Supp. 3d 48 (D.D.C. 2018) ............................................................. 37, 39

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ................................................................... 13, 14, 15

*Blair v. United States*,
   250 U.S. 273 (1919) ................................................................................... 14

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978) ................................................................................... 37

*Brunoehler v. Tarwater*,
   743 F. App'x 740 (9th Cir. 2018) ............................................................. 16, 22

*Bush v. Lucas*,
   462 U.S. 367 (1983) ................................................................................... 15

*Cambridge Holdings Grp. v. Fed. Ins. Co.*,
   489 F.3d 1356 (D.C. Cir. 2007) ................................................................. 10

*Camm v. Kennickell*,
   No. CIV. A. 85-3844(CRR), 1990 WL 198621 (D.D.C. Nov. 20, 1990),
   *aff'd*, 946 F.2d 1563 (D.C. Cir. 1991). .............................................. 12, 38

*Campbell v. Louisiana*,
   523 U.S. 392 (1998) ................................................................................... 18

*Carlson v. Green*,
   446 U.S. 14 (1980) ..................................................................................... 14

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018) ............................................................................... 35

*Chung v. U.S. Dep't of Justice*,
   333 F.3d 273 (D.C. Cir. 2003) ................................................................... 22

*Cmty Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*,
   150 F. App'x 389 (6th Cir. 2005) ............................................................. 11

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ............................................................................... 20, 31

*Costello v. United States*,
    350 U.S. 359 (1956).................................................................................. 27

*Cnty. Bd. of Arlington, VA v. U.S. Dep't of Transp.*,
    705 F. Supp. 2d 25 (D.D.C. 2010) ........................................................... 10

*Davis v. Passman*,
    442 U.S. 228 (1979).................................................................................. 14

*DeCamp v. Douglas Cty. Franklin Grand Jury*,
    978 F.2d 1047 (8th Cir. 1992) ................................................... 18, 24, 31

*Degen v. United States*,
    517 U.S. 820 (1996).................................................................................. 30

*Del Raine v. Carlson*,
    826 F.2d 698 (7th Cir. 1987) ................................................................... 11

*Dellums v. Powell*,
    660 F.2d 802 (D.C. Cir. 1981).................................................................. 32

*DiFolco v. Roberts*,
    585 F. Supp. 139 (D.R.I. 1984)................................................................ 26

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018)................................................................................ 38

*Downie v. City of Middleburg Heights*,
    301 F.3d 688 (6th Cir. 2002) ................................................................... 23

*Engquist v. Oregon Dep't of Agr.*,
    553 U.S. 591 (2008).................................................................................. 28

*Evans v. Chalmers*,
    703 F.3d 636 (4th Cir. 2012) ................................................................... 33

*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994).................................................................................. 29

*Feit v. Ward*,
    886 F.2d 848 (7th Cir. 1989) ................................................................... 11

*Flowers v. City of Minneapolis, Minn.*,
    558 F.3d 794 (8th Cir. 2009) ................................................................... 28

*Frank v. Relin*,
    1 F.3d 1317 (2d Cir. 1993)....................................................................... 11

*Gerlich v. U.S. Dep't of Justice*,
    659 F. Supp. 2d 1 (D.D.C. 2009) ....................................................... 11, 20

*Gerstein v. Pugh,*
   420 U.S. 103 (1975)................................................................................................ 14

*Gray v. Bell,*
   712 F.2d 490 (D.C. Cir. 1983) ........................................................ 13, 17, 29, 38

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ............................................................................................ 32

*Hartman v. Moore,*
   547 U.S. 250 (2006) ............................................................................................ 26

*Hatfill v. Gonzales,*
   519 F. Supp. 2d 13 (D.D.C. 2007) ..................................................................... 11

*Hatfill v. Mukasey,*
   539 F. Supp. 2d 96 (D.D.C. 2008) ..................................................................... 23

*Heck v. Humphrey,*
   512 U.S. 477 (1994)...................................................................................... 19, 30

*Holland ex rel. Overdorff v. Harrington,*
   268 F.3d 1179 (10th Cir. 2001) .......................................................................... 37

*Holt v. United States,*
   218 U.S. 245 (1910).............................................................................................. 27

*Hope v. Pelzer,*
   536 U.S. 730 (2002).............................................................................................. 38

*Hunter v. Bryant,*
   502 U.S. 224 (1991).............................................................................................. 32

*Imbler v. Pachtman,*
   424 U.S. 409 (1976)...................................................................................... 13, 24

*In re Grand Jury Investigation No. 18-34,*
   315 F. Supp. 3d 602 (D.D.C. 2018), *aff'd,* 96 F.3d 1047 (D.C. Cir. 2019). .......... 1, 18

*In re Grand Jury Investigation No. 18-3052,*
   916 F.3d 1047 (D.C. Cir. 2019) ................................................................ 1, 2, 18

*In re Iraq & Afghanistan Detainee Litig.,*
   479 F. Supp. 2d 85 (D.D.C. 2007),
   *aff'd sub nom., Ali v. Rumsfeld,* 649 F.3d 762 (D.C. Cir. 2011) ........................... 11

*In re Sealed Case No. 97–3025,*
   131 F.3d 208 (D.C. Cir. 1997) ........................................................................... 26

*In re Sealed Case No. 98-3077,*
    151 F.3d 1059 (D.C. Cir. 1998) ...................................................................................... passim

*Jacobs v. Vrobel,*
    724 F.3d 217 (D.C. Cir. 2013) ................................................................................................ 12

*Johnson v. Rosenstein,*
    No. 3:17-CV-1680-D, 2018 WL 1833055 (N.D. Tex. Mar. 12, 2018),
    *report and recommendation adopted,*
    No. 3:17-CV-1680-D, 2018 WL 1806870 (N.D. Tex. Apr. 17, 2018) .................................... 26

*Kaley v. United States,*
    571 U.S. 320 (2014) .................................................................................................................. 27

*Katz v. United States,*
    389 U.S. 347 (1967) .................................................................................................................. 35

*Kelley v. Fed. Bureau of Investigation,*
    67 F. Supp. 3d 240 (D.D.C. 2014) ........................................................................................... 21

*Kirby v. City of Elizabeth City, N.C.,*
    388 F.3d 440 (4th Cir. 2004) ................................................................................................... 11

*Klayman v. Nat'l Sec. Agency,*
    280 F. Supp. 3d 39 (D.D.C. 2017) *aff'd sub nom.,*
    *Klayman v. Obama,* No. 18-5281, 2019 WL 668267 (D.C. Cir. Feb. 5, 2019); ..................... 15

*Lee v. United States,*
    322 F.2d 770 (5th Cir. 1963) ................................................................................................... 29

*Lewis v. Bayh,*
    577 F. Supp. 2d 47 (D.D.C. 2008) ........................................................................................... 36

*Lewis v. Clarke,*
    137 S. Ct. 1285 (2017) ............................................................................................................... 9

*Liff v. Office of Inspector Gen. for U.S. Dep't of Labor,*
    881 F.3d 912 (D.C. Cir. 2018) ................................................................................... 16, 22, 23

*Loumiet v. United States,*
    255 F. Supp. 3d 75 (D.D.C. 2017),
    *reconsideration denied,* 292 F. Supp. 3d 222 (D.D.C. 2017) .................................................. 12

*Machibroda v. United States,*
    368 U.S. 487 (1962) .................................................................................................................. 19

*Marcilis v. Township of Redford,*
    693 F.3d 589 (6th Cir. 2012) ................................................................................................... 33

*Martin v. Sargent,*
    780 F.2d 1334 (8th Cir. 1985) ............................................................ 37

*Martinez v. Bureau of Prisons,*
    444 F.3d 620 (D.C. Cir. 2006) ....................................................... 24, 25

*Mayfield v. United States,*
    599 F.3d 964 (9th Cir. 2010) ............................................................. 22

*McAlister v. Potter,*
    843 F. Supp. 2d 117 (D.D.C. 2012) .................................................... 10

*McQueen v. United States,*
    5 F. Supp. 2d 473 (S.D. Tex. 1998) ............................... 12, 28, 30, 31

*McQueen v. United States,*
    897 F. Supp. 960 (S.D. Tex. 1995) ................................ 16, 37, 38, 39

*Minneci v. Pollard,*
    565 U.S. 118 (2012) .................................................................... 14, 16

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ........................................................................... 32

*Mittleman v. U.S. Treasury,*
    773 F. Supp. 442 (D.D.C. 1991) ........................................................ 23

*Montgomery v. Comey,*
    300 F. Supp. 3d 158 (D.D.C. 2018) *aff'd as modified,* 752 F. App'x 3 (D.C. Cir. 2019) ........ 36

*Montgomery v. Comey,*
    752 F. App'x 3 (D.C. Cir. 2019) ........................................................ 36

*Moore v. Valder,*
    65 F.3d 189 (D.C. Cir. 1995) ............................................................. 40

*Neptune v. Carey,*
    No. CV1712057BRMLHG, 2019 WL 913156 (D.N.J. Feb. 25, 2019) .................. 34

*Office of Personnel Management v. Richmond,*
    496 U.S. 414 (1990) ........................................................................... 29

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,*
    484 U.S. 97 (1987) ............................................................................. 10

*Paul v. Davis,*
    424 U.S. 693 (1976) ........................................................................... 29

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ........................................................................... 32

*Pena-Borrero v. Estremeda*,
  365 F.3d 7 (1st Cir. 2004) ................................................................................... 37

*Pitt v. D.C.*,
  491 F.3d 494 (D.C. Cir. 2007) ....................................................................... 36, 39

*Pollard v. D.C.*,
  191 F. Supp. 3d 58 (D.D.C. 2016), *aff'd,* 698 F. App'x 616 (D.C. Cir. 2017) ........................ 32

*Powers v. Ohio*,
  499 U.S. 400 (1991) ............................................................................................ 18

*Reid v. Hurwitz*,
  914 F.3d 670 (D.C. Cir. 2019) ........................................................................... 36

*Riley v. California*,
  573 U.S. 373 (2014) ............................................................................................ 16

*Robbins v. Oklahoma,*
  519 F.3d 1242 (10th Cir. 2008) ......................................................................... 33

*S.M. v. Krigbaum*,
  808 F.3d 335 (8th Cir. 2015) ............................................................................. 33

*Sacramento v. Lewis*,
  523 U.S. 833 (1998) ............................................................................................ 35

*Shvartser v. Lekser*,
  No. CV 16-1199 (JDB), 2017 WL 8944907 (D.D.C. July 5, 2017) ...................... 20

*Siegert v. Gilley*,
  500 U.S. 226 (1991) ............................................................................................ 29

*Simpkins v. D.C. Gov't*,
  108 F.3d 366 (D.C. Cir. 1997) ..................................................................... 10, 33

*Taylor v. Kavanagh*,
  640 F.2d 450 (2d Cir. 1981) ............................................................................... 17

*Terry v. Ohio*,
  392 U.S. 1 (1968) ................................................................................................ 37

*Tooley v. Napolitano*,
  586 F.3d 1006 (D.C. Cir. 2009) ......................................................................... 36

*Trifax Corp. v. District of Columbia*,
  314 F.3d 641 (D.C. Cir. 2003) ........................................................................... 29

*United States v. Armstrong*,
  517 U.S. 456 (1996) ....................................................................... 25, 26, 27, 38

*United States v. AT&T Inc.*,
290 F. Supp. 3d 1 (D.D.C. 2018) .......................................................................... 38

*United States v. Blackley*,
986 F. Supp. 616 (D.D.C. 1997) ........................................................................... 25

*United States v. Castellanos*,
731 F.2d 979 (D.C. Cir. 1984) ......................................................................... 35, 37

*United States v. Concord Mgmt. & Consulting LLC*,
317 F. Supp. 3d 598 (D.D.C. 2018),
*appeal dismissed,* No. 18-3061, 2018 WL 5115521 (D.C. Cir. Sept. 17, 2018) ....... 2

*United States v. Cotton*,
535 U.S. 625 (2002) .............................................................................................. 18

*United States v. Dionisio*,
410 U.S. 1 (1973) .................................................................................................. 27

*United States v. Jones*,
565 U.S. 400 (2012) .............................................................................................. 35

*United States v. Kelly*,
707 F.2d 1460 (D.C. Cir. 1983) ............................................................................ 39

*United States v. Lawlor*,
168 F.3d 633 (2d Cir. 1999) .................................................................................. 19

*United States v. Libby*,
429 F. Supp. 2d 27 (D.D.C. 2006) ........................................................................ 17

*United States v. Mendenhall*,
446 U.S. 544 (1980) .............................................................................................. 35

*United States v. Pollard*,
959 F.2d 1011 (D.C. Cir. 1992) ............................................................................ 39

*United States v. Saena Tech Corp.*,
140 F. Supp. 3d 11 (D.D.C. 2015) ........................................................................ 25

*United States v. Seals*,
130 F.3d 451 (D.C. Cir. 1997) .............................................................................. 27

*United States v. Slatten*,
865 F.3d 767 (D.C. Cir. 2017),
*cert. denied sub nom. Slough v. United States*, 138 S. Ct. 1990 (2018) ................. 38

*United States v. Smith*,
499 U.S. 160 (1991) .............................................................................................. 12

*United States v. Stanley,*
   483 U.S. 669 (1987) .................................................................................................... 20

*United States v. Velez Carrero,*
   77 F.3d 11 (1st Cir. 1996) ........................................................................................ 19

*United States v. Williams,*
   504 U.S. 36 (1992) ............................................................................................... 18, 27

*Van de Kamp v. Goldstein,*
   555 U.S. 335 (2009) .................................................................................................... 13

*Vasquez v. Hillery,*
   474 U.S. 254 (1986) .................................................................................................... 18

*Vega v. United States,*
   881 F.3d 1146 (9th Cir. 2018) .................................................................................. 16

*Vennes v. An Unknown No. of Unidentified Agents of U.S.,*
   26 F.3d 1448 (8th Cir. 1994) ................................................................................... 17

*Wayte v. United States,*
   470 U.S. 598 (1985) .......................................................................................... 26, 28, 29

*Westfall v. Erwin,*
   484 U.S. 292 (1988) .................................................................................................... 12

*Whitaker v. Barksdale Air Force Base,*
   No. CIV.A. 14-2342, 2015 WL 574697 (W.D. La. Feb. 11, 2015) ......................... 34

*Wilkie v. Robbins,*
   551 U.S. 537 (2007) ............................................................................................. passim

*Wilson v. Libby,*
   535 F.3d 697 (D.C. Cir. 2008) ............................................................................. 22, 23

*Wolfe v. Strankman,*
   392 F.3d 358 (9th Cir. 2004) .................................................................................... 11

*Yick Wo v. Hopkins,*
   118 U. S. 356 (1886) ................................................................................................... 27

*\*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ......................................................................................... passim

<u>Statutes</u>

5 U.S.C. § 552a(g)(1) .................................................................................................... 23

18 U.S.C. § 241 ........................................................................................................... 17

18 U.S.C. § 242 ........................................................................................................... 17

18 U.S.C. § 2511 ......................................................................................................... 21

18 U.S.C. § 2520 ......................................................................................................... 21

18 U.S.C. § 2701 ......................................................................................................... 21

18 U.S.C. §§ 2703(a)–(b), 2712(a), 2707(a)–(b) ...................................................... 21

18 U.S.C. § 2707(b) .................................................................................................... 21

28 U.S.C. § 503 ............................................................................................................. 2

28 U.S.C. § 509 ............................................................................................................. 2

28 U.S.C. § 510 ............................................................................................................. 2

28 U.S.C. § 515 ............................................................................................................. 2

28 U.S.C. § 530B(a) .................................................................................................... 23

28 U.S.C. § 535 ............................................................................................................. 2

28 U.S.C. § 2679 ........................................................................................................... 9

28 U.S.C. § 2679(b)(1) ............................................................................................... 12

28 U.S.C. § 2679(b)(2) ............................................................................................... 12

28 U.S.C. § 2680(h) .................................................................................................... 25

42 U.S.C. § 1983 .................................................................................................... 13, 37

50 U.S.C. §§ 1089, 1810 ............................................................................................ 22

50 U.S.C. §§ 1804, 1823 ............................................................................................ 22

The Federal Employees Liability Reform and Tort Compensation Act of 1988,
   Pub. L. 100-694, 102 Stat. 4564 (Nov. 18, 1988) ................................................ 12

Rules

Fed. R. Civ. P. 4 ...................................................................................................... 9, 10

Fed. R. Civ. P. 12 ................................................................................................. i, 9, 10

Fed. R. Crim. P. 6 ........................................................................................................... passim

Fed. R. Crim. P. 12 ................................................................................................................ 19

L. Cr. R. 6.1 ........................................................................................................................... 19

L. Cr. R. 57.14(b) ................................................................................................................... 12

L. Cr. R. 57.15(b) ................................................................................................................... 19

Regulations

28 C.F.R. § 600.1 ..................................................................................................................... 2

28 C.F.R. § 600.6 ................................................................................................................ 3, 25

28 C.F.R. § 600.7 ............................................................................................................. passim

28 C.F.R. § 600.8 ..................................................................................................................... 4

Other Authorities

Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) ........................................... 3, 5, 18

4 Witkin Cal. Crim. Law Illegal Evid., § 419 *Related Legislation* (4th ed Supp. 2018) .............. 20

## INTRODUCTION

Stating a valid claim for relief in federal court requires more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Jerome Corsi's inability to meet this threshold standard would doom his lawsuit even if the sort of litigation he proposes would not require this Court to substitute its own judgment for that of federal prosecutors as to how best to steer a criminal investigation. *See, e.g.*, Dkt. No. 15, First Amended Complaint (FAC) ¶ 20 (accusing the Special Counsel's Office of "sp[inning] the fake narrative that Plaintiff Corsi 'colluded' with Russian[s]"). In this context, reasons abound for this Court "to stay its *Bivens* hand." *Wilkie v. Robbins*, 551 U.S. 537, 554 (2007). To do otherwise would implicate separation-of-powers concerns and invite unworkable litigation, risks that are unjustified by the bald allegations of bad motive at the crux of this lawsuit.

## STATEMENT[1]

In May 2017, the Deputy Attorney General exercised his statutory and regulatory authority to appoint Robert S. Mueller, III, "Special Counsel for the United States Department of Justice." U.S. Dep't of Justice, Office of the Deputy Attorney General, Order No. 3915-2017 (May 17, 2017) (Appointment Order)[2]; *see generally In re Grand Jury Investigation No. 18-34*, 315 F. Supp. 3d 602, 612 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019). The Appointment Order charged Special Counsel Mueller with a "full and thorough investigation of the Russian government's efforts to interfere with the 2016 presidential election," including "any links and/or coordination between the Russian government and individuals associated with the

---

[1] This motion assumes for argument's sake the "veracity" of any "well-pleaded factual allegations," but not "pleadings" that "are no more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[2] Available online at https://www.justice.gov/opa/press-release/file/967231/download.

campaign of President Donald Trump." Appointment Order. That investigation has concluded.

*See* Letter from Attorney General William P. Barr to The Honorable Lindsey Graham, Chairman, Committee on the Judiciary, U.S. Senate, *et al.* (Mar. 22, 2019) (notifying Congress "that Special Counsel Robert S. Mueller III has concluded his investigation").

## I. Statutory and Regulatory Background: Special Counsels

A Special Counsel appointment reflects a determination by the Attorney General (or, in cases of recusal, the Deputy Attorney General) that: (1) "criminal investigation of a person or matter is warranted," (2) "a conflict of interest" or "other extraordinary circumstances" prevent "a United States Attorney's Office or litigating Division of the Department of Justice" from handling the "investigation or prosecution," and (3) "appoint[ing] an outside Special Counsel to assume responsibility for the matter" would serve "the public interest." 28 C.F.R. § 600.1. In appointing a Special Counsel, the Attorney General acts pursuant to expansive statutory authority, *see United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 622 (D.D.C. 2018), *appeal dismissed,* No. 18-3061, 2018 WL 5115521 (D.C. Cir. Sept. 17, 2018) (citations omitted),[3] and regulations that seek "to strike a balance between independence and accountability in certain sensitive investigations." Office of Special Counsel, 64 Fed. Reg.

---

[3] *See generally In re Grand Jury Investigation No. 18-3052*, 916 F.3d 1047, 1049 (D.C. Cir. 2019) (Under 28 U.S.C. § 503, "[t]he Attorney General is the head of the Department of Justice."); *id.* (Congress has "vested" in the Attorney General virtually "[a]ll functions of other officers of the Department" with 28 U.S.C. § 509.); *id.* (Congress "empowered the Attorney General to authorize other Department officials to perform the functions of the Attorney General" in 28 U.S.C. § 510); *id.* ("Congress has also authorized the Attorney General to commission attorneys 'specially retained under the authority of the Department' as 'special assistant to the Attorney General or special attorney,' [citing § 515(b)], and provided 'any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal…which United States attorneys are authorized by law to conduct,' [citing § 515(a)]"); *id.* ("Congress has also provided for the Attorney General to 'appoint officials . . . to detect and prosecute crimes against the United States.' [citing § 533(1)].").

37,038, 37038 (July 9, 1999). Consistent with that balance, a Special Counsel possesses considerable discretion, subject to the Attorney General's broad authority. Although a Special Counsel generally has "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney," 28 C.F.R. § 600.6, and the discretion to "determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities," *id.*, the regulations impose several limits.

While a Special Counsel "shall not be subject to the day-to-day supervision of any official of the Department [of Justice,]" *id.*, § 600.7(b), the regulations mandate that he or she "shall" both "comply with the rules, regulations, procedures, practices and policies of the Department of Justice" and "consult with appropriate offices within the Department for guidance with respect to established practices, policies and procedures of the Department, including ethics and security regulations and procedures." *Id.* § 600.7(a). If a Special Counsel determines that extraordinary circumstances "would render compliance with required review and approval procedures by the designated Departmental component inappropriate," then "he or she may consult directly with the Attorney General." *Id.*

As noted above, a Special Counsel is given discretion to "determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities." *Id.* § 600.6. As also already mentioned, that discretion is limited by a general obligation to consult with appropriate Department of Justice offices regarding established practices, policies, and procedures. *See id.* § 600.7(a). Additionally, a Special Counsel must "notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports." *Id.*

3

§ 600.8(b). Annual reports on "the status of the investigation" are also required, to facilitate a determination as to "whether the investigation should continue." 28 C.F.R. § 600.8(a)(2). Likewise, "at the conclusion of" his or her work, a Special Counsel "shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." *Id*. § 600.8(c). And at any point "the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id*. § 600.7(b). In making such a determination, the Attorney General shall give "great weight" to the Special Counsel's views. *Id.* The Attorney General will report to Congress any determination that a Special Counsel's proposed action shall not be pursued. *Id*.

A Special Counsel and his or her staff "shall be subject to disciplinary action for misconduct and breach of ethical duties under the same standards and to the same extent as are other employees of the Department of Justice." *Id*. § 600.7(c). "[I]nquiries into such matters shall be handled through the appropriate office of the Department upon the approval of the Attorney General." *Id*. A Special Counsel "may be disciplined or removed from office only by the personal action of the Attorney General," for "misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." *Id*. § 600.7(d).

In sum, a Special Counsel has "day-to-day independence," but the regulations contemplate "that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General (or acting Attorney General if the Attorney General is personally

recused in the matter)." Office of Special Counsel, 64 Fed. Reg. at 37038.

## II. Corsi's Criticisms of the Investigation

Corsi, who self-identifies as "a central figure of interest" in the now-concluded investigation, FAC ¶¶ 21, 27,[4] offers no *factual* particulars as to his dealings with the Special Counsel's Office. He accuses its prosecutors, collectively, of somehow "sp[inning] the fake narrative that Plaintiff Corsi 'colluded' with Russian[s]." FAC ¶ 20.[5] He makes clear that when he filed this suit, he: (1) feared indictment based on this "narrative";[6] and (2) took offense at prosecutors' perceived decision to handle him aggressively rather than extend the deference he feels owed as "a recognized and distinguished" citizen.[7] Corsi's allegations of prosecutorial

---

[4] *See also* Letter from Larry Klayman to Hon. Matthew G. Whitaker, et al. (Dec. 3, 2018), available online at http://www.larryklayman.com/pdf/181202-FINAL%20Misconduct%20Complaint%20Corsi%20LK.pdf (Klayman Letter) at 2 ("Dr. Corsi has been investigated by Special Prosecutor Mueller and the attorneys whom he hired to serve as prosecutors[.]").

[5] A news article Corsi cites reports that he "m[et] with Mueller's team for the first time Sept. 6[, 2018];" "appeared before Mueller's grand jury twice, on Sept. 21 and Nov. 9[, 2018];" and rejected "a plea agreement" drafted "Nov. 14[, 2018]." FAC at 8 n.4. Corsi's attorney has elsewhere identified the relevant time period as "August 28, 2018 through November 26, 2018." Klayman Letter at 5.

[6] *See* FAC ¶¶ 20 ("Defendant Mueller, and others on his staff at his direction have … spun the fake narrative[.]"), 22 ("Mueller has threatened to indict Plaintiff Corsi."), 52 (alleging ongoing pressure to "comply with the unlawful demands of Defendant Mueller … or be indicted"); *see also* Dkt. No. 14, Transcript of Related Case Hearing (Jan. 1, 2019) (Transcript) at 3:17-18 ("[H]e's under the gun[.]"); *id.* at 3:22-4:1 ("[W]e're sitting here with that potential [for indictment] today."); Klayman Letter at 7 ("[T]he Special Counsel's office is … threatening to charge Dr. Corsi[.]").

[7] *See* FAC ¶¶ 15 (describing Corsi as "recognized and distinguished"), 45 (accusing prosecutors of trying to "coerce, extort, threaten and/or blackmail him into submission to provide false testimony"); Klayman Letter at 3 (calling Corsi "recognized and distinguished"), 12 (accusing "prosecutorial staff" of "threaten[ing] a witness").

overreach, both myriad and vague, fall into roughly five categories:

### A.  Unrealized "Threats" of Indictment

Corsi claims that based on the "fake narrative" of collusion, "Defendant Mueller has threatened to indict Plaintiff Corsi . . . unless Plaintiff Corsi would provide the false sworn testimony under oath that [his staff] demanded." FAC ¶ 22. Corsi does not say in what context he supposedly received this "threat." He neglects to mention when or how it was communicated. He declines to say whether it came directly from Special Counsel Mueller or through a member of his staff. *See*, *e.g.*, FAC ¶ 23 ("Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify[.]").The complaint is equally cryptic as to what role private parties and various federal intelligence agencies supposedly played. *See* FAC ¶ 55 ("Defendants . . . acting in concert jointly and severally, have . . . threaten[ed] Plaintiff Corsi with prosecution and prison[.]"). Corsi also does not allege that prosecutors ever actually indicted him or succeeded in eliciting false testimony.

### B.  Grand Jury "Leaks"

Corsi asserts that "Defendant Mueller and his staff, at his direction . . . violated Rule 6(e)(2) of the Federal Rule of Criminal Procedure" by leaking grand jury information. FAC ¶¶ 24, 25. Again, *factual* particulars are conspicuously absent.[8] He makes no allegation suggesting that the Special Counsel personally contacted the media. Corsi does not assert that Mr. Mueller issued any specific instructions to his media staff to engage in such leaks. Instead, Corsi proffers vague allusions to Special Counsel Mueller's supervisory authority over those

---

[8] *See id.* ¶¶ 26 (information "could only possibly have come from Defendant Mueller"), 28 ("This information could only have been leaked by Defendant Mueller."), 29 ("This grand jury confidential information" was "only known by Defendant Mueller and those working at his direction.").

supposedly directly responsible for "leaks."[9] Corsi says these "leaks" have caused "irreparable harm to his reputation." *Id.* ¶ 53.

### C.  Vague Allegations of Widespread Digital "Surveillance"

Corsi's "surveillance" allegations leave even more to the imagination. He says that the Special Counsel's Office colluded with a host of federal intelligence agencies to "conduct[] illegal and unconstitutional surveillance" in search of "information that can be used by Defendant Mueller to coerce, extort, threaten and/or blackmail" him. FAC p.2, ¶ 32. Corsi hazards not even a guess as to what role each participant may have played in this joint "surveillance" venture, or when it supposedly began.[10] He describes no particular manner of surveillance, except to say that it supposedly involved "targeted 'PRISM' collection under Section 702 of the Foreign Intelligence Surveillance Act." FAC ¶ 30. In lieu of such details, Corsi asks the Court to extrapolate that "surveillance" personally attributable to Special Counsel Mueller took place because: first, investigators "could not possibly have identified" Corsi's "stepson" (whom he says prosecutors "interrogated") without "intercepting Plaintiff's text and other messages," *id.* ¶ 31(a); second, "[a]uthor Jim Garrow, who resides in Toronto, Canada," has some sort of "evidence of repeated" yet apparently unsuccessful "attempts by" unspecified "government authorities to intercept electronically Plaintiff Corsi's telephone conversations," *id.*

---

[9] *See*, *e.g.*, FAC ¶¶ 28 ("Mr. Ross . . . obtained information about this grand jury testimony from persons working under the direction of Special Counsel Robert Mueller."), 29 (alleging that a "press secretary . . . has periodically disclosed and released grand jury information to 'favorable media,' at the direction of Defendant Mueller and his prosecutorial staff"), 51 ("Defendant Mueller and at his direction his staff . . . have violated . . . Rule 6(e)(2).").

[10] He has elsewhere called the claimed surveillance part of a "pattern and practice" that "has been ongoing for nearly over a half a decade," long before Mueller became Special Counsel. Dkt. No. 8, Plaintiff's Response to Court's Order of December 12, 2018, at 1 (asserting that this case "is intricately related to" Plaintiff's counsel's other lawsuits over an alleged "continuing pattern and practice of illegal and unconstitutional misconduct"), 3 (purporting to challenge "programs" in effect "since at least 2013").

¶ 31(b); and third, "Corsi … routinely speaks with persons located overseas in regions that are surveilled under PRISM," *id.* ¶ 33. Corsi further speculates that evidence of "surveillance" might "be uncovered during discovery." *Id.* ¶ 31(c).

### D. "Abuse of Process"

Corsi argues that Special Counsel Mueller "abused this Court's grand jury and other legal processes by subpoenaing, without any reasonable or probable cause, members of Plaintiff's family." *Id.* ¶ 57. He claims these subpoenas were an attempt "to coerce and extort him into providing the desired false testimony" and therefore "a deliberate misuse of the Court's grand jury and other judicial processes." *Id.* ¶¶ 57–58.

### E. Supposed "Interference" with Corsi's "Business Relationships"

Corsi's "interference with business relationships" allegations defy simple summary. Essentially, he hypothesizes that Special Counsel Mueller ("working in concert with" federal intelligence agencies, private citizens, and the *Washington Post*) "interfer[ed] with" Corsi's relationships with the publisher and distributor of his new book about "Mueller's witch hunt" and with his former employer as part of a scheme to "harm Dr. Corsi financially so he will not have the necessary funds and resources to defend himself against the illegal and unconstitutional actions of the Special Counsel." *Id.* ¶¶ 34, 35, 39. Again, Corsi offers no factual allegations regarding any role he believes Special Counsel Mueller personally played in this alleged wrongdoing.

### III. Claims Asserted Against Special Counsel Mueller in His *Individual* Capacity

This motion and memorandum address only those claims asserted against Special Counsel Mueller in his individual capacity, for: (1) alleged Fourth Amendment violations, *id.* ¶¶ 42–48; (2) leaks of grand jury information protected by Federal Rule of Criminal Procedure 6(e)(2), *id.* ¶¶ 49–53; (3) "abuse of process," *id.* ¶¶ 54–58; and (4) "tortious interference with

business relationships," *id.* ¶¶ 59–65.[11] Corsi seeks wide-ranging equitable relief and more than a

billion dollars in compensatory and punitive damages. *See* Dkt. No. 16, Plaintiff Jerome Corsi's

Notice of Errata (Jan. 22, 2019); FAC p.18. None of this can survive Rule 12 scrutiny.

## ARGUMENT

Corsi's individual-capacity claims against Special Counsel Mueller fail on numerous

grounds. First, he neglected to serve Mr. Mueller in his personal capacity. *See* Fed. R. Civ. P.

4(i)(3); 12(b)(5). Second, Corsi has no cause of action, because: (1) Equitable relief is

unavailable from individuals; (2) The grand jury rules create no independent, private right of

action for money damages; (3) The *Westfall* Act requires substitution of the United States as sole

defendant on the common-law tort claims; and (4) "Special factors" counsel against recognizing

a *Bivens* remedy against a prosecutor on behalf of this self-identified "figure of interest." *See*

Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 2679; *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Finally,

even if Corsi could sue Special Counsel Mueller on these theories, he cannot overcome qualified

immunity: No well-pleaded *factual* allegations plausibly suggest that Mr. Mueller personally

violated the Fourth Amendment or Rule 6(e) in any clearly established way. *See Iqbal*, 556 U.S.

at 662.

## I.   CORSI HAS NOT SERVED SPECIAL COUNSEL MUELLER.

Courts cannot "exercise personal jurisdiction" until "the procedural requirement of

service of summons [is] satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97,

---

[11] Corsi also pursues official-capacity claims, which the United States has separately
moved to dismiss. *See* Dkt. No. 22, The Government's Motion to Dismiss; *Lewis v. Clarke*, 137
S. Ct. 1285, 1291 (2017) ("In an official-capacity claim, the relief sought is only nominally
against the official and in fact is against the official's office and thus the sovereign itself.")
(citations omitted). Additionally, he asserts a "defamation" count solely against non-federal
defendants. *See* FAC ¶¶ 66-72 (Count V).

104 (1987); *accord Cambridge Holdings Grp. v. Fed. Ins. Co.*, 489 F.3d 1356, 1361 (D.C. Cir.

2007) (Without proper service, "the court lacks personal jurisdiction to act with respect to that

defendant at all."). "[E]very court of appeals that has spoken on the question," including the D.C.

Circuit, "has decided that defendants in *Bivens* actions must be served as individuals." *Simpkins*

*v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997); *see* Fed. R. Civ. P. 4(i)(3) ("To serve a United

States officer or employee sued in an individual capacity . . . a party must serve the United States

and also serve the officer or employee under Rule 4(e), (f), or (g)."). Corsi had 90 days, until

March 11, 2019, to accomplish this. *See* Fed. R. Civ. P. 4(m). He failed. *See* Fed. R. Civ. P.

12(b)(5); *McAlister v. Potter*, 843 F. Supp. 2d 117, 122 (D.D.C. 2012) (dismissing claims against

postal inspectors where already-extended service time had elapsed and "nothing in the record . . .

suggest[ed] [plaintiff had] even attempted service on either of" them).

## II.  CORSI HAS NO INDIVIDUAL-CAPACITY CAUSE OF ACTION.

Corsi seeks equitable relief and money damages on a range of theories. *See* FAC ¶¶ 42–

48 ("Fourth Amendment violation"), 49–53 ("violation of grand jury secrecy provisions")

54–58 ("abuse of process"), 59–65 ("tortious interference"). All must fail for want of a cause of

action against Mr. Mueller in his individual capacity.

### A.  Corsi Cannot Recover "Equitable, Declaratory," or "Injunctive" Relief from Special Counsel Mueller in His Personal Capacity (Counts I–IV).

Corsi appears to pursue "equitable, declaratory," and "injunctive relief" from Mr. Mueller

personally. FAC p.18. He cannot. *See Cnty. Bd. of Arlington, VA v. U.S. Dep't of Transp.*, 705 F.

Supp. 2d 25, 29 (D.D.C. 2010) (dismissing claims against individual-capacity defendants

because plaintiffs sought "only declaratory and injunctive relief"). "[A] successful *Bivens*

plaintiff is entitled to monetary damages only." *Auleta v. U.S. Dep't of Justice*, 80 F. Supp. 3d

198, 203 (D.D.C. 2015). Equitable relief can come only from "government employees acting in

their *official* capacities." *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007) (emphasis

added).[12] And a lawsuit over official conduct "must seek declaratory relief against [the

defendant] in [his or her] official capacity." *In re Iraq & Afghanistan Detainee Litig.*, 479 F.

Supp. 2d 85, 118, 119 (D.D.C. 2007), *aff'd sub nom.*, *Ali v. Rumsfeld,* 649 F.3d 762 (D.C. Cir.

2011); *Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 19 n.20 (D.D.C. 2009) ("Declaratory

relief is inappropriate in individual capacity suits."). And, as explained in the Government's

motion, Corsi lacks standing to seek such relief. *See* Dkt. No. 22-1 at pp.8–14. So insofar as

Corsi seeks anything beyond money damages from Mr. Mueller in his personal capacity, his

claims fail as a matter of law.

### B.  The Grand Jury Rules Create No Independent, Private Right of Action Against Special Counsel Mueller in His Personal Capacity (Count II).

Corsi cannot litigate alleged grand jury "leaks" in an independent civil suit for money

damages. *See In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1070 (D.C. Cir. 1998) ("The

plaintiff in a Rule 6(e)(2) suit would not, of course, be entitled to seek monetary damages . . .

from an errant prosecutor[.]"). A witness complaining of a Rule 6(e) violation has only "a very

limited right to seek injunctive relief or civil contempt of court *through the district court*

*supervising the grand jury*," which will then resolve the issue in "ancillary proceedings." *Sealed*

---

[12] *See also Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("equitable relief" available from defendant "only in his official, not his individual, capacity."); *Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) (Injunctive relief can only be awarded against employee in his or her official capacity.); *Cmty Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) (no individual-capacity suit available "for an injunction in situations in which the injunction relates only to the official's job, *i.e.* his official capacity"); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (Equitable relief "can be obtained only from the defendants in their official capacities."); *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987) (equitable relief only available from officers in their official capacities); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (declaratory and injunctive relief "only available in an official capacity suit").

*Case No. 98-3077*, 151 F.3d at 1070 (quoting *McQueen v. United States* (*McQueen I*), 5 F. Supp.

2d 473, 482 (S.D. Tex. 1998) (emphasis added).[13] This defeats Count II. *See Camm v.*

*Kennickell*, No. CIV. A. 85-3844(CRR), 1990 WL 198621, at *7 (D.D.C. Nov. 20, 1990)

(rejecting "the proposition that an individual may maintain a cause of action for money damages

based upon a breach of Rule 6(e)'s requirement of grand jury secrecy"), *aff'd,* 946 F.2d 1563

(D.C. Cir. 1991).

C. **Special Counsel Mueller Has Absolute *Westfall* Act Immunity to Claims for "Abuse of Process" (Count III) and "Tortious Interference With Business Relationships" (Count IV).**

The *Westfall* Act[14] makes a claim against the United States under the Federal Tort Claims

Act (FTCA) the "exclusive" remedy for negligent or wrongful acts or omissions of federal

employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1).[15] This includes

allegations of "abuse of process" and "tortious interference with business relationships."[16] The

Attorney General's designee has certified that Special Counsel Mueller acted within the scope of

---

[13] *See also Barry v. United States*, 865 F.2d 1317, 1322 (D.C. Cir. 1989) (Courts punish violations of Rule 6(e) only via "equitable relief and civil contempt."); *see also* L. Cr. R. 57.14(b) ("[T]he Chief Judge shall . . . hear and determine all matters related to proceedings before the grand jury.").

[14] The Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. 100-694, 102 Stat. 4564 (Nov. 18, 1988), abrogated the rule of *Westfall v. Erwin*, 484 U.S. 292 (1988), which had limited the immunity from state tort suit available to federal employees. *See United States v. Smith*, 499 U.S. 160, 163 (1991).

[15] Two types of tort suits fall outside of the *Westfall* Act's ambit: (1) those "for a violation of the Constitution," and (2) those "for a violation of a statute of the United States." *See* 28 U.S.C. § 2679(b)(2). Consequently, Mr. Mueller does not assert *Westfall* Act immunity with respect to the Fourth Amendment claim.

[16] *See, e.g.*, *Loumiet v. United States*, 255 F. Supp. 3d 75, 97 (D.D.C.) ("[T]he state-law tort claim" for "abuse of process" was "converted to [an] FTCA claim[] against the United States."), *reconsideration denied,* 292 F. Supp. 3d 222 (D.D.C. 2017); *Jacobs v. Vrobel*, 724 F.3d 217, 219 (D.C. Cir. 2013) (affirming *Westfall* substitution on claim for "malicious intentional interference with plaintiff's alternative employment opportunities").

his office or employment at the time Corsi's claims arose. *See* Exhibit A. No valid basis exists to dispute this, which mandates substitution of the United States as sole defendant on these counts. *See* FAC ¶ 20 (exclusively challenging acts allegedly undertaken "[i]n the course of his investigation"). Counts III and IV cannot proceed against Mr. Mueller in his personal capacity.

### D. Special Counsel Mueller Has Absolute Immunity for Conduct Before an Indicting Grand Jury.

Corsi offers no well-pleaded allegations regarding the context in which prosecutors allegedly "threatened" him, or the manner in which they have supposedly propagated a "fake narrative." This suggests that he challenges prosecutors' "presentation of evidence to an indicting Grand Jury." *Gray v. Bell*, 712 F.2d 490, 502–03 (D.C. Cir. 1983). If so, Special Counsel Mueller has absolute immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages[.]"); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 344–46 (2009) (extending immunity to supervisory prosecutors).

### E. The Judicially Implied *Bivens* Remedy Should Not Be Extended to This New Context.

Corsi assumes he can sue directly under the Fourth Amendment. *See* FAC ¶¶ 42–48. But he has no such "automatic entitlement." *Wilkie*, 551 U.S. at 550. Constitutional-tort suits against federal officers stem from *Bivens*. *See Abbasi*, 137 S. Ct. at 1857 (Congress created a cause of action against state officials for alleged constitutional violations under 42 U.S.C. § 1983 but no analogous law permitting suits against employees of the federal government). There, the Supreme Court allowed the victim of a warrantless search and seizure with no alternative remedies to sue for an allegedly abusive physical search and arrest in his home, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). Since then, the Supreme Court has implied constitutional remedies only twice, for: (1) a Fifth Amendment

equal-protection claim, *Davis v. Passman*, 442 U.S. 228, 230 (1979); and (2) an Eighth

Amendment "deliberate indifference" claim, *Carlson v. Green*, 446 U.S. 14, 17 n.1 (1980). In the

decades since *Bivens*, *Davis*, and *Carlson*, it has had "several" opportunities to recognize new

constitutional remedies and "in each instance . . . decided against it." *Minneci v. Pollard*, 565

U.S. 118, 124 (2012). Doing so is now "disfavored," and the Court has even intimated that the

outcomes in its three core cases "might have been different if they were decided today." *Abbasi*,

137 S. Ct. at 1856–57.

Against this backdrop, Corsi, a self-identified "figure of interest," proposes a *Bivens*

action over—not a warrantless search or seizure in his home—but a federal criminal

investigation pending at the time of filing. *See* FAC ¶¶ 27, 45. This is as bad an idea as it sounds

at first blush. *See Wilkie*, 551 U.S. at 561 & n.11 (warning that a "*Bivens* cure" can be "worse

than the disease"); *cf. Blair v. United States*, 250 U.S. 273, 282 (1919) (witnesses may not "set

limits to the [grand jury] investigation"); *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[T]he

accused is" not "entitled to judicial oversight or review of the decision to prosecute."). Numerous

"special factors" counsel against such a substantial and unjustifiable expansion of the *Bivens*

remedy. *See Abbasi*, 137 S. Ct. at 1857.

### 1.  A New *Bivens* Claim Must Fail if "Special Factors" Counsel Against It.

A constitutional claim that differs in a meaningful way from *Bivens*, *Davis*, and *Carlson*

cannot move forward if (1) "alternative, existing process[es]" guard against the type of harm at

issue, *Wilkie*, 551 U.S. at 550; *or* (2) any other "special factors counse[l] hesitation" in implying

a damages remedy, *id.* (quoting *Bivens*, 403 U.S. at 396). This two-prong inquiry "concentrate[s]

on whether the Judiciary is well suited, absent congressional action or instruction, to consider

and weigh the costs and benefits of allowing a damages action." *Abbasi*, 137 S. Ct. at 1857–58.

"The question is 'who should decide' whether to provide for a damages remedy, Congress or the

courts?" *Id.*at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "The answer most often will be Congress." *Abbasi*, 137 S. Ct. at 1857. Such is the case here.

### 2. Corsi Proposes a Novel Fourth Amendment Claim.

The "new context" inquiry asks if a case is different from *Bivens*, *Davis*, and *Carlson*. *Abbasi*, 137 S. Ct. at 1860. This lawsuit differs from those in nearly every material respect: *Bivens* alone involved a Fourth Amendment claim. *See id.* ("A case might differ in a meaningful way" because of the relevant Amendment.). And Corsi's claim is immediately distinguishable from *Bivens* because that case arose out of a physically invasive search in connection with an arrest without probable cause. *Bivens*, 403 U.S. at 389. This suit over alleged improprieties in a criminal investigation, one alleged to include grand jury proceedings, seeks to litigate far beyond the "common and recurrent sphere of law enforcement" giving rise to *Bivens*. *Abbasi*, 137 S. Ct. at 1857; *see also id.* at 1860 (*Bivens* novelty can turn on "the extent of judicial guidance as to how an officer should" have behaved; "the statutory or other legal mandate under which the officer was operating;" or "the risk of disruptive intrusion by the Judiciary into the functioning of other branches"). The novel mechanisms of Corsi's alleged injuries—rumors,[17] unrealized

---

[17] *See*, *e.g.*, FAC ¶ 45 (alleging that Defendants jointly "attempt[ed] to destroy his reputation").

"threats" of indictment,[18] digital "surveillance,"[19] and grand jury leaks[20]—make this abundantly

clear. *Cf. Riley v. California*, 573 U.S. 373, 400–01 (2014) (distinguishing data's "pre-digital

analogue" in the Fourth Amendment context). A special-factors inquiry is therefore mandatory.

*Abbasi*, 137 S. Ct. at 1857.

### 3.  Special Factors Counsel Against Corsi's Fourth Amendment Claim.

"Special factors counseling hesitation" is "an embracing category." *Arar v. Ashcroft*, 585

F.3d 559, 573–74 (2d Cir. 2009). This case implicates an exceptionally broad range of them.

### a.  Alternative Processes: For Corsi, It Is Not "Damages or Nothing."

*Any* sort of "alternative, existing process" may "limit the power of the Judiciary to infer a

new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858, 1876 (quoting *Wilkie*, 551 U.S. at 550).

This includes "administrative, statutory, equitable, and state law remedies." *Vega v. United

States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *accord Abbasi*, 137 S. Ct. at 1865 ("[A]lternative

remedies" could include "a writ of *habeas corpus*," an "injunction," or "some other form of

equitable relief."). A full "constellation" of existing processes guards against the type of harm

---

[18] *See, e.g.*, FAC ¶ 45 ("These illegal and criminal acts . . . were intended to coerce, extort, threaten and/or blackmail [Corsi] into submission to provide false sworn testimony.").

[19] *See Attkisson v. Holder*, No. 18-1677, 2019 WL 1292886, at *11 (4th Cir. Mar. 21, 2019) ("[A] claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest[.]"); *Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 58 n.14 (D.D.C. 2017) (*Abbasi* "makes it unclear whether plaintiffs could even maintain a *Bivens* action against them" for alleged illegal surveillance), *aff'd sub nom., Klayman v. Obama,* No. 18-5281, 2019 WL 668267 (D.C. Cir. Feb. 5, 2019); *Brunoehler v. Tarwater*, 743 F. App'x 740, 743 (9th Cir. 2018) ("declin[ing] to extend *Bivens* in this context" of wiretapping).

[20] *See* FAC ¶ 45 (claiming Defendants "illegally obtained and released grand jury information"); *McQueen v. United States* (*McQueen II*), 897 F. Supp. 960, 962 (S.D. Tex. 1995) ("Plaintiff asks the court to extend *Bivens* and provide him an additional cause of action" over claims of "'leaks' of grand jury information to other federal and state agencies.").

Corsi alleges. *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 918 (D.C. Cir. 2018) (quoting *Minneci*, 565 U.S. at 125, and citing *Wilkie*, 551 U.S. at 550).[21]

> **i.   The Federal Criminal Justice System Is the First Line of Defense Against Abuses of the Nature Corsi Alleges.**

The federal criminal justice system abounds with "built-in safeguards" that, together, "diminish the need for private redress against prosecutorial abuse." *Gray*, 712 F.2d at 498; *see also id.* ("Inherent in the judicial process are checks that serve to restrain prosecutorial abuse, and any abuse that does occur is subject to various self-remedying mechanisms of the adversarial process."). Corsi's claims implicate a range of integrated "alternative, existing processes" almost as broad as the allegations themselves. *Abbasi*, 137 S. Ct. at 1876 (quoting *Wilkie*, 551 U.S. at 550).[22]

> **(a)   The Attorney General Oversees Special Counsel Activities.**

Corsi's suggestion that, without the prospect of *Bivens* liability, a Special Counsel has unfettered discretion to employ "coerc[ion]," "extort[ion]," "threat[s]," and "blackmail," FAC ¶

---

[21] *Cf. Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988) ("[A] knowing violation of Rule 6 may be punished as a contempt of court. . . . [T]he court may direct a prosecutor to show cause why he should not be disciplined and request the bar or the Department of Justice to initiate disciplinary proceedings against him. The court may also chastise the prosecutor in a published opinion.") (citation omitted); *Apton v. Wilson*, 506 F.2d 83, 93–94 (D.C. Cir. 1974) ("[C]ircumstances typically provide alternative instruments of the judicial branch to check [prosecutorial] misconduct—the discretion of the grand jury, the procedures of a trial, and the potential sanction of discipline imposed by the court itself.").

[22] *Cf. Wilkie*, 551 U.S. at 551-52 (Plaintiff had a remedy for criminal charges in his jury trial); *Taylor v. Kavanagh*, 640 F.2d 450, 453-54 (2d Cir. 1981) ("Prosecutorial abuses can and should be remedied at the trial and appellate levels, as well as by state and federal post-conviction collateral procedures"); *Vennes v. An Unknown No. of Unidentified Agents of U.S.*, 26 F.3d 1448, 1453 (8th Cir. 1994) (refusing to create *Bivens* action because courts "may reasonably require that the defendant prove allegations of outrageous coercive conduct [by police] in the most timely and relevant proceeding, his criminal trial").

32, overlooks not only the laws[23] and rules[24] standing in the way of such abuses in any criminal matter, but also the additional fact that "the Special Counsel is supervised by" the Attorney General, "an official" who is him- or herself "accountable to the elected President." *Grand Jury Investigation No. 18-34*, 315 F. Supp. 3d at 612; *see also Grand Jury Investigation No. 18-3052*, 916 F.3d at 1052 ("Special Counsel Mueller effectively serves at the pleasure of an Executive Branch officer who was appointed with the advice and consent of the Senate."). "[P]roposed indictments and other significant events" require meaningful consultation up the chain of command. Office of Special Counsel, 64 Fed. Reg. at 37038. Any obvious overstepping may be deemed an "investigative or prosecutorial step so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.7(b). The Attorney General may also adjust the Special Counsel's scope of authority, impose discipline, or even remove a Special Counsel from office. *In re Grand Jury Investigation No. 18-3052*, 916 F.3d at 1050.

### (b) The Grand Jury Process Acts as a Check on Prosecutors.

The grand jury process serves as an independent check on the dangers posed by an overzealous prosecutor wielding a "fake narrative." FAC ¶ 20; *see United States v. Cotton*, 535 U.S. 625, 634 (2002) (A "grand jury . . . acts as a check on prosecutorial power."); *Powers v. Ohio*, 499 U.S. 400, 411 (1991) ("The jury acts as a vital check against the wrongful exercise of power by the State and its prosecutors."); *United States v. Williams*, 504 U.S. 36, 47 (1992)

---

[23] The United States can bring criminal charges against a prosecutor who willfully violates an individual's constitutional rights, *see* 18 U.S.C. § 242, or conspires with a witness or police officer to do so, *see* 18 U.S.C. § 241.

[24] *See United States v. Libby*, 429 F. Supp. 2d 27, 41 (D.D.C. 2006) (Special Counsel appointment does not confer "the power to make policy decisions or ignore established Department of Justice regulations and policies"); *see also* 28 C.F.R. § 600.7(a).

(describing the grand jury as "a kind of buffer or referee"). Indictments issue only pursuant to twelve grand jurors' independent finding that an "adequate basis" exists "for bringing a criminal charge." *Williams*, 504 U.S. at 51; *see also* Fed. R. Crim. P. 6(f); *DeCamp v. Douglas Cty. Franklin Grand Jury*, 978 F.2d 1047, 1054 (8th Cir. 1992) ("The grand jury itself serves as a judicial check because it may reject the prosecutors' input.").[25] And under the Federal Rules of Criminal Procedure, a defendant can move to dismiss an indictment for a number of reasons. *See* Fed. R. Crim. P. 12.

### (c)  Special Procedures Exist to Address Grand Jury Leaks.

Allegations of grand jury "leaks" are properly addressed in the context of "ancillary civil proceeding[s]" supervised by the Chief Judge overseeing the grand jury itself. *In re Sealed Case No. 98-3077*, 151 F.3d at 1065; *Barry*, 865 F.2d at 1321–22; L. Cr. R. 57.15(b). This process takes into account both "[t]he importance of the grand jury to the enforcement of the federal criminal law" and the potentially "profound" effect of "burdensome discovery" and "adversarial hearing[s]" on it. *In re Sealed Case No. 98-3077*, 151 F.3d at 1067; *see also id.* (contrasting a Rule 6(e) hearing with a "typical civil proceeding"); L. Cr. R. 6.1 ("All hearings on matters affecting a grand jury proceeding shall be closed, except for contempt proceedings in which the alleged contemnor requests a public hearing."). Remedies are "carefully tailored to avoid unnecessary interference with grand jury proceedings." *In re Sealed Case No. 98-3077*, 151 F.3d at 1076 (quoting *Barry*, 865 F.2d at 1323).

### (d)  Courts May Set Aside Plea Bargains Obtained Via Threat.

Insofar as Corsi's claims of "threats" and "coercion" refer to prosecutors' alleged conduct

---

[25] The grand jury also "controls . . . significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision to charge a capital crime." *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998) (citing *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986)).

during plea negotiations, this is also adequately addressed by other means. *See United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir. 1999) ("[W]e hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance.") (quoting *United States v. Velez Carrero,* 77 F.3d 11, 11 (1st Cir. 1996)). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void," and any "conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). But even then, a *Bivens* suit is inappropriate. *Cf. Heck v. Humphrey*, 512 U.S. 477, 486 (1994) ("[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."). That the alleged threats did not even succeed does not entitle Corsi to a *Bivens* suit.

### (e)  Courts May Quash Inappropriate Subpoenas.

Corsi accuses prosecutors of "subpoenaing without any reasonable or probable cause, members of Plaintiff's family." FAC ¶ 57. Assuming that such subpoenas affect Corsi's own rights sufficiently to confer standing, he (or, alternatively, the person who was subpoenaed) could move to quash. *Amobi v. D.C. Dep't of Corrections*, 257 F.R.D. 8, 10 (D.D.C. 2009); *see, e.g.*, *Shvartser v. Lekser*, No. CV 16-1199 (JDB), 2017 WL 8944907, at *2 (D.D.C. July 5, 2017).

### ii.  Injunctive and Other Statutory Relief May Be Available for Unlawful Surveillance.

Corsi also challenges a supposed "large-scale policy decision[]"—alleged warrantless surveillance—that purportedly affects a wide swath of the population, *Abbasi*, 137 S. Ct. at 1862,[26] in an "ongoing" fashion, FAC ¶ 30; Dkt. No. 9, Plaintiff's Opposition to Defendants'

---

[26] *See also* Plaintiff's Response to Court's Order of December 12, 2018, Dkt. No. 8 (Dec. 26, 2018) at 1 (asserting that this case "is intricately related to" Plaintiff's counsel's other lawsuits over an alleged "continuing pattern and practice of illegal and unconstitutional

Motion to Stay, at 1. As a general matter, official practices giving rise to continuing

unconstitutional injuries can be "enjoined *if* and when discovered." *United States v. Stanley*, 483

U.S. 669, 690 (1987).[27] And Corsi need not rely "*only*" on Article III courts' general injunctive

powers "to potentially protect him from . . . illegal surveillance." Transcript at 8:6–7 (emphasis

added). Extensive legislation addresses the sort of warrantless "surveillance"[28] Corsi alleges so

broadly. *See*, *e.g.*, 4 Witkin Cal. Crim. Law Illegal Evid., § 419 *Related Legislation* (4th ed Supp.

2018) (collecting "noteworthy" examples of "federal legislation related to surveillance" dating as

far back as the "Communications Act of 1934").

The Wiretap Act covers both appropriate procedures for authorizing interception of

communications and the relief available to "any person whose wire, oral, or electronic

communication is intercepted, disclosed, or intentionally used" in an unlawful manner. 18 U.S.C.

§ 2520(a); *see also id.* § 2520(b) (authorizing equitable and declaratory relief as well as money

---

misconduct" that "has been ongoing for nearly over a half a decade," long before the genesis of
the Mueller investigation); *id.* at 3 (purporting to challenge "programs" in effect "since at least
2013"); Transcript at 4:18–19 (purporting to challenge "a continuing pattern of illegal
surveillance").

[27] *See also* Dkt. No. 8 at 6 (Plaintiff's counsel describing his ongoing efforts to enjoin
alleged federal wiretapping); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates …
have full access to remedial mechanisms established by the BOP, including suits in federal court
for injunctive relief."); *Abbasi*, 137 S. Ct. at 1865 (alternatives can include "a writ of habeas
corpus, an injunction requiring the warden to bring his prison into compliance … or some other
form of equitable relief"); FAC at p.18 (seeking "equitable, declaratory, and injunctive relief").

[28] *See* FAC ¶¶ 30 ("Defendants Mueller, DOJ, NSA, CIA, and FBI have engaged in
illegal, unconstitutional surveillance"), 44 ("Defendants … unreasonably searched and seized
and continue to search Plaintiff's phone and other records and transmissions without a warrant
and probable cause"), 45 (claiming that prosecutors "without probable cause violated the Fourth
Amendment … by not describing with particularity the place to be searched or the person or
things to be seized"); Transcript at 13:8–9 ("[T]he complaint includes a few vague and
conclusory allegations about the USA Freedom Act and PRISM[.]").

damages and fees).[29] This "separate, comprehensive remedial process" renders a *Bivens* remedy

unwarranted in cases over intercepted communications. *See Kelley v. Fed. Bureau of*

*Investigation*, 67 F. Supp. 3d 240, 271–72 (D.D.C. 2014) ("Any harms to the interests protected

by the Fourth Amendment that would arise from the government's unlawful search and seizure

of emails would . . . be redressible") (citing 18 U.S.C. §§ 2703(a)–(b), 2712(a), 2707(a)–(b));

*Brunoehler*, 743 F. App'x at 742–43 (affirming dismissal of *Bivens* claim over allegedly

intercepted telephone calls because the Wiretap Act provided "alternative remedies" even if

plaintiff "lacked standing to challenge the wiretaps at issue").

Corsi's allegations also implicate legislation governing surveillance related to

international investigations. *See* FAC ¶ 30 (referring to "the USA Freedom Act," "PRISM," and

"the Foreign Intelligence Surveillance Act"). The Foreign Intelligence Surveillance Act ("as

amended by the PATRIOT" and "USA FREEDOM Acts") permits "the government to conduct

physical searches, electronic surveillance, and wiretaps of residences and offices" when

gathering information about "foreign powers" and "agents of foreign powers." *Mayfield v.*

*United States*, 599 F.3d 964, 968 (9th Cir. 2010); *see* 50 U.S.C. §§ 1804, 1823. This statutory

scheme imposes criminal penalties, and entitles an "aggrieved person" to sue for civil damages.

50 U.S.C. §§ 1089, 1810; *see, e.g.*, *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845,

855 (9th Cir. 2012) (dismissing FISA claim against then-FBI Director Mueller). In sum, while it

remains entirely unclear how or under what circumstances Corsi believes any federal agent

---

[29] With the Electronic Communications Privacy Act (also called the "Stored Communications Act"), Congress expanded these protections to keep pace with technological advances. *See* 18 U.S.C. § 2707(b) (providing relief for interception of stored communications); *id.* at § 2511(5)(a)(1)(A) (allowing equitable and money damages relief for victims of unauthorized interceptions of scrambled satellite transmissions); *id.* at §§ 2511, 2701 (imposing criminal penalties for unlawful surveillance).

engaged in digital eavesdropping, no *Bivens* claim against Special Counsel Mueller is necessary

to address alleged violations of this nature. *See Attkisson*, 2019 WL 1292886, at *11 (in refusing

to imply a remedy, "not[ing] that Congress has legislated extensively in the area of electronic

surveillance and intrusions into electronic devices without authorizing damages for a Fourth

Amendment violation in such circumstances").

### iii.  The Privacy Act Covers "Leaks" by Executive Branch Officials.

With respect to "leaks," too, Corsi alleges no particular conduct by Special Counsel

Mueller. But the Privacy Act stands in the way of a judicially implied remedy. *See Wilson v.

Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008); *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274

(D.C. Cir. 2003); *see also generally Liff*, 881 F.3d at 923 (collecting cases "recognize[ing] the

Privacy Act as an alternative remedial scheme precluding a *Bivens* remedy"). This is because, in

addition to criminalizing certain misuses of information, the Act already "provides a private right

of action against government agencies when records pertaining to an individual have been

impermissibly disclosed." *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 105–06 (D.D.C. 2008) (citing

5 U.S.C. § 552a(g)(1) (2000)). These provisions "represent[] Congress's legislative judgment

about the appropriate remedies with respect to the accuracy, fairness, and use of government

information." *Liff*, 881 F.3d at 924; *see also* 5 U.S.C. § 552a(g)(1) (civil remedies provision).

This judgment is a special factor in itself. *Wilson*, 535 F.3d at 706–07 (citing *Downie v. City of

Middleburg Heights,* 301 F.3d 688, 698 (6th Cir. 2002)); *see also Mittleman v. U.S. Treasury*,

773 F. Supp. 442, 454 (D.D.C. 1991) ("[T]he Privacy Act provides a comprehensive scheme for

addressing" allegations of "disclosure" of records "to third parties."). Put simply, regardless of

what relief the Act offers Corsi personally, "the judicial system is not in a position" to accede to

his demand that it "revise" the remedial judgment Congress made in the Privacy Act "by

recognizing an additional constitutional remedy" for a Special Counsel's alleged leak of grand

jury materials. *Liff*, 881 F.3d at 924; *see also Wilson*, 535 F.3d at 707 ("The failure of the

Privacy Act to provide complete relief . . . does not undermine its status as a 'comprehensive

scheme' that stops us from providing additional remedies under *Bivens*.").

### iv.  Professional Ethics Rules Protect Against Prosecutorial Misconduct.

A Special Counsel must "comply with the rules, regulations, procedures, practices and

policies of the Department of Justice." 28 C.F.R. § 600.7(a). He or she "and staff shall be subject

to disciplinary action for misconduct and breach of ethical duties under the same standards and

to the same extent as are other employees of the Department of Justice." *Id.* § 600.7(c); *see also*

28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules,

and local Federal court rules, governing attorneys in each State where such attorney engages in

that attorney's duties, to the same extent and in the same manner as other attorneys in that

State."). A person aggrieved by a federal prosecutor can also complain to the relevant state bar or

the court of any district in which the attorney practices.[30]

### b.  Additional Special Factors Counsel Against a *Bivens* Remedy.

Other "special factors" not before the Court in *Bivens* also counsel hesitation. *See Abbasi*,

137 S. Ct. at 1861.

### i.  Congress' Action in the Field Indicates That It Would Consider a *Bivens* Remedy Inappropriate.

"[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a

damages remedy," then "the courts must refrain from creating" one. *Abbasi*, 137 S. Ct. at 1858.

---

[30] *See also Imbler*, 424 U.S. at 428–29 (in rejecting "the argument that the imposition of civil liability is the only way to insure that prosecutors are mindful of the constitutional rights of persons accused of crime," noting a prosecutor's "amenability to professional discipline by an association of his peers"); *DeCamp*, 978 F.2d at 1054 ("[P]rosecutors are not beyond the reach of the law or professional discipline for willful deviations from duty."); Klayman Letter (enclosing D.C. Bar complaints purportedly filed by Corsi against Special Counsel Mueller and members of his staff).

There are a number of reasons to think Congress would balk at authorizing the litigation Corsi proposes. First, Congress never "provide[d] a specific damages remedy" for alleged constitutional violations against "agents of the Federal Government." *Abbasi*, 137 S. Ct. at 1854, 1857 (quoting *Iqbal*, 556 U.S. at 675). As already explained, it has provided remedies for improper disclosure of government information (via the Privacy Act), but without providing an avenue for relief against *individual* federal employees. *See Martinez v. Bureau of Prisons,* 444 F.3d 620, 624 (D.C. Cir. 2006) ("[T]he district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the Privacy Act or FOIA.") (citations omitted). Congress has also acted to foreclose litigation over reputational injuries, by exempting "libel" and "slander" from the FTCA altogether. *See* 28 U.S.C. § 2680(h). It has done the same for "interference with contract rights." *See id*. And it has limited litigation over "abuse of process" by restricting the class of employees whose acts can give rise to such claims. *Id*. [31]

### ii.  Corsi's Proposed *Bivens* Claim Raises Separation-of-Powers Concerns.

In any new context, "it is a significant step under separation-of-powers principles" for courts to "create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 137 S. Ct. at 1856. The "step" Corsi proposes is particularly problematic.

---

[31] Corsi's inability to recover under the FTCA does not entitle him to a *Bivens* claim. *See Apampa v. Layng*, 157 F.3d 1103, 1104 (7th Cir. 1998) ("The Westfall Act makes a suit against the United States under the Federal Tort Claims Act the exclusive remedy for most nonconstitutional torts by employees of the federal government. . . . The [FTCA] in turn bars suits for defamation. . . . Apampa can get nowhere with *Bivens*, because he is not alleging a violation of the Constitution.") (citations omitted).

### (a) Corsi Asks This Court to Abridge Prosecutorial Discretion Constitutionally Committed to the Executive Branch.

A Special Counsel reports to the Attorney General and exercises the same "investigative and prosecutorial functions" as United States Attorneys. *See* 28 C.F.R. § 600.6. And "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation and quotations omitted); *United States v. Blackley*, 986 F. Supp. 616, 617 (D.D.C. 1997) ("[G]overnment prosecutors are granted broad discretion in deciding which persons and cases to pursue."). Even post hoc "judicial intervention would . . . undermine the Executive Branch's ability to 'take Care that the Laws be faithfully executed.'" *United States v. Saena Tech Corp.*, 140 F. Supp. 3d 11, 28 (D.D.C. 2015) (quoting U.S. Const. art. II, § 3). Consequently, "the exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively unreviewable." *In re Sealed Case No. 97–3025*, 131 F.3d 208, 214 (D.C. Cir. 1997). This deference "stems from a concern not to unnecessarily impair the performance of a core executive constitutional function": "Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).

Even in those few instances when judicial scrutiny of prosecutorial discretion might be warranted, more than bald allegations of bad motive are needed to trigger review.[32] *Cf. Hartman v. Moore*, 547 U.S. 250, 263 (2006) (The "presumption that a prosecutor has legitimate grounds

---

[32] *See, e.g.*, FAC ¶¶ 32 (calling Special Counsel's Office prosecutors "partisan Democrat, leftist, and ethically and legally conflicted"), 45 (accusing Mueller of seeking to "indict and/or remove the current president of the United States for political and other improper purposes").

for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal[.]") (citing *Wayte*, 470 U.S. at 607–08); *see also Johnson v. Rosenstein*, No. 3:17-CV-1680-D, 2018 WL 1833055, at *3 (N.D. Tex. Mar. 12, 2018) ("The Mueller investigation is a criminal investigation, the pursuit of which is committed to the discretion of the Department of Justice."), *report and recommendation adopted,* No. 3:17-CV-1680-D, 2018 WL 1806870 (N.D. Tex. Apr. 17, 2018). Indeed, bad-motive claims against prosecutors are common fare. *See DiFolco v. Roberts*, 585 F. Supp. 139, 142 (D.R.I. 1984) (Prosecutors face "a unique potential for vengeful counter-suits"). And except in those rare instances in which prosecutorial discretion transgresses a constitutional line, separation-of-powers principles leave no role for judicial supervision of charging decisions and the course of investigations. *See Armstrong*, 517 U.S. at 464.[33]

### (b) Corsi Seeks to Inappropriately Interject Article III Courts Into the Grand Jury Process.

"[T]he grand jury is an institution separate from the courts, over whose functioning the courts do not preside." *Williams*, 504 U.S. at 46–47. This "independence . . . reflects the protective role [the grand jury] plays in our system of criminal justice." *United States v. Seals*, 130 F.3d 451, 457 (D.C. Cir. 1997); *see also United States v. Dionisio*, 410 U.S. 1, 17–18 (1973) (describing the grand jury's need for "free[dom] to pursue its investigations unhindered by external influence or supervision"). The Supreme Court has consistently resisted the notion that Article III courts should scrutinize the factual sufficiency of indictments. *See Kaley v. United*

---

[33] For example where, "[a] defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong,* 517 U.S. at 464-65 (citing *Yick Wo v. Hopkins*, 118 U. S. 356, 373 (1886)).

*States*, 571 U.S. 320, 328 (2014) ("The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.").[34] It has also refused to "prescrib[e] . . . standards of prosecutorial conduct" before the grand jury "in the first instance." *Williams*, 504 U.S. at 46–47. Recognizing Corsi's proposed *Bivens* claim would be the functional equivalent of taking on these roles. Along the same lines, responsibility for addressing any "leak" lies with "the district court supervising the grand jury." *In re Sealed Case No. 98-3077*, 151 F.3d at 1070. Recognizing a private right of action here could encourage a future "target of a grand jury investigation to sandbag the reporting of a leak to the supervising district court because it would be more advantageous to file a private civil suit seeking damages," thus depriving the appropriate court "of the opportunity to investigate the complaint and correct any alleged violation." *McQueen I*, 5 F. Supp. 2d at 484.

Another factor making civil damages litigation over prosecutorial overreach and alleged violations of Rule 6(e) "bad policy" is that application of ordinary civil discovery rules could "expose grand jury deliberations, the identity of grand jurors, and other grand jury matters to the public." *McQueen I*, 5 F. Supp. 2d at 484. "This would not only inhibit the grand jury's deliberative process" but "potentially expose grand jury members, government lawyers and agents, and witnesses to outside pressures and possible danger." *Id.* In short, all of the reasons that necessitate specialized proceedings to address grand jury leaks counsel against a *Bivens* remedy here.

---

[34] *See Holt v. United States*, 218 U.S. 245, 248 (1910) ("The abuses of criminal practice would be enhanced if indictments could be upset" on grounds of evidence "competent" in nature, "but made incompetent by circumstances"); *Costello v. United States*, 350 U.S. 359, 363-64 (1956) (refusing to "establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence"); *Bank of Nova Scotia*, 487 U.S. at 255 (Courts cannot "dismiss[] an indictment for prosecutorial misconduct not prejudicial to the defendant.").

28

### iii. Corsi Proposes an Unmanageable Species of Litigation.

Criminal investigations are an indispensable function of the Department of Justice. Creating a constitutional cause of action to challenge their methods, therefore, gives rise to significant line-drawing challenges. *See Wilkie,* 551 U.S. at 537, 554 (describing "the difficulty of defining limits to legitimate zeal on the public's behalf"). "Law enforcement's decision about whom to investigate and how, like a prosecutor's decision whether to prosecute, is ill-suited to judicial review." *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009).[35] "Decisions involving the selection of evidence, for example, must often be calculated to embarrass and discredit; other prosecutorial decisions, involving the prosecutor's inherent discretion in deciding whether to charge and what charges to bring, must by definition be threatening and coercive." *Gray*, 712 F.2d at 501. And "[i]n dealing with . . . criminal suspects who may actually be innocent," interrogators may "of necessity employ less refined methods than are considered appropriate for the transaction of ordinary, everyday affairs." *Lee v. United States*, 322 F.2d 770, 773 n.2 (5th Cir. 1963).

Compounding these difficulties, Corsi's claimed injuries are largely reputational. *See*, *e.g.*, FAC ¶ 53 ("Plaintiff Corsi has suffered and will continue to suffer irreparable harm to his reputation[.]"). Reputational harm usually involves no constitutional wrong at all. *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991); *Paul v. Davis*, 424 U.S. 693, 708–09 (1976). Rarely, that harm might play some role in a constitutional violation. S*ee generally Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003). But even so, recognizing a *Bivens* claim

---

[35] *See also Wayte*, 470 U.S. at 607–08 ("[T]he decision to prosecute is particularly ill-suited to judicial review," as it reflects complex balancing of such factors as "enforcement priorities."); *cf. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 604 (2008) ("It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.").

essentially sounding in defamation "would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc." *Office of Personnel Management v. Richmond*, 496 U.S. 414, 433 (1990); *cf. F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("If we were to recognize a direct action for damages against federal agencies, we would be creating a potentially enormous financial burden for the Federal Government.").

### iv.   Corsi's Proposed Remedy Threatens to Undermine the Federal Criminal Justice Process as a Whole.

Corsi's proposed remedy carries unusually significant "projected costs and consequences to the Government itself," specifically the federal criminal justice process. *Abbasi*, 137 S. Ct. at 1858; *see also Wayte*, 470 U.S. at 607–08 ("Judicial supervision" over a decision to prosecute "entails systemic costs of particular concern."). For all of the reasons previously identified, *Bivens* litigation could "eviscerate the very protections to the grand jury process Rule 6 was intended to provide." *McQueen I*, 5 F. Supp. 2d at 484. Moreover, this suit seeks to prove Corsi's non-involvement in allegedly illegal activity at the heart of an ongoing prosecution.[36] Simultaneously litigating the validity of the Special Counsel's "narrative" concerning the release of stolen e-mails in this case would risk inefficiency and inconsistency. *Cf. Heck*, 512 U.S. at 484–85 ("This Court has . . . generally declined to expand opportunities for collateral attack.").

---

[36] *See* FAC ¶¶ 18-20 (arguing that Corsi predicted the release of emails "to and from Hillary Clinton's campaign manager" based on his review of "the documents leaked on July 22, 2016" rather than "'collu[sion]' with Russian intelligence and other services"); *United States v. Roger Jason Stone, Jr.*, No. 1:19-cr-18 (D.D.C.), Dkt. No. 1, ¶ 3 (indictment on charges involving the circumstances surrounding the release of "documents stolen from the DNC," which occurred "on or about July 22, 2016" and the release of "documents that had been stolen from the personal email account of the Clinton Campaign chairman," which occurred "[b]etween on or about October 7, 2016 and on or about November 7, 2016"); *Corsi v. Stone*, No. 1:19-cv-00324 (D.D.C.), Dkt. No. 1, ¶ 5 (in separate civil suit against a criminal defendant "recently indicted by Special Counsel Robert Mueller," identifying Corsi as "Person 1, a material witness to the alleged crimes").

Heightening these dangers, many investigative targets have little to lose and a potential strategic advantage—such as discovery unavailable in a pending criminal proceeding—to gain by suing. *See Degen v. United States*, 517 U.S. 820, 825–26 (1996) (contrasting the "limited discovery" available in criminal cases with the broader rules applicable in civil cases). In sum, adopting Corsi's theories would invite burdensome litigation of little public utility: "suits filed for no other purpose than to harass and interfere with the" grand jury process or "as a means to gain leverage in the target's criminal proceedings." *McQueen I*, 5 F. Supp. 2d at 484, 484 n.20; *see also DeCamp*, 978 F.2d at 1054 ("[D]isgruntled litigants, upset with the grand jury but unable to sue the grand jurors, may vent their wrath on the prosecutors[.]").

### v.   Challenges to Purported Official Policies Are Inappropriate for *Bivens* Claims.

Without identifying any evidence of an official policy of Fourth Amendment violation (let alone one attributable to Special Counsel Mueller), Corsi purports to sue over a "continuing pattern of illegal surveillance" on the part of federal law enforcement agencies. Transcript at 4:18–19; *see also id.* at 6:12–14 (alleging "a continuing series of events . . . of illegal unconstitutional surveillance"). Individual-capacity litigation over "agency policy" is problematic. *See Abbasi*, 137 S. Ct. at 1860. Claims "call[ing] into question the formulation and implementation of a general policy" can "require" burdensome "inquiry and discovery into the whole course of the discussions and deliberations that led to the policies." *Id.*; *see also id.* at 1856 ("[T]he time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered."). Moreover, "*Bivens* from its inception has been based . . . on the deterrence of *individual* officers who commit unconstitutional acts." *Malesko*, 534 U.S. at 71 (citation omitted, emphasis added). A *Bivens* suit targeting Mr. Mueller's personal assets is the wrong tool with which to attack the perceived

31

practices of federal law enforcement agencies as entities.

## III.   QUALIFIED IMMUNITY BARS THE *BIVENS* AND RULE 6 CLAIMS.

Courts have long recognized that individual-capacity lawsuits against federal officials give rise to "substantial social costs," particularly "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). The doctrine of qualified immunity, "a formidable defense," mitigates this risk. *Dellums v. Powell*, 660 F.2d 802, 808 (D.C. Cir. 1981). Under it, an individual-capacity federal defendant "is *entitled* to dismissal before the commencement of discovery" unless the complaint plausibly "state[s] a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Iqbal*, 556 U.S. at 678. "[I]t is essential that qualified immunity claims be resolved at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 233–34 (1991) (citing *Mitchell*, 472 U.S. at 526). At the Rule 12 stage, this involves determining whether the plaintiff has "plead[ed] *facts* showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)) (emphasis added).[37] Applying this test, even if he can be sued under the Fourth Amendment and Rule 6, Special Counsel Mueller is still entitled to dismissal due to the absence of any plausible allegations that he personally violated any clearly established law.

### A.   Step One: Corsi Fails to Plausibly Allege That Mr. Mueller Personally Violated the Law.

At the outset of "the qualified immunity analysis," "a plaintiff must demonstrate that [an]

---

[37] Courts have "discretion" to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

officer's conduct did, in fact, violate" the relevant law. *Pollard v. D.C.*, 191 F. Supp. 3d 58, 68

(D.D.C. 2016), *aff'd,* 698 F. App'x 616 (D.C. Cir. 2017). This "demands more than an

unadorned, the-defendant-unlawfully-harmed me accusation." *Twombly*, 550 U.S. 544 (citation

and quotation omitted). Neither "labels and conclusions" nor "a formulaic recitation of the

elements of a cause of action will . . . do." *Id.* And because "each Government official . . . is only

liable for his or her own misconduct," *Iqbal*, 556 U.S. at 677, a plaintiff cannot escape the

obligation to provide allegations "that the defendant federal official was personally involved in

the illegal conduct." *Simpkins*, 108 F.3d at 369. In sum, the court must be able to "draw the

reasonable inference" both that the law was violated and that the defendant is personally "liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Corsi's conclusory claims

fall short.

### 1.  Corsi Has Not Plausibly Alleged Personal Participation.

"[R]equiring a plaintiff to identify how '*each* defendant, through the official's *own*

*individual actions*, has violated the Constitution," ensures "that the serious burdens of defending

against this sort of lawsuit are visited upon a . . . supervisor only when the complaint 'plausibly

suggest[s]' that the supervisor engaged in 'his or her *own* misconduct.'" *Evans v. Chalmers*, 703

F.3d 636, 661 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679, 681) (emphasis added). So

allegations against a group of defendants, collectively, will not carry the day.[38] Nor will

---

[38] *See, e.g.*, *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("The doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct.") (citation and quotation omitted); *Marcilis v. Township of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) ("categorical references to 'Defendants'" do not "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (citation and quotation omitted); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (rejecting a complaint using "either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom"); *Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each

references to a particular defendant's supervisory authority. *See Iqbal*, 556 U.S. 676

("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior."). So Corsi gets nowhere with claims about

what "others on [Mueller's] staff" have done. FAC ¶ 20.[39] Nor can Corsi meet his burden with

conclusory allegations that others violated the Constitution "at [Mueller's] direction." FAC ¶

20[40]; *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 112 (D.D.C. 2010) ("[T]o show

that . . . action was taken at the direction of another requires more than just the conclusion that

that is what occurred.").

　　Corsi's "threat" claims rest on nothing but "labels and conclusions," not the sort of

"further factual enhancement" necessary to plausibly suggest that anyone—much less Mr.

Mueller personally—tried to coerce him into giving false testimony. *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 557). He does not allege that any "threat" came during any

interaction in which the Special Counsel personally participated, or was issued directly by Mr.

Mueller, or resulted from any specific directive that he issued*, See* FAC ¶ 23 ("Defendant

Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify[.]"). The

"leak" allegations are similarly lacking, in that Corsi has neither suggested that Mr. Mueller

personally interacted with the media nor made any reference to any specific act he allegedly took

---

claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed
to satisfy [the] minimum standard.").

[39] *See also* FAC ¶¶ 23 (making allegations about the "prosecutorial staff"), 24 (referring
to "his staff"), 25 (same), 29 ("those working at his direction, including but not limited to his
press secretary"), 37 ("sources in the Office of the Special Counsel"), 45 ("his prosecutorial and
media staff"), 52 ("his staff").

[40] *See also* FAC ¶¶ 24 ("at his direction"), 28 ("under the direction of"), 29 ("at his
direction"), 30 ("at the direction of Defendant Mueller"), 32 ("at the direction of Mueller"), 37
("working under Defendant Mueller's direction"), 51 ("at his direction").

to cause any particular "leak." *See* FAC ¶¶ 28, 29, 51, 53. And even setting aside the inherent

implausibility of Corsi's "surveillance" claims, *see infra* at III(A)(2), he offers nothing linking

them to any particular act by Special Counsel Mueller. *See* FAC ¶¶ 30–32.[41]

### 2. Corsi States No Fourth Amendment Claim.

Corsi claims Special Counsel Mueller violated the Fourth Amendment by (1) conducting

"illegal and unconstitutional surveillance," FAC ¶ 47; (2) "releas[ing] grand jury information,"

*id.* ¶ 45; and (3) attempting "to coerce, extort, threaten and/or blackmail" Corsi into "provid[ing]

false sworn testimony," *id.* ¶ 45. But contrary to Corsi's suggestions, the Fourth Amendment

confers neither a "general constitutional right to privacy" nor a freestanding entitlement to

pleasant treatment during "every encounter" with government officers. *See Katz v. United States*,

389 U.S. 347, 350 (1967); *United States v. Castellanos*, 731 F.2d 979, 982–83 (D.C. Cir. 1984)

(citing *United States v. Mendenhall,* 446 U.S. 544 (1980)). Rather, by its very terms, "[t]he

Fourth Amendment covers only 'searches and seizures.'" *Sacramento v. Lewis*, 523 U.S. 833,

843 (1998). And it prohibits only those 'searches and seizures' of 'persons, houses, papers, and

effects' that are 'unreasonable.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2250 (2018). Corsi

fails to plausibly allege any search or seizure at all, let alone a legally unreasonable one. *See*

*Azam v. D.C. Taxicab Comm'n*, 46 F. Supp. 3d 38, 51 (D.D.C. 2014) ("Absent a Fourth

---

[41] *See, e.g.*, *Neptune v. Carey*, No. CV1712057BRMLHG, 2019 WL 913156, at *4 (D.N.J. Feb. 25, 2019) (rejecting "allegation of unlawful surveillance" that failed to specify "how Carey was involved"); *Whitaker v. Barksdale Air Force Base*, No. CIV.A. 14-2342, 2015 WL 574697, at *9 (W.D. La. Feb. 11, 2015) (Plaintiff who "d[id] not state which of the[] officials conducted the surveillance, who intruded upon her home, who installed any of the surveillance devices, or any fact to raise the expectation that further litigation and discovery could possibly reveal illegal conduct" failed to carry her burden.).

Amendment 'search,' there can be no Fourth Amendment violation[.]").

### a.   Speculative "Surveillance" Contentions Cannot Establish a "Search."

A Fourth Amendment "search" takes place when a federal actor "infringes on an individual's 'reasonable expectation of privacy.'" *Azam*, 46 F. Supp. 3d at 50 (citing *United States v. Jones*, 565 U.S. 400, 404–05 (2012) and quoting *Katz,* 389 U.S. at 351). But simply asserting that "illegal and unconstitutional surveillance" happened, FAC at p.1 and ¶¶ 1, 30–32, 47, falls short of stating a viable Fourth Amendment claim.[42] This bare "legal conclusion" carries no presumption of truth. *Reid v. Hurwitz*, 914 F.3d 670, 679–80 (D.C. Cir. 2019). And none of Corsi's supporting allegations plausibly suggests wrongdoing: That federal officials allegedly identified Corsi's stepson as someone to question is "fully consistent" with the "obvious alternative explanation" that investigators perform their jobs competently. *Id.* (quoting *Twombly*, 550 U.S. at 567). Law enforcement officers commonly track down potential witnesses without resort to "illegal, unconstitutional surveillance." *See Iqbal*, 556 U.S. at 679 (courts rely on "judicial experience and common sense" in evaluating the sufficiency of a complaint). And the Court would be in good company rejecting allegations as speculative and insubstantial as the claim that a Canadian "author" has somehow collected unspecified "evidence of repeated" yet apparently unsuccessful "attempts by" unspecified "government authorities to intercept electronically Plaintiff Corsi's telephone conversations."[43]

### b.   Corsi Alleges No "Seizure," Let Alone an "Unreasonable" One.

Corsi's claims of "threats" by prosecutors—even if attributed to Special Counsel Mueller

---

[42] *See, e.g.*, *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (affirming dismissal of a "patently insubstantial" and "essentially fictitious" complaint alleging "the government launched a massive surveillance program"); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54–55 (D.D.C. 2008) (dismissing "general accusations of computer hacking, phone tapping, causing power failures and helicopter surveillance").

personally—do not implicate the Fourth Amendment, because he does not allege that they occurred in the context of a "seizure." *See Pitt v. D.C.*, 491 F.3d 494, 511 (D.C. Cir. 2007) ("[M]alicious prosecution is actionable under 42 U.S.C. § 1983" only "to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause, in violation of the Fourth Amendment."). "Only when police have in some way restrained the liberty of an individual, either by force or a show of authority, is there a 'seizure'" of a person "within the meaning of the fourth amendment." *Castellanos*, 731 F.2d at 982–83 (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Corsi offers no allegations suggesting that his liberty has ever been restrained. And even if Corsi's unspecified dealings with prosecutors did implicate the Fourth Amendment, the Constitution sets the bar far higher than Corsi suggests, leaving ample room to accuse an investigative target of violating the law and confront him with the consequences of such a violation. *Cf. Bordenkircher v. Hayes,* 434 U.S. 357, 365 (1978) (Prosecutor, who "openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause.").[44]

---

[43] *See, e.g.*, *Montgomery v. Comey*, 752 F. App'x 3, 4 (D.C. Cir. 2019) (rejecting as "patently insubstantial" Corsi's attorney's argument that "the government has targeted and hacked his devices" because "he has twice had Samsung cellphones with battery-life issues and other assorted glitches"); *Montgomery v. Comey*, 300 F. Supp. 3d 158, 168–69 (D.D.C. 2018) ("Montgomery's own opinion that his computer and Klayman's phone showed signs of being hacked" are "sparse allegations."), *aff'd as modified,* 752 F. App'x 3 (D.C. Cir. 2019).

[44] *See also, e.g., Pena-Borrero v. Estremeda*, 365 F.3d 7, 12 (1st Cir. 2004) (rejecting claim for "a constitutional violation based on harsh language and handcuffing" where plaintiff had alleged that "since no force was necessary to effectuate his arrest, any force was therefore unreasonable and excessive"); *Martin v. Sargent*, 780 F.2d 1334, 1338-39 (8th Cir. 1985) (name-calling and verbal abuse not constitutional violations); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001) ("unlikely that harsh language alone would render a search or seizure 'unreasonable'"); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996), *as amended* (Apr. 8, 1996) ("[Y]elling, cursing, or even race-baiting does not violate any constitutionally protected rights").

### c.   The Fourth Amendment Does Not Prohibit Grand Jury "Leaks."

Corsi's "leak" allegations also lack any Fourth Amendment substance. "There is no constitutionally protected right against disclosure of grand jury materials." *Berman v. Crook*, 293 F. Supp. 3d 48, 57 (D.D.C. 2018); *see also, e.g., McQueen II*, 897 F. Supp. at 962 ("The court is unconvinced that the Constitution provides Plaintiff with a right to grand jury secrecy sufficient to warrant a *Bivens* cause of action."). Far from "a constitutional demand," grand jury secrecy rules are "a creature of the Federal Rules of Criminal Procedure." *Camm*, 1990 WL 198621, at *7; *cf. McQueen II*, 897 F. Supp. at 963 ("A breach of the general rule of secrecy, especially when the leaks have no nexus with the deliberations of the grand jurors, does not appear to be a fundamental concern of the Fifth Amendment."). So even if Corsi had plausibly alleged that Special Counsel Mueller personally committed the "leaks," this is no Fourth Amendment violation.

### B.   Step Two: Corsi Alleges No Violation of Clearly Established Law.

"A Government official's conduct violates clearly established law" *only* if "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson*, 483 U.S. 635) (emphasis added); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). In other words, "before they are subject to suit, officers [must be] on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002). Corsi sets out no violation of law at all, much less a clearly established one. Additionally:

### 1.   The Law Gives Prosecutors Wide Latitude, Especially Pre-Indictment.

The D.C. Circuit "has often recognized" that "[p]rosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 3 (D.D.C. 2018) (quoting *United States*

*v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017), *cert. denied sub nom. Slough v. United States*,

138 S. Ct. 1990 (2018), and citing *Armstrong*, 517 U.S. at 464). And "there is no authority

whatsoever recognizing a prosecutorial duty to conduct in any particular way investigative or

other activities antecedent to Grand Jury proceedings." *Gray*, 712 F.2d at 505. "Almost anything

lawfully within the power of a prosecutor acting in good faith can be offered in exchange for a

guilty plea." *United States v. Pollard*, 959 F.2d 1011, 1021 (D.C. Cir. 1992). And the

Constitution affords wide latitude to those employing non-physical tactics to seek admissions of

wrongdoing from suspected criminals. *Cf., e.g.*, *United States v. Kelly*, 707 F.2d 1460, 1476 n.13

(D.C. Cir. 1983) (Courts tend to "confine the broad due process check . . . to the slim category of

cases in which the police have been brutal, employing against the defendant physical or

psychological coercion that 'shocks the conscience.'"). All of this shows that Special Counsel

Mueller could not have violated clearly established law simply by overseeing an investigation

that employed the sort of "hardball" tactics Corsi alleges.

### 2. Mr. Mueller Could Not Have Been on Notice of the Potential for the Damages Award Corsi Seeks.

Special Counsel Mueller could not have been on notice of the possibility of an individual-

capacity damages award on the theories Corsi advances here. *See Abbasi*, 137 S. Ct. at 1868

(Executive Branch officials could not be said to have violated clearly established § 1985(3) law

when "the courts are divided as to whether or not a § 1985(3) conspiracy can arise" out of

coordinated activity among members of the same government agency). As explained above, the

grand jury secrecy rule does not implicate any constitutional right, let alone a clearly established

one. *See Berman*, 293 F. Supp. 3d at 57; *McQueen II*, 897 F. Supp. at 962. And so there is no

clearly established, individually enforceable right to money damages for violations of Rule 6(e).

*See Sealed Case No. 98-3077*, 151 F.3d at 1070 ("[O]f course," a "plaintiff in a Rule 6(e)(2) suit

would not . . . be entitled to seek monetary damages . . . from an errant prosecutor[.]"). Nor has

the D.C. Circuit ever recognized *Bivens* liability on a "wrongful investigation" theory for the

benefit of a plaintiff neither arrested nor prosecuted. *See Pitt*, 491 F.3d at 511 (permitting § 1983

"malicious prosecution" claim only "to the extent that the defendant's actions cause the plaintiff

to be unreasonably 'seized' without probable cause"); *Moore v. Valder*, 65 F.3d 189, 195 (D.C.

Cir. 1995) ("[I]t has not been clearly established that malicious prosecution violates any

constitutional or statutory right.").

## IV.    CONCLUSION

The claims asserted against Special Counsel Mueller in his personal capacity, Causes of

Action I–IV, should be dismissed.

Dated: April 15, 2019                    Respectfully submitted,

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

*/s/ Richard Montague*
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*/s/ Laura Katherine Smith*
LAURA KATHERINE SMITH
Senior Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-0419
Laura.Smith2@usdoj.gov

*Attorneys for Defendant Robert S. Mueller, III,*
*in his individual capacity*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

/s/ *Laura Katherine Smith*
LAURA KATHERINE SMITH