**0IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEROME CORSI,
*Plaintiff*,

v.

ROBERT MUELLER, et al
*Defendants*

Civil Action No.  1:18-cv-02885

**ORAL ARGUMENT REQUESTED**

---

## PLAINTIFF'S OPPOSITION TO ROBERT MUELLER'S MOTION TO DISMISS

Plaintiff Dr. Jerome Corsi ("Plaintiff Corsi") submits the following in opposition to Defendant Robert S. Mueller's motion to dismiss all claims against him in his <u>individual</u> capacity.

Dated: May 30, 2019

Respectfully submitted,
*/s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Avenue N.W.
Suite 800
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD...........................................................................................................3

LEGAL ARGUMENT..........................................................................................................3

  Defendant Mueller Was Properly Served ...........................................................................3

  Plaintiff Has Properly Alleged Individual-Capacity Causes of Action ....................................4

    Defendant Mueller's Grand Jury Leaks .............................................................................4

    Defendant Mueller Does Not Have Westfall Immunity ......................................................5

    Absolute Immunity Does Not Apply ..................................................................................6

    Plaintiff Corsi Has Properly Alleged a Fourth Amendment Violation
    under *Bivens*....................................................................................................................7

      No New *Bivens* Context is Raised ...................................................................................7

      A *Bivens* Remedy is Still Applicable Should This Court Decide a New Context is
      Raised.............................................................................................................................12

        There Are No Alternative Remedies..............................................................................12

        No Additional "Special Factors" Exist to Warrant the Exclusion of a *Bivens*
        Remedy ........................................................................................................................13

      *Bivens* Claim for First Amendment Retaliation...............................................................14

  Defendant Mueller Does Not Enjoy Qualified Immunity.....................................................16

    Fourth Amendment Violations ........................................................................................18

    Abuse of Process............................................................................................................20

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..........................................................3, 15

*Bagola v. Kindt*, 131 F.3d 632 (7th Cir. 1997) ..........................................................8

*Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971) ...................... 7-9, 11, 12-15

*Brown v. Nationsbank Corp.*, 188 F.3d 579 (5th Cir. 1999) ........................................8

*Butz v. Economou*, 438 U.S. 478 (1978)....................................................................8

*Carpenter v. United States,* 138 S. Ct. 2206 (2018) ....................................9, 10, 11, 19

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006)...........................6

*Crawford-El* v. *Britton,* 523 U.S. 574 (1998) .............................................................14

*Gordon v. United States Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015) ......................................3

*Gutierrez De Martinez v. Lamagno*, 515 U.S. 417 (U.S. 1995) ..................................5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................16

*Hartman v. Moore*, 547 U.S. 250 (2006) ...........................................................14, 15

*Haynesworth v. Miller*, 261 U.S. App. D.C. 66 (1987) ...........................................14, 15

*Kalil v. Johanns*, 407 F. Supp. 94 (D.D.C. 2005)........................................................5

*Kelley v. FBI*, 67 F. Supp. 3d 240 (D.D.C. 2014)......................................................12

*Kylo* v *United States*, 533 U. S. 27(2001)...............................................................10

*Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011)................................20

*Navab-Safavi v. Broadcasting Board of Governors*, 08-cv-1125 (D.D.C)......................14, 15, 17

*Osborn v. Haley*, 549 U.S. 225 (2007) ...................................................................5

*Pearson v. Callahan*, 555 U.S. 223 (2009).............................................................16

*Rasul v. Myers*, 512 F.3d 644(D.C. Cir. 2008) .........................................................5

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................16

*Singh v. District of Columbia*, 55 F. Supp. 3d 55 (D.D.C. 2014)..............................20

*Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001)........................................................17

*United States. v. Lee*, 106 U.S. 196 (1882) ............................................................8

*Westfall v. Erwin*, 484 U.S. 292 (1988) ...................................................................5

**Statutes**

50 U.S.C §1881(a) ......................................................................................2, 18

Fed. R. Civ. P. 8(a)(2) ........................................................................................................3

Fed. R. Civ. P. 4(m) ..........................................................................................................3

Fed R. Crim. P. 6(e) ..................................................................................................1, 4, 18

Foreign Intelligence Surveillance Act ............................................................1, 12, 18

Wiretap Act .......................................................................................................................12

**Secondary Sources**

Restat. 2d of Agency, § 228 (1958) ...........................................................................5, 6

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Defendant Mueller attempted to illegally and unconstitutionally abuse his authority in an attempt to steer the result of his Russian collusion investigation into a result that he and his co-Defendants deem favorable – namely the demise of the presidency of Donald Trump. Defendant Mueller and his staff have done so by trying to suborn perjury from Plaintiff Corsi. "Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false." Am. Comp. ¶ 22. "As just one example, Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify under oath that he acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers." Am. Comp. ¶ 23.

Furthermore, Defendant Mueller and his staff, at his direction, have criminally violated Rule 6(e)(2) of the Federal Rules of Criminal Procedure, governing the secrecy requirement of grand jury proceedings. Numerous leaks to media outlets – containing information only known by Defendant Mueller and his staff – intricately describe the grand jury proceedings and the details of Defendant Mueller's investigation. These leaks were done "for the purpose of not just harming the president, but also with regard to persons like Dr. Corsi who have been called before the grand jury and have testified." Am. Comp. ¶ 29.

Lastly, the Defendant Muller and his co-Defendants have "have engaged in ongoing illegal, unconstitutional surveillance on Plaintiff Corsi, in violation of the Fourth Amendment and the USA Freedom Act as well targeted "PRISM" collection under Section 702 of the Foreign

Intelligence Surveillance Act, 50 U.S.C §1881(a) et. seq., at the direction of Defendant Mueller." Am. Comp. ¶ 30. This surveillance is done to try to illegally and unconstitutionally obtain information that they hope can be used my Defendant Mueller to "coerce, extort, threaten and/or blackmail Plaintiff Corsi into testifying falsely to implicate the president of the United States in crimes and have him removed from office." Am. Comp. ¶ 32.

Defendant Mueller further violated Plaintiff Corsi's constitutional First Amendment rights. Plaintiff Corsi exercised his First Amendment right by (1) speculating with regards to Wikileaks and (2) choosing to testify and give a truthful account of of what happened with regards to the Russian collusion investigation to the best of his personal knowledge and belief. However, Defendant Mueller retaliated against Plaintiff Corsi by "threate[ing] to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false." Am. Comp. ¶ 22. Thus, because Plaintiff Corsi chose to exercise his First Amendment (and moral) right to give a truthful account of the events of the Russian collusion investigation, Defendant Mueller has chosen to retaliate against him by threatening indictment.

It is clear that this is not was Defendant Mueller and his staff were appointed to do. Despite the fact that Defendant Mueller's report officially found no collusion, it is telling that the investigation took so long to complete. During this time, Defendant Mueller and his staff were engaging in the illegal and unconstitutional behavior under the Fourth and First Amendments as set forth in the Amended Complaint in order to try to achieve their goal to remove President Trump. Despite the fact that they have failed to do so, it is incumbent upon this Court to act in order to not only allow Plaintiff Corsi to recover after having been severely damaged in his

reputation and otherwise by the Defendant Mueller and his co-Defendants, but also as a deterrent to future unconstitutional and illegal conduct.

## II.      LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party." *Gordon v. United States Capitol Police*, 778 F.3d 158, 163-164 (D.C. Cir. 2015).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotations omitted). As such, a motion to dismiss at this stage must be decided solely on what Plaintiffs have plead in their complaint, taken as true, and not upon any factual "contradictions" that Defendants have improperly and prematurely attempted to insert. Involving such weighing of fact would take the standards of pleading to new heights not contemplated before by any Court.

## III.     LEGAL ARGUMENT

### A.      Defendant Mueller Was Properly Served

Defendant Mueller argues that this case should be dismissed because he was not served within the 90 days provided under Fed. R. Civ. P. 4(m). However, Plaintiff Corsi filed an Amended Complaint on January 22, 2019, which was before the 90 days to serve Defendant Mueller had run. Process servers for Plaintiff Corsi could not obtain a private home address for Defendant Mueller, likely due to his occupation. On April 12, 2019, process servers for Plaintiff

Corsi attempted service at the Office of Special Counsel, where employees refused service. Exhibit 1. Service was then effected on April 17, 2019 through the Department of Justice.

Any short delay in serving Defendant Mueller was caused by difficulties locating him due to his occupation and his being effectively in hiding. However, it is clear that Defendant Mueller and his attorneys have received notice of this lawsuit, as evidenced by the filing of this instant motion to dismiss. Thus, Plaintiff Corsi respectfully requests that this matter be decided the merits.  This argument by Defendant Mueller is thus a red-herring.

### B.     Plaintiff Has Properly Alleged Individual-Capacity Causes of Action

### 1.     Defendant Mueller's Grand Jury Leaks

Defendant Mueller argues that Plaintiff Corsi cannot litigate alleged grand jury leaks in an independent civil suit for money damages.   However, with regard to the "exclusive procedure" to enforce Rule 6(e), it is clear that the Mueller grand jury is no longer convened, as Defendant Mueller's investigation has now concluded. Thus, Plaintiff Corsi would be left with no means to enforce his Rule 6(e) if this Court chooses not to do so. Indeed, this case thus presents a unique circumstance, given the fact that the grand jury at issue is no longer convened with regard to Plaintiff Corsi and indeed the Attorney General has declared, as well as the Special Counsel Mueller himself, that the investigation is over. There is no harm in therefore allowing this manner to proceed in this Court, while taking necessary measures, such a filing under seal, to safeguard any truly necessary secrecy concerns. Indeed, this is the same district court that Defendant Mueller's grand jury was convened in, as it was supervised by Chief Judge Beryl Howell. Furthermore, allowing this matter to proceed would create important precedent that will likely deter future violations of Rule 6(e) in the future.   This is a matter of first

impression and indeed Defendant Mueller does not cite any relevant authority to preclude litigating this alleged violation of grand jury secrecy.

### 2. Defendant Mueller Does Not Have Westfall Immunity

The Westfall Act, codified at 28 U.S.C. § 2679(d), was enacted in response to the U.S. Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). "When a federal employee is sued for wrongful or negligent conduct," the Attorney General or his delegate may certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Osborn,* 549 U.S. at 229-30, quoting 28 U.S.C. § 2679(d)(1)-(2). "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as the defendant in place of the employee." *Id*. at 230. However, "the government's certification is not conclusive because it is the Court that makes the final determination as to the scope of employment issue." *Kalil v. Johanns*, 407 F. Supp. 94, 97 (D.D.C. 2005). The U.S. Supreme Court has expressly recognized the conflicts of interest that arise should such certification not be subject to judicial review. *See Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 436 (U.S. 1995) ("The local United States Attorney, whose conflict of interest is apparent, would be authorized to make final and binding decisions insulating both the United States and federal employees like Lamagno from liability while depriving plaintiffs of potentially meritorious tort claims."). *Id*.

Generally, the District of Columbia courts "look[] to the Restatement (Second) of Agency" in determining whether an employee's actions fall within the scope of employment. *Rasul v. Myers*, 512 F.3d 644, 655 (D.C. Cir. 2008).

The Restatement provides [that]: '(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master[;] and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. (2) **Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master**.

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (per curiam) (quoting Restatement (Second) of Agency § 228 (1958)) (emphasis added).

Here, holding that Defendant Mueller was acting within the scope of his employment while actively circumventing grand jury secrecy provisions and trying to obtain false sworn testimony from Plaintiff Corsi makes no sense. This is the opposite of what Defendant Mueller was appointed to do. Such a holding would therefore remove <u>all</u> accountability for federal employees for their acts of misconduct, and creates a disastrous if not untenable precedent that must be addressed and reversed by this Court. Indeed, it simply makes no sense that the drafters of the Westfall Act intended such a wide meaning to the "scope of employment" as to encourage illegal and criminal behavior by federal employees.

### 3.    Absolute Immunity Does Not Apply

Defendant Mueller falsely asserts in that Plaintiff Corsi has not pled the context in which prosecutor allegedly "threatened" him.  Defendant Mueller then makes a false equivalency that Plaintiff Corsi must therefore be challenging the "presentation of evidence to an indicting grand jury," to which Defendant Mueller asserts an absolute immunity defense. However, this is not the activity that Plaintiff Corsi is challenging, as he has specifically pled exactly how Defendant Mueller and his staff have "threatened" him:

This illegal and unconstitutional surveillance is being carried out and conducted in conjunction with Defendant Mueller's grand jury investigation, at the direction of Mueller and his partisan Democrat, leftist, and ethically and legally conflicted

prosecutorial staff in order to try to illegally and unconstitutionally obtain information that can be used by Defendant Mueller to coerce, extort, threaten and/or blackmail Plaintiff Corsi into testifying falsely to implicate the president of the United States in crimes and have him removed from office. Am. Comp. ¶ 32.

Defendants, working together in concert, are attempting to financially deplete Plaintiff Corsi by interfering with his business relationships with his publisher and distributor, as well as with Dr. David Jones, Alex Jones, and InfoWars in order to "bring him to his financial knees" and attempt to leave him with no choice but to provide the false sworn testimony that they seek in order to accomplish their designs to take down President Trump and have him removed from office, if not criminally prosecuted. Am. Comp. ¶ 41.

Thus, the Amended Complaint explains that Defendant Mueller had been doing everything in his power to try to "threaten" and "coerce" Plaintiff Corsi into testifying falsely, through both illegal surveillance and defamation in order to try to "take down President Trump and have him removed from office…." These illegal and improper did not occur before the indicting grand jury, but in the "investigation" phase carried out by Defendant Mueller and his staff independently. Thus, Plaintiff Corsi's allegations are clearly unrelated to the "presentation of evidence to an indicting grand jury" and therefore there can be no absolute immunity.

### 4. Plaintiff Corsi Has Properly Alleged a Fourth Amendment Violation under *Bivens*

#### i. No New *Bivens* Context is Raised

Defendant Mueller miscasts Plaintiff Corsi's first count for "Fourth Amendment Violation" as much broader than it actually is, in an attempt to needlessly perform the "special factors" analysis for new *Bivens* contexts. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"). This was clearly done simply to confuse the issues before the Court. The text of the Amended Complaint expressly states that "The allegations of illegal and unconstitutional surveillance against Defendant Mueller are compensable personally under *Bivens*…." Am. Comp. ¶ 47. Plaintiff Corsi makes no allegation that Defendant Mueller's baseless threats of

indictment in order to secure false testimony, grand jury leaks, or tortious interference with business relationships are being brought under *Bivens*.[1] Thus, the only actual relevant inquiry is whether "allegations of illegal and unconstitutional surveillance against Defendant Mueller are compensable personally under *Bivens*…." It is clear that they are.

*Bivens* actions were designed to prevent government officials from abusing their power or employing their power as an instrument of oppression. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 591 (5th Cir. 1999). The constant under our U.S. Constitution is that "[n]o man in this country is so high that he is above the law.  All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it." *United States. v. Lee*, 106 U.S. 196, 220 (1882). In the U.S. Constitution, "We the People" showed this world a new way to govern and created a "system of jurisprudence [that] rests on the assumption that all individuals, whatever their position in government, are subject to federal law." *Butz v. Economou*, 438 U.S. 478, 506 (1978). *Bivens* provides a remedy when federal officials violate citizens' constitutional rights by allowing such citizens to recover damages from those officials in their individual capacities. *Id*. at 590.

As a threshold matter, it is undisputable that *Bivens* is applicable to Fourth Amendment illegal search and seizure violations, as *Bivens* expressly held that a plaintiff could recover money damages for violations of the Fourth Amendment committed by federal agents. *Bivens*, 403 U.S. at 397; *see also Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir. 1997). Here, the alleged violations of the Fourth Amendment – illegal and unconstitutional surveillance of Plaintiff Corsi– does not stray from the original claims recognized by *Bivens*. As the Supreme Court recognized, a large part of the violation in *Bivens* was the fact that the federal agents "searched

---

[1] Not coincidentally, these are the allegations that Count 2-4 deal with, which are not brought under *Bivens*.

the apartment from stem to stern." *Bivens*, 403 U.S. at 389. This is the exact same type of allegation set forth by Plaintiff Corsi – illegal search and seizure of Plaintiffs' phone data, and other forms of electronic data. The only actual difference is that federal agents need not physically enter into Plaintiff Corsi's home anymore to conduct their illegal search and seizure. Of course, the technology that enables the Defendant Mueller to perform this illegal surveillance, search, and seizure was not even a remote possibility in 1971, when *Bivens* was authored. This does not change the fact, however, that the underlying violation is essentially the same. Only the tools employed to conduct the illegal search and seizures have evolved.

The evolution of tools used by the government in conducting illegal and unconstitutional searches is something that Courts must account for as technology rapidly changes and updates. This is a concept adopted by the Supreme Court in its recent landmark decision in *Carpenter v. United States,* 138 S. Ct. 2206 (2018).

Through its ruling in *Carpenter*, the Supreme Court significantly altered the landscape of the law with regard to government surveillance in holding that acquisition of a user's cellular phone site records constituted a Fourth Amendment search.

In *Carpenter*, a criminal defendant was convicted of robbery and carrying a firearm based on cell phone records obtained through the Stored Communications Act, which permits the Government to "compel the disclosure of certain telecommunications records when it 'offers specific and articulable facts showing that there are reasonable grounds to believe' that the records sought 'are relevant and material to an ongoing criminal investigation.'" 138 S. Ct. at 2212. Using these records, the prosecutors were able to show that Mr. Timothy Carpenter, the criminal defendant, was "right where the . . . robbery was at the exact time of the robbery." *Id.* at

2213. As a result, Mr. Carpenter was indicted, convicted and sentenced to more than 100 years in prison. *Id*.

The Supreme Court reversed the U.S. Court of Appeals for the Sixth Circuit's decision to affirm Mr. Carpenter's conviction. In doing so, the Supreme Court emphasized a crucial principal that applies directly to the facts at bar – that Fourth Amendment jurisprudence must be adapted to keep up with rapid technological advances. "As technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure[ ] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" *Id*. at 2214 (quoting *Kylo* v *United States*, 533 U. S. 27(2001)).

"A person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, 'what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.'" *Id*. at 2217. The Supreme Court found in *Carpenter* that allowing the government to access cellular location records without a warrant was akin to "an all-encompassing record of the holder's whereabouts." *Id.* "As  with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Id*. The Supreme Court found this to absolutely constitute illegal surveillance; "Whoever the suspect turns out to be, **he has effectively been tailed every moment of every day for five years**, and the police may—in the Government's view—call upon the results of that surveillance without regard to the constraints of the Fourth Amendment. **Only the few without cell phones could escape this tireless and absolute surveillance**." *Id*. at 2218 (emphasis added).

The Supreme Court further rejected the Government's assertions that the third-party doctrine was applicable on the grounds that it simply did not account for significant technological advances:

> The Government's position fails to contend with the seismic shifts in digital technology that made possible the tracking of not only Carpenter's location but also everyone else's, not for a short period but for years and years. Sprint Corporation and its competitors are not your typical witnesses. Unlike the nosy neighbor who keeps an eye on comings and goings, they are ever alert, and their memory is nearly infallible. There is a world of difference between the limited types of personal information addressed in *Smith* and *Miller* and the exhaustive chronicle of location information casually collected by wireless carriers today. The Government thus is not asking for a straightforward application of the third-party doctrine, but instead a significant extension of it to a distinct category of information. *Id*. at 2219.

Thus, when applying the concepts set forth by the Supreme Court in *Carpenter*, the allegations in Plaintiff Corsi's Amended Complaint for illegal and unconstitutional surveillance do not present a new context, just the modern-day application of the same context that the Supreme Court originally permitted in *Bivens*. Furthermore, whereas *Carpenter* only addressed the accessing of location data, the intrusion alleged by Plaintiff Corsi is far more serious:

> …intercepting Plaintiff's text and other messages without probable cause or a warrant so that they could illegally obtain information about and interrogate Plaintiff Corsi and his stepson, Andrew Stettner, whom they otherwise could not possibly have identified, given that he does not share the family name of Plaintiff. Am. Comp. ¶ 31.

When no new context is raised, the analysis of the Court ends. However, even in the unlikely event that this Court finds that Plaintiff Corsi's Fourth Amendment violation does raise a new context, a *Bivens* remedy must still be permissible.

///

///

///

### ii.   A *Bivens* Remedy is Still Applicable Should This Court Decided a New Context is Raised

### a.   The Are No Alternative Remedies

Defendant Mueller widely misses the mark in alleging that Plaintiffs' *Bivens* claims can be remedied by the existence such as Foreign Intelligence Surveillance Act ("FISA") and the Wiretap Act. Essentially, the Defendant Mueller falsely argues that Plaintiff Corsi has an "alternative methods of relief" because Congress, in passing the FISA and the Wiretap Act have implemented schemes to regulate the surveillance of individuals such as Plaintiff Corsi. To the extent that Defendant Mueller alleges that the mere fact that Congress intended to regulate surveillance precludes *Bivens* claims, such an outlandish assertion must be rejected. The allegations set forth in the Amended Complaint center around Defendant Mueller's willful disregard of the law and the Constitution and their illegal and unconstitutional surveillance of Plaintiffs. The limitations that Congress perhaps intended for Defendant Mueller to abide by are entirely irrelevant, as they have clearly demonstrated that they have no regard for the law.

Defendant Mueller also argues that these statutes already provide private rights of action, which, in turn preclude *Bivens* actions. The only case law that Defendant Mueller relies upon in this regard is *Kelley v. FBI*, 67 F. Supp. 3d 240 (D.D.C. 2014), which only states that the Stored Communications Act ("SCA") precludes a *Bivens* action. Importantly, nothing in *Kelly* states that either FISA or the Wiretap Act preclude a *Bivens* action. The SCA, as discussed in *Kelly* provides relief for an extremely narrow scope of activity, which does not even begin to cover the misconduct alleged in Plaintiff Corsi's Amended Complaint. The SCA only precludes a *Bivens* claim to the extent that the "individual defendants unlawfully searched and seized their email." *Id*. at 270. Thus, the SCA does not provide an "alternative remedy" to the extent that Plaintiff Corsi alleged that the Defendant Mueller did anything other than searching and seizing email,

such as hacking and stealing data from Plaintiff Corsi's phones and computers and other illegal and unconstitutional conduct alleged in the Amended Complaint.

Lastly, Defendant Mueller apparently argues that the existence of the possibility of injunctive relief could serve as an "alternative remedy." However, where *Bivens* has expressly permitted a financial recovery, it is clear that mere injunctive relief does not qualify as an alternative remedy. Thus, there are no alternative remedies available to Plaintiff Corsi.

### b.     No Additional "Special Factors" Exist to Warrant the Exclusion of a Bivens Remedy

Defendant Mueller runs through a host of purported "special factors" that are entirely unrelated to Plaintiff Corsi's actual alleged cause of action under *Bivens* – illegal and unconstitutional surveillance in violation of the Fourth Amendment. Thus, the "special factors" pertaining to Plaintiff Corsi's second, third, and fourth counts, i.e. those involving grand jury secrecy provisions, threatened indictment, and tortious interference, are inapplicable and must be ignored.

The only viable "special factor" that pertains to illegal surveillance is that that challenges to purported official policies are inappropriate for *Bivens* claims. However, this is not what Plaintiff Corsi is challenging. Nothing pled in Plaintiff Corsi's Amended Complaint "call[s] into question the formulation and implementation of a general policy." Def's Mtn. at 31.  Indeed, the crux of Plaintiff Corsi's Amended Complaint is simple – Defendant Mueller must be made to simply obey the law, as written and enacted, and not engage in <u>illegal</u> and <u>unconstitutional</u> surveillance. If this simple request requires an alteration of an entity's policy, then Defendant Mueller is essentially admitting that their actual, expressly stated policy is to completely disregard the Constitution and the law. If this is truly the case, then it is more important than ever that this Court allow this matter to proceed simply in the interest of maintaining the remnants of

the rule of law. What Plaintiff Corsi pled, and what must be accepted by this Court at this stage

is that the illegal and unconstitutional conduct is perpetrated by "individual federal employees" –

namely Defendant Mueller. Thus, this purported "special factor" is completely inapplicable.

### 5.    *Bivens* Claim for First Amendment Retaliation

In the concurrently filed Motion for Leave to File Second Amended Complaint and

Second Amended Complaint, Plaintiff Corsi has added a count under *Bivens* for First

Amendment Retaliation.

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to

inhibit exercise of the protected right,' *Crawford-El* v. *Britton,* 523 U.S. 574, 588, n. 10, 118 S.

Ct. 1584, 140 L. Ed. 2d 759 (1998), and the law is settled that as a general matter the First

Amendment prohibits government officials from subjecting an individual to retaliatory actions,

including criminal prosecutions, for speaking out…." *Hartman v. Moore*, 547 U.S. 250, 256

(2006). "Some official actions adverse to such a speaker might well be unexceptionable if taken

on other grounds, but when nonretaliatory grounds are in fact insufficient to provoke the adverse

consequences, we have held that retaliation is subject to recovery as the but-for cause of official

action offending the Constitution." *Id*. "When the vengeful officer is federal, he is subject to an

action for damages on the authority of *Bivens*." *Id*. As such, the Supreme Court has expressly

recognized the viability of First Amendment retaliation *Bivens* claims. *See also Haynesworth v.

Miller*, 261 U.S. App. D.C. 66, 820 F.2d 1245 (1987) (overruled in part by *Hartman* with regards

to requiring evidence of lack of probable cause in *Bivens* retaliatory prosecution suits).

Crucially, this Court itself previously allowed for a First Amendment retaliation *Bivens*

claim to proceed past the motion to dismiss stage in *Navab-Safavi v. Broadcasting Board of

Governors*, 08-cv-1125 (D.D.C). In doing so, this Court reasoned:

In recent years, the Court has assumed without deciding that Bivens actions are also possible for First Amendment claims. *See Har*tman, 547 U.S. at 252 (establishing pleading standards in Bivens action based on allegedly retaliatory prosecution for speech critical of government agency); *Iqbal*, 129 S. Ct. at 1948 (assuming without deciding that Free Exercise Clause claim was actionable under Bivens). The D.C. Circuit has also concluded that plaintiffs could recover under Bivens for retaliation in violation of the First Amendment. *See Haynesworth v. Miller*, 820 F.2d 1245, 1255 (D.C. Cir. 1987) ("We agree that the [plaintiff's] retaliatory prosecution constitutes an actionable First Amendment wrong redressable under Bivens . . . ." (footnote omitted)), overruled in part on other grounds by *Hartman*, 547 U.S. at 256; *Dellums v. Powell*, 566 F.2d 167, 195 (D.C. Cir. 1977) (recognizing Bivens action for violation of First Amendment right to petition Congress for redress of grievances).

It is incumbent upon the Court to find that Plaintiff Corsi too has a viable *Bivens* First Amendment claim. Indeed, whereas the Court in Navab-*Safavi* analyzed possible alternative remedies, such as the CDA and the APA to redress the Plaintiff's injuries, the facts here are even more compelling, as it is clear that Plaintiff Corsi has no alternative remedies. Here, the facts as currently pled already properly state a claim for First Amendment retaliation. Plaintiff Corsi exercised his First Amendment right by (1) speculating with regards to Wikileaks and (2) choosing to testify and give a truthful account of of what happened with regards to the Russian collusion investigation to the best of his personal knowledge and belief. However, Defendant Mueller retaliated against Plaintiff Corsi by "threate[ing] to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false." Am. Comp. ¶ 22. Thus, because Plaintiff Corsi chose to exercise his First Amendment (and moral) right to give a truthful account of the events of the Russian collusion investigation, Defendant Mueller has chosen to retaliate against him by threatening indictment. Thus, the Court's own correct reasoning, ruling and case precedent in Navab-Safavi thus mandate that this cause of action as well proceed to discovery and later trial.

### C.      Defendant Mueller Does Not Enjoy Qualified Immunity

Qualified immunity does not shield "the plainly incompetent or those who knowingly violate the law."[2] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity protects public officials from personal liability only if the alleged misconduct did not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). It is similar to a good faith defense, but focuses on objective reasonableness, not subject belief. *Id*. at 818. It balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether qualified immunity applies, the court looks to (1) whether a plaintiff's allegations, taken as true, show that the official's conduct violated a constitutional or statutory right, and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While the Saucier Court held that lower courts must decided qualified immunity defenses using that two step analysis in that sequence, in *Pearson v. Callahan*, the U.S. Supreme Court relaxed the analysis, holding that the Saucier procedure was not mandatory and that courts should have the flexibility to decide the question in either order. The Court observed that it is sometimes easier to determine whether a constitutional right was clearly established than whether there is such a right. *Pearson*, 555 U.S. at 235; *see also Thomas v. Shinseki*, 657 F. Supp. 2d 74, 76 (2009) ("Courts have discretion to address either of these questions first.").

---

[2] If a federal employee commits a tort in his or her personal capacity, then he or she is responsible individually and subject to personal liability. Gregory C. Sisk, Litigation With the Federal Government (ALI-ABA, 4th Ed. 2006) at § 5.06, at 359.

Importantly, in *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001), a landmark case that undersigned counsel filed and argued before the U.S. Court of Appeals for the Fourth Circuit, plaintiffs, an ex-intelligence official and his assistant, sought review of an order of the U.S. District Court for the Eastern District of Virginia, which dismissed their action against defendants, FBI Director Louis Freeh, his agents, and his supervisors, alleging an unconstitutional seizure and search of their home and computer in retaliation for the official's published criticism of the FBI. *Id.* at 397-98. The U.S. Court of Appeals for the Fourth Circuit held that plaintiffs First Amendment claim could proceed and that the officials, including FBI Director Freeh, were not entitled to qualified immunity because "a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right. *Id.* at 405. Additionally, the court ordered the case to proceed to discovery. *Id.*

Again, as set forth previously, like the Court in *Trulock*, this Court itself has correctly allowed for a First Amendment retaliation *Bivens* claim to proceed past the motion to dismiss stage in *Navab-Safavi v. Broadcasting Board of Governors*, 08-cv-1125 (D.D.C).   It is incumbent upon the Court to find that Plaintiff Corsi too has a viable *Bivens* First Amendment claim herein.

As a threshold matter, Defendant Mueller attempts to escape liability by falsely claiming that the Amended Complaint does not allege Defendant Mueller's "personal participation." Defendant Mueller. However, Plaintiff Corsi has alleged that Defendant Mueller has personally engaged in, and/or directed numerous violations of Plaintiff Corsi's "clearly established" constitutional or statutory rights:

> In the course of his investigation, Defendant Mueller, and others on his staff at his direction have misrepresented the investigative research conducted by Plaintiff Corsi and spun the fake narrative that Plaintiff Corsi "colluded" with Russian intelligence and other services. Am. Comp. ¶ 20.

Based on these misrepresentations by Defendant Mueller and his leftist and Democrat partisan prosecutorial and ethically and legally conflicted staff, Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false. As just one example, Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify under oath that he acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers. Am. Comp. ¶¶ 22-23.

Furthermore, Defendant Mueller and his staff, at his direction, have criminally violated Rule 6(e)(2) of the Federal Rules of Criminal Procedure, governing the secrecy requirement of grand jury proceedings. Defendant Mueller and his staff have leaked grand jury information to the press concerning Plaintiff Corsi, in violation of Plaintiff Corsi's privacy rights as well as the Federal Rules of Criminal Procedure. Am. Comp. ¶¶ 24-25.

In this regard, Defendants Mueller, DOJ, NSA, CIA, and FBI have engaged in ongoing illegal, unconstitutional surveillance on Plaintiff Corsi, in violation of the Fourth Amendment and the USA Freedom Act as well targeted "PRISM" collection under Section 702 of the Foreign Intelligence Surveillance Act, 50 U.S.C §1881(a) et. seq., **at the direction of Defendant Mueller**. Am. Comp. ¶ 30 (emphasis added).

Defendant Mueller also tries to separate himself from his co-conspirators, alleging that Plaintiff Corsi cannot "meet his burden with conclusory allegations that others violated the Constitution 'at [Mueller's] direction.'" Def's Mtn. at 34. Of course, neither Plaintiff Corsi nor this Court knows exactly the detailed inner workings of Defendant Mueller and his staff absent discovery. However, it is clear that Defendant Mueller was put in charge of the Russian collusion investigation. It thus logically follows, at least at this point in the case, that the actions of his staff were taken at his direction. Thus, at a minimum, this case must proceed to discovery to determine the scope of the misconduct taken at Defendant Mueller's direction.

## 1.    Fourth Amendment Violations

As set forth previously, Plaintiff Corsi's first count for violations of the Fourth Amendment only involve illegal and unconstitutional surveillance carried out at the direction of Defendant Mueller. The Fourth Amendment is indisputably a "clearly established" right that any reasonable official would have understood.  It is also clear that, given the Supreme Court's ruling in *Carpenter*, that a physical intrusion is not necessary to support a Fourth Amendment claim. Thus, Defendant Mueller's only defense in this regard is to try to falsely couch Plaintiff Corsi's allegations as conclusory. Plaintiff Corsi's allegations are far from conclusory, however.

Plaintiff Corsi has pled in detail Defendant Mueller has directed illegal and unconstitutional surveillance on Plaintiff Corsi "in order to try to illegally and unconstitutionally obtain information that can be used by Defendant Mueller to coerce, extort, threaten and/or blackmail Plaintiff Corsi into testifying falsely to implicate the president of the United States in crimes and have him removed from office." Am. Comp. ¶ 32. The Amended Complaint provides specific instances of surveillance, with more to be uncovered during discovery. These include:

(a) Necessarily intercepting Plaintiff's text and other messages without probable cause or a warrant so that they could illegally obtain information about and interrogate Plaintiff Corsi and his stepson, Andrew Stettner, whom they otherwise could not possibly have identified, given that he does not share the family name of Plaintiff.

(b) Author Jim Garrow, who resides in Toronto, Canada, and has developed a "DEAF" system to prevent the electronic surveillance of telephone conversations has applied DEAF to Plaintiff Corsi's cellphone and has evidence of repeated attempts by government authorities to intercept electronically Plaintiff Corsi's telephone conversations. Am. Comp. ¶ 31.

These are not legal conclusions, but factual allegations. Furthermore, the mere fact that Defendant Mueller suggests possible "alternative explanations" does not render Plaintiff Corsi's allegations false at the motion to dismiss stage.  At a minimum, Plaintiff Corsi has sufficiently

pled violations of the Fourth Amendment with regard to illegal and unconstitutional surveillance, and this case must proceed to discovery.

///

### 2.    Abuse of Process

Defendant Mueller only analyzes Plaintiff Corsi's Abuse of Process claim under the Fourth Amendment, which is clearly not what the cause of action is being brought under. Thus, this count should be treated as conceded.

In any event, however, Plaintiff Corsi has properly pled an Abuse of Process claim, for which Defendant Mueller enjoys no qualified immunity. Indeed, "there is no question that the right to be free from malicious abuse of process was clearly established as a general proposition…." *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 249 (E.D.N.Y. 2011). "There are two basic elements for an abuse of process claim: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 68 (D.D.C. 2014). Plaintiff Corsi has sufficiently alleged both. The Amended Complaint expressly sets forth Defendant Mueller's "ulterior motive": "to try to illegally and unconstitutionally obtain information that can be used by Defendant Mueller to coerce, extort, threaten and/or blackmail Plaintiff Corsi into testifying falsely to implicate the president of the United States in crimes and have him removed from office." Am. Comp. ¶ 32. The second element is also satisfied by Defendant Mueller's attempts to obtain false testimony from Plaintiff Corsi:

> Based on these misrepresentations by Defendant Mueller and his leftist and Democrat partisan prosecutorial and ethically and legally conflicted staff, Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false. Am. Comp. ¶ 22.

Thus, Plaintiff Corsi's abuse of process claim must proceed to discovery as well.

///

///

## IV.    CONCLUSION

Based on the foregoing, Plaintiff Corsi respectfully requests that this Court deny the Defendant Mueller's Motion to Dismiss and allow this matter to proceed expeditiously forthwith to discovery. Plaintiff Corsi further respectfully requests oral argument before this Court.

Dated: May 30, 2019                                  Respectfully submitted,


                                                     */s/ Larry Klayman*
                                                     Larry Klayman, Esq.
                                                     KLAYMAN LAW GROUP, P.A.
                                                     2020 Pennsylvania Avenue N.W.
                                                     Suite 800
                                                     Washington, D.C. 20006
                                                     (310) 595-0800
                                                     leklayman@gmail.com




**CERTIFICATE OF SERVICE**

I, Larry Klayman, counsel for Plaintiffs hereby certify that on this day, May 30, 2019, a copy of the foregoing was filed via this Court's ECF system and served upon all parties and/or counsel of record.


                                                     */s/ Larry Klayman*
                                                     Larry Klayman

## AFFIDAVIT OF PROCESS SERVER

### United States District Court for the District of Columbia

**Jerome Corsi, an individual**

      Plaintiff(s),

VS.

**Robert Mueller, an individual, individually and in his official capacity as Special Counsel, et al**

      Defendant(s).

**Case Number: 1:18-cv-02885-RJL**

Attorney: Larry Klayman, Esq.

Klayman Law Group, P.A.
2020 Pennsylvania Avenue, N.W., #800
Washington DC 20006



*239665*

Legal documents received by Same Day Process Service, Inc. on **04/11/2019** at **2:17 PM** to be served upon **Robert Mueller, an individual, individually and in his official capacity as Special Counsel at United States Office of Special Counsel, 1730 M St., NW, #218, Washington, DC 20036**

I, **Harvey Jessup**, swear and affirm that on **April 12, 2019** at **10:28 AM**, I did the following:

**NON-SERVED:** After careful inquiry and diligent attempts, I was unable to serve **Robert Mueller, an individual, individually and in his official capacity as Special Counsel** the **Summons in a Civil Action; Amended Complaint; Exhibit 1** for the reason that I failed to find the subject or information as to the location of the subjects' whereabouts.

**Supplemental Data Appropriate to this Service:**

| Date/Time | Address | Remarks |
|---|---|---|
| 04/12/2019-10:28 AM | United States Office of Special Counsel, 1730 M St., NW, #218 Washington, DC 20036 | Two employees came down and refused service. They explained that while they are the Office of Special Counsel, the summons for this subject must be served on the Department of Justice at 950 Pennsylvania Ave. NW. - Attempted by Harvey Jessup |

I declare under penalty of perjury that the foregoing information contained in this affidavit is true and correct and that I am a professional process server over the age of 18 and have no interest in the above legal matter.

**Harvey Jessup**
Process Server

**Same Day Process Service, Inc.**
**1413 K St., NW, 7th Floor**
**Washington DC 20005**

**(202)-398-4200**

District of Columbia: SS
Subscribed and Sworn to before me
this _16_ day of _April_ _2019_

Michael Molash, Notary Public, D.C.
My commission expires July 14, 2022

Internal Job ID:239665