THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

JEROME CORSI,

                Plaintiff,

v.

ROBERT MUELLER, *et al.*

                Defendants.

Civil Action No. 1:18-cv-02885 ESH

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**<u>SECOND AMENDED COMPLAINT BY ROBERT S. MUELLER, III</u>**

## TABLE OF CONTENTS

I.   The Judicially Implied *Bivens* Remedy Should Not Be Extended to This New Context. .............. 2

   A.  Corsi Proposes A Novel First Amendment "Retaliation" Claim. ............................................. 3

   B.  Numerous Alternative Processes Guard Against Pre-Indictment Overreach. ........................... 4

   C.  Additional Special Factors Counsel Against Recognizing the Novel First Amendment Remedy. ................................................................................................................................... 4

II.  Absolute and Qualified Immunity Would Defeat Any First Amendment Claim. ........................ 7

   A.  Absolute Prosecutorial Immunity Bars Claims Based on a "Threat" to Prosecute. .................. 7

   B.  The Re-Cast Claim Still Fails to Plausibly Allege Personal Involvement in a Constitutional Violation. ................................................................................................................................. 8

     1.  Corsi Makes No Plausible Allegations of Personal Participation. ......................................... 8

     2.  Corsi Alleges No First Amendment Violation. ...................................................................... 9

     3.  Corsi Alleges No Clearly Established First Amendment Violation. .................................... 11

III. Conclusion ................................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Aref v. Holder*,
    774 F. Supp. 2d 147 (D.D.C. 2011) ........................................................................ 9

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011).............................................................................................. 12

*\*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................ 3, 8, 9

*\*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................. 9

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971).............................................................................................. 2

*Blazier v. Larson*,
    443 F. App'x 334 (10th Cir. 2011) ........................................................................ 8

*Boatwright v. Jacks*,
    239 F. Supp. 3d 229 (D.D.C. 2017) ................................................................ 10, 11

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978)............................................................................................. 12

*Bush v. Lucas*,
    462 U.S. 367, 378 (1983)..................................................................................... 2,3

*Butts v. Martin*,
    877 F.3d 571 (5th Cir. 2017) ................................................................................. 3

*Carlson v. Green*,
    446 U.S. 14 (1980)................................................................................................ 2

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998)............................................................................................... 1

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)............................................................................................... 5

*Davis v. Passman*,
    442 U.S. 228 (1979)............................................................................................... 2

*Doe v. District of Columbia*,
   796 F.3d 96 (D.C. Cir. 2015) ............................................................... 9, 10

*\*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................. 2

*Hartman v. Moore*,
   547 U.S. 250 (2006) .......................................................................... 3, 9

*Hatfill v. Ashcroft*,
   404 F. Supp. 2d 104 (D.D.C. 2005) .................................................... 10

*Haynesworth v. Miller*,
   820 F.2d 1245 (D.C. Cir. 1987) ........................................................... 3

*Hecht v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996) ............................................................. 2

*\*Imbler v. Pachtman*,
   424 U.S. 409 (1976) ............................................................................. 7

*In re Interbank Funding Corp. Sec. Litig.*,
   629 F.3d 213 (D.C. Cir. 2010) ............................................................. 2

*James Madison Ltd. by Hecht v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996) ............................................................. 8

*Kent v. Cardone*,
   404 F. App'x 540 (2d Cir. 2011) .......................................................... 8

*Lane v. Franks*,
   573 U.S. 228 (2014) ........................................................................... 12

*Lee v. United States*,
   322 F.2d 770 (5th Cir. 1963) ............................................................... 5

*Mabry v. Johnson*,
   467 U.S. 504 (1984) ............................................................................. 6

*Missouri v. Frye*,
   566 U.S. 134 (2012) ............................................................................. 5

*Moore v. Valder*,
   65 F.3d 189 (D.C. Cir. 1995) ............................................................ 7, 8

iii

*Navab-Safavi v. Broad. Bd. of Governors*,
    650 F. Supp. 2d 40 (D.D.C. 2009), *aff'd sub nom. Navab-Safavi v. Glassman*, 637 F.3d 311
    (D.C. Cir. 2011) ................................................................................................................. 4

*Nieves v. Bartlett*,
    139 S. Ct. 1715 (2019) ..................................................................................................... 5

*Padilla v. Kentucky*,
    559 U.S. 356 (2010) .......................................................................................................... 6

*Puckett v. United States*,
    556 U.S. 129 (2009) .......................................................................................................... 6

*Reichle v. Howards*,
    566 U.S. 658 (2012) .......................................................................................................... 3

*Smith v. Plati*,
    258 F.3d 1167 (10th Cir. 2001) ...................................................................................... 10

*Storms v. Shinseki*,
    319 F. Supp. 3d 348 (D.D.C. 2018) .................................................................................. 3

*Toolasprashad v. Bureau of Prisons*,
    286 F.3d 576 (D.C. Cir. 2002) ........................................................................................ 10

*United States v. Armstrong*,
    517 U.S. 456 (1996) ........................................................................................................ 11

*United States v. AT&T Inc.*,
    290 F. Supp. 3d 1 (D.D.C. 2018) .................................................................................... 11

*United States v. Slatten*,
    865 F.3d 767 (D.C. Cir. 2017), *cert. denied sub nom. Slough v. United States*, 138 S. Ct. 1990
    (2018) ............................................................................................................................... 11

*Van de Kamp v. Goldstein*,
    555 U.S. 335 (2009) .......................................................................................................... 7

*\*Wilkie v. Robbins*,
    551 U.S. 537 (2007) ............................................................................................... 2, 3, 6, 7

*Wilson v. Layne*,
    526 U.S. 603 (1999) ........................................................................................................ 12

*Wilson v. Libby*,
    498 F. Supp. 2d 74 (D.D.C. 2007), *aff'd,* 535 F.3d 697 (D.C. Cir. 2008) .................... 4

*Wood v. Moss*,
572 U.S. 744 (2014)........................................................................................ 3

*\*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017)............................................................................... 2, 3, 5

**Rules**

Federal Rule of Criminal Procedure 11  ......................................................... 4

Federal Rule of Civil Procedure 15  ............................................................... 2

This lawsuit challenges acts allegedly undertaken over the course of the Special Counsel investigation into Russian interference with the 2016 presidential election. Dkt. No. 1, Complaint (Compl.) ¶ 6; Dkt. No. 15, Amended Complaint (FAC) ¶ 6. Jerome Corsi's original complaint, filed in December 2018 by counsel, sought no relief under the First Amendment. Compl. ¶¶ 29–40. Corsi then filed an amended complaint in January 2019. FAC. That, too, claimed no First Amendment violation. *Id.* ¶¶ 42–72. Special Counsel Mueller moved to dismiss on April 15, 2019. Dkt. No. 27, Robert S. Mueller, III's Motion to Dismiss and Memorandum of Points and Authorities (Mem.). Corsi filed his Opposition on May 30, 2019. Dkt. No. 50, Plaintiff's Opposition to Robert Mueller's Motion to Dismiss (Opp.).

In his opposition, Corsi abandoned the portion of his Fourth Amendment claim relying on allegations of "baseless threats of indictment in order to secure false testimony." Opp. pp.7–8. That would be a positive step —"[t]he Fourth Amendment covers only 'searches and seizures,' neither of which took place here," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) — except that at the same time, Corsi sought leave to amend in order to re-cast those allegations as what he calls a First Amendment "retaliation" claim. Dkt. No. 41, Plaintiff's Motion for Leave [to] File Second Amended Complaint (Mtn for Leave); Dkt. No. 41-1, Proposed Second Amended Complaint (Prop. Sec. Am. Compl.) ¶ 51 (claiming that prosecutors "threatened" Corsi "with indictment" because he refused to "testify falsely"). This putative "retaliation" claim rests on a chronology of *in*action: He supposedly "*did not* testify falsely," and in response the Special Counsel's Office allegedly "*threatened*" to, but did not, indict him. *See* Prop. Sec. Am. Compl. ¶ 51 (emphasis added). This cannot survive a Rule 12 challenge, so amendment would be futile. Leave to amend should be denied.

1

**ARGUMENT**

Federal Rule of Civil Procedure 15 instructs district courts to "freely give leave [to amend a pleading] when justice so requires." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Fed. R. Civ. P. 15(a)(2)). But, as Corsi acknowledges, leave may be denied for good cause. Mtn for Leave p.1 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Such is the case here. Corsi's claim demands a novel extension of the judge-made *Bivens* remedy, and it is barred by both absolute and qualified immunity.

**I.   The Judicially Implied *Bivens* Remedy Should Not Be Extended to This New Context.**

As explained at length in the memorandum of points and authorities supporting Special Counsel Mueller's pending motion to dismiss, Corsi has no "automatic entitlement" to sue under *Bivens* for alleged constitutional violations. Mem. p.13 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Judicially implying such remedies is now disfavored. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1956–57 (2017); *see also* Mem. p.14. As the law stands now, it will "most often" be for Congress to decide whether to extend a constitutional tort remedy to any new context of asserted official misconduct. *Abbasi*, 137 S. Ct. at 1857. And any constitutional claim that differs in a meaningful way from the three cases in which the Supreme Court has already implied remedies directly under the Constitution—*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)—cannot move forward if (1) "alternative, existing process[es]" guard against the type of harm at issue, *Wilkie*, 551 U.S. at 550; *or* (2) any other "special factors counse[l] hesitation" in implying a damages remedy, *id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 378

(1983)). *See Abbasi*, 137 S. Ct. at 1858. Corsi's "retaliation" claim is entirely novel, and "special factors" counsel against recognizing it.

### A. Corsi Proposes A Novel First Amendment "Retaliation" Claim.

The Supreme Court has never recognized any variety of First Amendment *Bivens* claim. *See Wood v. Moss*, 572 U.S. 744, 756 (2014); *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017).[1] That alone, it has suggested, might be dispositive of First Amendment *Bivens* claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). And insofar as the Supreme Court has considered implying "retaliation" claims of any stripe, it has decided *against* doing so. *See id.* (citing *Bush*, 462 U.S. at 367 (retaliatory personnel action)); *see also Wilkie*, 551 U.S. at 549 (retaliation for exercise of property rights). It has also explicitly left unresolved the question of "[w]hether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation." *Hartman*, 547 U.S. at 262 n.9. A "special factors" analysis is therefore mandatory.

While the Supreme Court has said that its cases alone determine *Bivens* novelty, *see Abbasi*, 137 S. Ct. at 1859, Corsi's "retaliation" claim is also quite unlike earlier lower court decisions allowing *Bivens* claims for First Amendment retaliation. Those typically involved an actual adverse government action, not the sort of unrealized "threat" Corsi alleges. *See, e.g., Haynesworth v. Miller*, 820 F.2d 1245, 1256 (D.C. Cir. 1987) (initiation of criminal charges to

---

[1] *Hartman v. Moore*, 547 U.S. 250, 256 (2006), assumed the availability of a First Amendment claim (for retaliatory prosecution) without implying one and so has no bearing on the analysis. *See Abbasi*, 137 S. Ct. at 1855 ("*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). So, "[e]ven accounting for *Hartman*, Supreme Court precedent does not support the . . . claim that *Bivens* extends to the First Amendment." *Storms v. Shinseki*, 319 F. Supp. 3d 348, 354 (D.D.C. 2018), *appeal docketed*, No. 18-5294 (D.C. Cir. Oct. 10, 2018).

retaliate for or suppress First Amendment activity is actionable under *Bivens*); *Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 65 (D.D.C. 2009), *aff'd sub nom. Navab-Safavi v. Glassman*, 637 F.3d 311 (D.C. Cir. 2011) (permitting retaliation claim by government contractor who was actually fired); *see also Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008) ("[D]amages actions have been permitted under the First Amendment against federal officials who" affirmatively "instituted criminal prosecutions in retaliation for the exercise of protected speech rights.").

**B.   Numerous Alternative Processes Guard Against Pre-Indictment Overreach.**

As outlined in the pending Rule 12 motion, a number of checks against pre-indictment prosecutorial overreach already exist. Mem. pp.16–20. These include protections within the federal criminal justice system, such as the grand jury process; procedures governing judicial acceptance and rejection of plea bargains, *see* Fed. R. Crim. P. 11; and even Attorney General oversight of special counsel investigations, Mem. pp.17–18. Professional ethics rules also protect against such prosecutorial misconduct. *Id.* p.24. These points apply regardless of whether the "threatened indictment" allegation is considered under the Fourth Amendment, as in the current complaint, or the First Amendment, as Corsi now proposes.

**C.   Additional Special Factors Counsel Against Recognizing the Novel First Amendment Remedy.**

Corsi's "threatened indictment" claim implicates the same general separation-of-powers and "line-drawing" concerns outlined in the pending motion. *See* Mem. pp.25–30. It also threatens to undermine the federal criminal justice system in the same way. *Id.* pp.30–31. But these concerns intensify in the context of a "retaliation" claim over an alleged "threat" of indictment, a particularly inappropriate subject for a non-statutory implied remedy.

Bad motive is "easy to allege and hard to disprove." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)). All too easily could investigative targets claim retaliation, simply by purporting to draw a link between some discretionary prosecutorial decision and an instance of claimed protected speech (or, as here, non-speech). The problem is especially acute when the "speech" at issue concerns the subject of a witness's testimony. There is no likely end of citizens like Corsi who, though never arrested or indicted, may construe as "threats" things prosecutors quite legitimately say in order to induce cooperation or work out a plea deal. *Cf. Lee v. United States*, 322 F.2d 770, 773 n.2 (5th Cir. 1963) ("In dealing with . . . criminal suspects who may actually be innocent," interrogators may "of necessity employ less refined methods than are considered appropriate for the transaction of ordinary, everyday affairs by and between law-abiding citizens"). Nor is there any shortage of investigative targets who stand to gain a strategic advantage in plea bargain negotiations by bringing a *Bivens* action to counter prosecutors' legitimate leverage. The sheer volume of the sorts of potential "retaliation" complaints that could be brought under this sort of *Bivens* theory would give rise to an unusual "burden and demand" that "might well prevent" prosecutors "from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860.

Corsi's unprecedented First Amendment theory, if accepted, might well impede, if not grind to a halt, legitimate prosecutorial efforts to secure cooperation agreements or plea bargains. The prospect of impeding plea bargains alone is daunting. "Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Missouri v. Frye*, 566 U.S. 134, 143 (2012) (citing Dep't of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2009) (hyperlink omitted); *see also*

*Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("Pleas account for nearly 95% of all criminal convictions."). That risk and the associated systemic costs are clear signals that the decision to break new *Bivens* ground in this area is one for Congress.

Relatedly, Corsi's novel retaliation theory poses insurmountable line-drawing problems comparable to those in *Wilkie. See* 551 U.S. at 554 (describing "the difficulty of defining limits to legitimate zeal on the public's behalf in situations where hard bargaining is to be expected in the back-and-forth between public and private interests that the Government's employees engage in every day"). Like the plaintiff in that case, Corsi complains of "retaliation" in the form of government efforts to induce him to strike an otherwise legitimate deal, on the theory that prosecutors "simply demanded too much and went too far." *Wilkie*, 551 U.S. at 557. The government legitimately may bargain for waivers of constitutional rights by way of a pleas, and the resulting deal is akin to a contract. *See Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts.") (citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). And while *Wilkie* involved a novel theory of "retaliation for standing on his right as a property owner," rather than an alleged First Amendment violation, the instrument of alleged harm there was similar: hard bargaining backed by threatened uses of power. *Wilkie*, 551 U.S. at 555. So like the *Wilkie* claim, Corsi's claim does not comfortably fit into "the simple 'what for' framework" ordinarily used to resolve constitutional retaliation cases. *See id.* at 555–57. Drawing lines to craft a constitutional retaliation claim geared to pre-indictment negotiations is no less—and maybe even more—daunting than drawing them for a "property rights retaliation" claim. The practical problems in implementing Corsi's proposed claim and the likely costs and burdens mentioned above amount to ample reasons why the decision to create it is best left for Congress.

6

Finally, compounding these concerns, the conduct at the heart of this case involves prosecutorial decisions that the Court has repeatedly signaled ought not involve the judiciary. *See* Mem. pp.27–28; *id.* pp.38–39. And as shown below, Corsi's claim involves alleged "threats" to engage in conduct (indictment) that would be protected by absolute prosecutorial immunity in any event. A retaliation claim arising out of a "threat" of indictment, therefore, would be particularly anomalous and fraught.

## II.  Absolute and Qualified Immunity Would Defeat Any First Amendment Claim.

Absolute prosecutorial immunity bars a claim for "threatened indictment." *Cf.* Mem. p.13. And the same qualified immunity framework set out in the pending motion to dismiss would apply to defeat the proposed First Amendment claim. *See* Mem. pp.32–40.

### A.  Absolute Prosecutorial Immunity Bars Claims Based on a "Threat" to Prosecute.

It is well-established that absolute immunity bars suits against prosecutors for actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). That immunity "applies when a prosecutor prepares to initiate a judicial proceeding," *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citation omitted), and extends to decisions whether and when to prosecute and what evidence to place before a grand jury. *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995). It also embraces supervisory prosecutors' oversight of subordinates performing protected prosecutorial functions. *See Van de Kamp*, 555 U.S. at 344–48.

Corsi's proposed First Amendment "retaliation" claim runs headlong into that immunity. He says he "engaged in constitutionally protected speech and/or activity by testifying truthfully and giving an accurate account of the events related to" the Russia investigation, Prop. Sec. Am. Compl. ¶ 50, and that "[a]s a direct and proximate result of" his "decision to exercise his First Amendment rights" that way, he "was threatened with indictment because he did not testify

falsely and provide information that Defendant Mueller wanted." *Id.* ¶ 51. But just as absolute immunity shields an actual decision to prosecute, *see Moore*, 65 F.3d at 194, it also covers a *threat* of prosecution, at least so long as the prosecutor is acting in the broad scope of his authority (which is certainly what Corsi alleges). *See, e.g., Blazier v. Larson*, 443 F. App'x 334, 336 (10th Cir. 2011) (Gorsuch, J.) ("Threatening to bring charges for conduct a prosecutor believes to be felonious could hardly be manifestly or palpably beyond his authority."); *Kent v. Cardone*, 404 F. App'x 540, 543 (2d Cir. 2011) (alleged threat to indict logger unless he made payments to landowner protected by absolute immunity because it "could arguably be considered a demand" for "restitution . . . in exchange for [an] agreement not to prosecute"). And so absolute immunity bars Corsi's proposed First Amendment claim.

## B. The Re-Cast Claim Still Fails to Plausibly Allege Personal Involvement in a Constitutional Violation.

A complaint cannot survive the first phase of the qualified immunity analysis unless it plausibly suggests both that the law was violated and that the defendant is personally "liable for the misconduct alleged." Mem. p.33 (quoting *Iqbal*, 556 U.S. at 678). Corsi has made no efforts to cure the defects of his previous two complaints in this regard, and the proposed amendment would fare no better.

### 1. Corsi Makes No Plausible Allegations of Personal Participation.

Corsi has yet to specify in what context he supposedly received a "threat" from the Special Counsel's Office. Mem. p.6. He neglects to mention when or how it was communicated. *Id.* He declines to say whether it came directly from Special Counsel Mueller or through a member of his staff. *Id.* He is equally cryptic as to what role private parties and various federal intelligence agencies supposedly played. *Id.*; *see* Prop. Sec. Am. Compl. ¶ 59 ("Defendants, each and every one of them, acting in concert jointly and severally, have . . . threaten[ed] Plaintiff

Corsi with prosecution and prison if he did not provide sworn testimony that Defendants knew to be false[.]"). In short, the "retaliation" claim rests on nothing but "labels and conclusions," not the sort of "further factual enhancement" necessary to plausibly suggest that anyone—much less Special Counsel Mueller personally—tried to coerce Corsi into giving false testimony. Mem. p.34 (quoting *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). This precludes any inference that Special Counsel Mueller "through [his] *own individual actions*, has violated the Constitution," as required to clear step one of qualified immunity. *Iqbal*, 556 U.S. at 676 (emphasis added).

### 2. Corsi Alleges No First Amendment Violation.

Corsi also offers no allegations plausibly suggesting any violation of the First Amendment at all. That would require showing: "(1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in [his] position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). The "causation link" demands allegations plausibly establishing "that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action." *Doe*, 796 F.3d at 107 (quoting *Aref*, 774 F. Supp. 2d at 169, and citing *Hartman*, 547 U.S. at 256).

Assuming that Corsi's alleged refusal to testify in a certain way is "protected conduct," he still does not claim that Special Counsel Mueller learned of his supposed refusal "to provide the false sworn testimony" *before* someone made the "threat." Prop. Sec. Am. Compl. ¶ 23. In other words, he fails to set out well-pleaded facts plausibly suggesting unlawful retaliation, as opposed to legitimate prosecutorial motives, and he fails to show Special Counsel Mueller's personal role in these supposedly unlawful events. *See Twombly*, 550 U.S. at 570 (plaintiffs

whose allegations were "merely consistent with" wrongdoing, as well as lawful behavior, "have not nudged their claims across the line from conceivable to plausible"); *Boatwright v. Jacks*, 239 F. Supp. 3d 229, 233 (D.D.C. 2017) (complaint did not plausibly suggest retaliation when it lacked "any facts that would tend to support the inference that [defendants] themselves acted with a discriminatory state of mind").

Moreover, the only "retaliatory action" Corsi alleges is an unrealized "threat" of indictment. Prop. Sec. Am. Compl. ¶ 51. He insists he gave truthful testimony and was threatened with prosecution but offers virtually no supporting details. *Id.* ¶¶ 50–51. That makes it impossible to assess whether his label of "threat" is plausible. And Corsi's own behavior shows that an inference of First Amendment chill is not plausible, at least not on the basis of what little he alleges. *See Toolasprashad v. Bureau of Prisons,* 286 F.3d 576, 585 (D.C. Cir. 2002) ("The widely accepted standard for assessing whether harassment for exercising the right of free speech [is] . . . actionable . . . depends on whether the harassment is []likely to deter a person of ordinary firmness from that exercise.") (citation and quotation omitted). He does not allege that he changed his testimony, and if anything he remained outspoken in his claimed views. *See* Jerome R. Corsi, *Silent No More: How I Became a Political Prisoner of Mueller's "Witch Hunt"* (2019); *see also Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (plaintiff's persistence in his speech "offers some evidence" official action did not chill speech); *accord Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 118–19 (D.D.C. 2005).

Finally, Corsi fails to plausibly suggest that the substance of his testimony was the "but for" cause of any alleged "threat," as opposed to a sincere belief that Corsi played some role in indictable misconduct. *See Doe*, 796 F.3d at 106. Corsi freely claims advance knowledge that WikiLeaks would release e-mails stolen from John Podesta, as well as some degree of personal

knowledge of criminal misconduct. *See* FAC ¶¶ 20–21 (alleging that prosecutors "spun the fake

narrative that Plaintiff Corsi 'colluded' with Russian intelligence and other services" due to

"Corsi's logical investigative deduction . . . that the emails belonging to John Podesta constituted

the bulk of the remaining Democratic Party emails that Julian Assange and WikiLeaks planned

to make public after the initial WikiLeaks release of Democratic Party emails on July 22,

2016."); *United States v. Stone*, No. 1:19-cr-18 (D.D.C.), Dkt. No. 1, ¶ 3 (indictment on charges

involving the release of "documents stolen from the DNC"); *Corsi v. Stone*, No. 1:19-cv-00324

(D.D.C.), Dkt. No. 1 ¶ 5 (in separate civil suit against a criminal defendant "recently indicted by

Special Counsel Robert Mueller," identifying Corsi as "Person 1, a material witness to the

alleged crimes"). All of this suggests that the most reasonable explanation for any "threat" was

that prosecutors sincerely believed Corsi may have been involved in a crime. *See United States v.

AT&T Inc.*, 290 F. Supp. 3d 1, 3 (D.D.C. 2018) (The D.C. Circuit "has often recognized" that

"[p]rosecutors have broad discretion to enforce the law, and their decisions are presumed to be

proper absent clear evidence to the contrary.") (quoting *United States v. Slatten*, 865 F.3d 767,

799 (D.C. Cir. 2017), *cert. denied sub nom. Slough v. United States*, 138 S. Ct. 1990 (2018), and

citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)); *Boatwright*, 239 F. Supp. 3d at 233

("The bald assertion" of discrimination "is not a plausible inference from the mere fact that they

signed a discharge letter that cited factors that were legitimate on their face."). Together with the

presumption that prosecutors have good grounds for the actions they take, and taken in light of

Corsi's mostly conclusory allegations, that reasonable explanation forecloses any plausible

inference of retaliation.

### 3.   Corsi Alleges No Clearly Established First Amendment Violation.

Corsi's proposed amendment is also futile because he cannot overcome qualified

immunity by showing that "*every* reasonable official" in Special Counsel Mueller's position

"would have understood that what he [was] doing violate[d]" the First Amendment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation and quotation omitted) (emphasis added). Corsi cannot meet this burden for a number of reasons. First of all, the law gives prosecutors wide latitude, especially pre-indictment. *See* Mem. pp.38–39 (collecting cases).

Second, the First Amendment did not apply in any clearly established way to the Special Counsel's Office's pre-indictment dealings with Corsi. No case from the Supreme Court or the D.C. Circuit addresses whether a prosecutor violates the First Amendment when confronting a witness in the manner Corsi so vaguely describes. The Supreme Court's decision in *Lane v. Franks*, 573 U.S. 228 (2014), did recognize a public employee's right to First Amendment protection for his testimony in a criminal trial, but it also held that the government employer had qualified immunity from a retaliation suit because the constitutional rule was not "clearly established." *Id*. at 243–46. Corsi's case arises from different circumstances and raises different legal questions. Nor is there any apparent "robust 'consensus of cases of persuasive authority'" on the points on which his claim turns. *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). When witnesses testify falsely it is entirely appropriate for prosecutors to confront them, and in any event some degree of back-and-forth will sometimes be necessary to ascertain if a witness is indeed giving the unvarnished truth. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (Prosecutor, who "openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause."); *see also, e.g.,* Mem. p.37 & n.44 (collecting cases establishing that harsh language will not state a constitutional violation). No established law regulates these exchanges under the First Amendment. So Corsi's theory of First Amendment violation is novel and triggers qualified immunity.

### III. Conclusion

For the foregoing reasons and those outlined in greater detail in support of Special

Counsel Mueller's pending motion to dismiss,[2] Corsi should be denied leave to amend his

complaint as proposed.

Dated: June 13, 2019     Respectfully submitted,

           C. SALVATORE D'ALESSIO, JR.
           Acting Director
           Torts Branch, Civil Division

           */s/ Richard Montague*
           RICHARD MONTAGUE
           Senior Trial Counsel, Torts Branch
           Civil Division

           */s/ Laura Katherine Smith*
           LAURA KATHERINE SMITH
           Senior Trial Attorney, Torts Branch
           Civil Division
           U.S. Department of Justice
           P.O. Box 7146, Ben Franklin Station
           Washington, DC 20044
           Tel: (202) 616-0419
           Laura.Smith2@usdoj.gov

           *Attorneys for Defendant Robert S. Mueller, III,*
           *in his individual capacity*

---

[2] Corsi concedes failing to serve Special Counsel Mueller by March 11, 2019, the deadline set by Rule 4(m), and that is grounds for dismissal in any event. Mem. pp.9–10; Opp. pp.3–4. And whether sought under the Fourth or First Amendment, equitable relief remains unavailable from individual-capacity government employees. *See* Prop. Sec. Am. Compl. p.18 (seeking "equitable, declaratory, and injunctive relief" from individual- and official-capacity defendants "collectively"); Mem. pp.10–11. Corsi has not disputed this point either.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 13, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

/s/ *Laura Katherine Smith*
LAURA KATHERINE SMITH