**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEROME CORSI,
*Plaintiff*,

v.

ROBERT MUELLER, et al
*Defendants*

Civil Action No.  1:18-cv-02885

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFF'S REPLY TO DEFENDANT ROBERT MUELLER'S OPPOSITION TO**
**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff Dr. Jerome Corsi ("Plaintiff Corsi") submits the following in opposition to Defendant Robert S. Mueller's Opposition to Motion for Leave to File Second Amended Complaint, filed in his <u>individual</u> capacity.

Dated: July 5, 2019

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Avenue N.W.
Suite 800
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

LEGAL STANDARD.........................................................................................................................2

    Standard for Amendment..............................................................................................................2

    Standard Under Rule 12 ...............................................................................................................3

LEGAL ARGUMENT........................................................................................................................4

    There is No New *Bivens* Context Being Raised .........................................................................4

    No Special Factors Exist to Warrant the Exclusion of Plaintiff Corsi's Claim ........................8

    Immunity Does Not Apply ...........................................................................................................9

        There is no Absolute Immunity for Prosecutorial Misconduct...........................................9

        There is no Qualified Immunity.........................................................................................11

CONCLUSION.................................................................................................................................13

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................3

*Bagola v. Kindt*, 131 F.3d 632 (7th Cir. 1997) ............................................................4

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)..................................................12

*Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971) ...................... 4-8

*Brown v. Nationsbank Corp.*, 188 F.3d 579 (5th Cir. 1999).........................................4

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) .............................................................9

*Butz v. Economou*, 438 U.S. 478 (1978).......................................................................4

*Copeland Motor Co. v. General Motors Corp.*, 199 F.2d 566 (5th Cir. 1952)..............3

*Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134 (D.C. Cir. 1989) ..................................2

*Evans v. Fogarty*, 241 F. App'x 542 (10th Cir. 2007) ................................................12

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ..................................................9, 10

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................2, 3

*Gordon v. United States Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015) .....................3

*Hartman v. Moore*, 547 U.S. 250 (2006)..................................................................5, 6

*Haynesworth v. Miller*, 261 U.S. App. D.C. 66 (1987) .............................................5, 6

*In re Vitamins Antitrust Litigation*, 217 F.R.D. 30 (D.D.C. 2003)................................2

*Jarita Mesa Livestock Grazing Ass'n v. United States Forest Serv.*, 921 F. Supp. 2d 1137 (D.N.M. 2013)............................................................................................................12

*NAACP v. Ala. Ex rel. Patterson*, 357 U.S. 449 (1958)...............................................5

*Navab-Safavi v. Broadcasting Board of Governors*, 08-cv-1125 (D.D.C)...................6

*Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001)...........................................................6

*United States v. Jones*, 132 S. Ct. 945 (2012).............................................................5

*United States. v. Lee*, 106 U.S. 196 (1882).................................................................4

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ....................................................................7

**Statutes**

Fed. R. Civ. P. 8(a)(2)...................................................................................................3

Fed. R. Civ. P. 15(a) .....................................................................................................3

Fed. R. Civ. P. 15(b)(2).................................................................................................3

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Defendant Mueller attempted to illegally and unconstitutionally abuse his authority in an attempt to steer the result of his Russian collusion investigation into a result that he and his co-Defendants deem favorable – namely the demise of the presidency of Donald Trump. Defendant Mueller and his staff have done so by trying to suborn perjury from Plaintiff Corsi. "Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false." Second Amended Complaint ("SAC" ¶ 22. "As just one example, Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify under oath that he acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers." SAC ¶ 23.

In doing so, Defendant Mueller further violated Plaintiff Corsi's constitutional First Amendment rights. Plaintiff Corsi exercised his First Amendment right by (1) speculating with regards to Wikileaks and (2) choosing to testify and give a truthful account of of what happened with regard to the Russian collusion investigation to the best of his personal knowledge and belief. However, Defendant Mueller retaliated against Plaintiff Corsi by "threate[ing] to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false." SAC ¶ 22. Thus, because Plaintiff Corsi chose to exercise his First Amendment (and moral) right to give a truthful account of the events

1

of the Russian collusion investigation, Defendant Mueller has chosen to retaliate against him by threatening indictment.

It is clear that this is not was Defendant Mueller and his staff were appointed to do and he thus grossly exceeded his mandate and authority with regard to Plaintiff Corsi. Despite the fact that Defendant Mueller's report officially found no collusion, it is telling that the investigation took so long to complete. During this time, Defendant Mueller and his staff were engaging in the illegal and unconstitutional behavior under the First (and Fourth) Amendments as set forth in the SAC in order to try to achieve their goal to remove President Trump. Despite the fact that they have failed to do so, it is respectfully incumbent upon this Court to allow this case to move forward to discovery and to allow Plaintiff Corsi an opportunity and due process before a jury of his peers to recover after having been severely damaged in his reputation and otherwise by the Defendant Mueller and his co-Defendants, but also as a deterrent to future unconstitutional and illegal conduct.

## II.    LEGAL STANDARD

### A.    Standard for Amendment

FRCP Rule 15(a) provides that leave to amend shall be freely given when justice requires. "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999). The U.S. Supreme Court has declared that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1136 (D.C. Cir. 1989). Thus, the burden is on the opposing party to show that there is reason to deny leave. *In re Vitamins Antitrust Litigation*, 217 F.R.D. 30, 32 (D.D.C. 2003). The U.S. Supreme Court explained that "if the underlying facts or

circumstances relied upon by a plaintiff may be a proper source of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 at 182. A plaintiff may even amend a complaint during or after trial, if justice so requires. "A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue." Fed. R. Civ. P. 15(b)(2). Indeed, "cases should, as far as possible, be determined on their merits and not on technicalities . . ." *Copeland Motor Co. v. General Motors Corp*., 199 F.2d 566, 567-68 (5th Cir. 1952).

**B.      Standard Under Rule 12**

Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party." *Gordon v. United States Capitol Police*, 778 F.3d 158, 163-164 (D.C. Cir. 2015).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotations omitted). As such, a motion to dismiss at this stage must be decided solely on what Plaintiffs have plead in their complaint, taken as true, and not upon any factual "contradictions" that Defendants have improperly and prematurely attempted to insert. Involving such weighing of fact would take the standards of pleading to new heights not contemplated before by any Court.

///

## III.   LEGAL ARGUMENT

### A.   There is No New *Bivens* Context Being Raised

*Bivens* actions were designed to prevent government officials from abusing their power or employing their power as an instrument of oppression. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 591 (5th Cir. 1999). The constant under our U.S. Constitution is that "[n]o man in this country is so high that he is above the law.  All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it." *United States. v. Lee*, 106 U.S. 196, 220 (1882). In the U.S. Constitution, "We the People" showed this world a new way to govern and created a "system of jurisprudence [that] rests on the assumption that all individuals, whatever their position in government, are subject to federal law." *Butz v. Economou*, 438 U.S. 478, 506 (1978). *Bivens* provides a remedy when federal officials violate citizens' constitutional rights by allowing such citizens to recover damages from those officials in their individual capacities.[1] *Id.* at 590.

In *Bivens*, the U.S. Supreme Court held that a plaintiff could recover money damages for violations of the Fourth Amendment committed by federal agents. *Bivens*, 403 U.S. at 397; *see also Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir. 1997). Courts have also recognized that a *Bivens* remedy extends beyond Fourth Amendment violations and encompasses other constitutional rights. *Butz*, 438 U.S. at 478.

Defendant Mueller erroneously and disingenuously asserts that Plaintiff Corsi's claim for First Amendment Retaliation under *Bivens* raises a new context. This is not true. The First

---

[1] "Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bivens*, 403 U.S. at 392, 395; *see also Davis v. Passman*, 442 U.S. 228, 245, 246-47 (1979) (personal liability for violations of the Fifth Amendment's Equal Protection Clause because plaintiff's constitutional rights were violated and she had no effective means to enforce those rights other than *Bivens*).

Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The U.S. Supreme Court has long recognized that government investigative activities, including communications surveillance, endanger these freedoms. *See, e.g.*, *NAACP v. Ala. Ex rel. Patterson*, 357 U.S. 449, 466 (1958). This was the basis for the Court's landmark ruling in *NAACP v. Alabama*, which struck down a state order for the NAACP to disclose its membership lists. *Id*. As the Court explained: "This Court has recognized the vital relationship between freedom to associate and privacy in one's associations . . . Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id*. at 462; *see also United States v. Jones*, 132 S. Ct. 945, 956 (2012) ("Awareness that the government may be watching chills associational and expressive freedoms.").

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' *Crawford-El* v. *Britton,* 523 U.S. 574, 588, n. 10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998), and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out…." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "Some official actions adverse to such a speaker might well be unexceptionable if taken on other grounds, but when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution." *Id*. "When the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*." *Id*. As such, the Supreme Court has expressly

recognized the viability of First Amendment retaliation *Bivens* claims. *See also Haynesworth v. Miller*, 261 U.S. App. D.C. 66, 820 F.2d 1245 (1987) (overruled in part by *Hartman* with regards to requiring evidence of lack of probable cause in *Bivens* retaliatory prosecution suits).

Crucially, this Court itself previously allowed for a First Amendment retaliation *Bivens* claim to proceed past the motion to dismiss stage in *Navab-Safavi v. Broadcasting Board of Governors*, 08-cv-1125 (D.D.C). In doing so, this Court reasoned:

> In recent years, the Court has assumed without deciding that Bivens actions are also possible for First Amendment claims. *See Ha*rtman, 547 U.S. at 252 (establishing pleading standards in Bivens action based on allegedly retaliatory prosecution for speech critical of government agency); *Iqbal*, 129 S. Ct. at 1948 (assuming without deciding that Free Exercise Clause claim was actionable under Bivens). The D.C. Circuit has also concluded that plaintiffs could recover under Bivens for retaliation in violation of the First Amendment. *See Haynesworth v. Miller*, 820 F.2d 1245, 1255 (D.C. Cir. 1987) ("We agree that the [plaintiff's] retaliatory prosecution constitutes an actionable First Amendment wrong redressable under Bivens . . . ." (footnote omitted)), overruled in part on other grounds by *Hartman*, 547 U.S. at 256; *Dellums v. Powell*, 566 F.2d 167, 195 (D.C. Cir. 1977) (recognizing Bivens action for violation of First Amendment right to petition Congress for redress of grievances).

Furthermore, in *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001), a landmark case that undersigned counsel filed and argued before the U.S. Court of Appeals for the Fourth Circuit, plaintiffs, an ex-intelligence official and his assistant, sought review of an order of the U.S. District Court for the Eastern District of Virginia, which dismissed their action against defendants, FBI Director Louis Freeh, his agents, and his supervisors, alleging an unconstitutional seizure and search of their home and computer in retaliation for the official's published criticism of the FBI. *Id*. at 397-98. The U.S. Court of Appeals for the Fourth Circuit held that plaintiffs First Amendment claim could proceed and that the officials, including FBI Director Freeh, were not entitled to qualified immunity because "a public official may not

misuse his power to retaliate against an individual for the exercise of a valid constitutional right. *Id*. at 405. Additionally, the court ordered the case to proceed to discovery. *Id*.

Defendant Mueller briefly cites *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) top support his erroneous position. Tellingly, however, the Honorable Colleen Kollar-Kotelly ("Judge Kotelly") of the U.S. District Court for the District of Columbia has expressly declined to make the finding that *Abbasi* precludes a First Amendment retaliation claim under *Bivens*. In her November 28, 2017 Memorandum Opinion in *Loumiet v. United States of America*, 12-cv-1130 (D.D.C), Judge Kotelly denied the government's motion for reconsideration of her decision to allow a First Amendment retaliation claim to proceed under *Bivens* in light of the Supreme Court's ruling in *Abbasi*. The full opinion is attached hereto as <u>Exhibit 1</u>. Crucially, Judge Kotelly found:

> Individual Defendants appear to make some kind of argument that *Abbasi* adds a further presumption against finding a *Bivens* remedy, a presumption that is suggested to exceed the Supreme Court's already clear trend against such findings, and that is somehow independent of the "special factors" and "alternative, existing process" inquiries that the Supreme Court distilled in *Wilkie*. The Court is not persuaded that *Abbasi* should be read this way. <u>Exhibit 1</u> at 7-8.

Judge Kotelly further found:

> Moreover, the Court finds unpersuasive Individual Defendants' argument to the effect that, after *Abbasi*, a district court may no longer rely on circuit court precedent recognizing a *Bivens* cause of action in a context that has not expressly been recognized (or expressly rejected) by the Supreme Court….Rather, the Supreme Court observes simply that the "three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi,* 137 S. Ct. at 1855. **While this Court is of the view that Abbasi should not require relitigating the "new context" question for every Bivens action recognized by circuits but not (yet) by the Supreme Court,** that issue need not be decided here due to the Court's assumption that this is, in fact, a new context. <u>Exhibit 1</u> at 8.

Judge Kotelly's reasoning is sound. There is nothing in *Abassi* that changes the fact that the Supreme Court has already recognized First Amendment retaliation as a viable Bivens

context. Thus, no inquiry into special factors is required and Defendants' motion must be denied in this regard. However, even in the event that this Court conducts a special factors analysis, Plaintiff Corsi's claim still must proceed.

**B.      No "Special Factors" Exist to Warrant Exclusion of Plaintiff Corsi's Claim**

Defendant Mueller cites assertions made in his Motion to Dismiss, to which Plaintiff Corsi has already responded in his opposition thereto. Plaintiff Corsi will not repeat these responses in the interest of judicial economy, but suffice it to say that none of the purported "alternative processes" provide for financial recovery against a federal official. Thus, there can be no adequate other than *Bivens* in this regard.

The only new assertion made by Defendant Muller is equally meritless. Defendant Mueller apparently claims that Plaintiff Corsi's *Bivens* claim would "impede, if not grind to a halt, legitimate prosecutorial efforts to secure cooperation agreements or plea bargains." ECF No. 49 at 5. Defendant Mueller falsely asserts that "Corsi complains of 'retaliation' in the form of government efforts to induce him to strike an otherwise legitimate deal, on the theory that prosecutors 'simply demanded too much and went too far.'"

This assertion, however, grossly misstates the facts set forth in Plaintiff Corsi' Second Amended Complaint. The SAC instead alleges that Defendant Mueller suborned perjury from Plaintiff Corsi, and when Plaintiff Corsi would not comply, threatened him with indictment:

> Based on these misrepresentations by Defendant Mueller and his leftist and Democrat partisan prosecutorial and ethically and legally conflicted staff, Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false. As just one example, Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify under oath that he acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers. SAC ¶¶ 22-23.

This goes far beyond normal and proper attempts by prosecutors to obtain plea agreements. Put another way, if the inability to suborne perjury and threaten indictment in order to do so would prevent prosecutors from securing plea agreements, then perhaps the prosecutors who feel that way should not be allowed to work in the criminal justice system. Thus, this "special factor" is nothing more than a "red herring" by Defendant Mueller and as such, it must be denied as a basis for dismissal of Plaintiff Corsi's First Amendment retaliation claim under *Bivens*.

### C.   Immunity Does Not Apply

#### 1.   There is No Absolute Immunity for Prosecutorial Misconduct

Defendant Mueller falsely asserts that he enjoys absolute immunity for his actions under the purported grant of such immunity for prosecutors. However, first and foremost, "absolute immunity is only for acts they commit within the scope of their employment as prosecutors." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–76 (1993). When the employment duties go beyond the strictly prosecutorial to include investigation, and when they do non-prosecutorial work they lose their absolute immunity and have only the immunity, called "qualified," that other investigators enjoy when engaged in such work. *Id.* at 275-76.

Furthermore, even where absolutely immunity was to apply, the U.S. Court of Appeals for the Seventh Circuit ("Seventh Circuit") has recently issued a landmark decision scaling back the extent of "absolute" prosecutorial/judicial immunity. *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014).  In *Fields*, the Seventh Circuit found that an Illinois prosecutor, Wharrie, did not enjoy absolute immunity when he procured testimony that he knew to be false. *Id.* at 1110. Wharrie had knowingly procured false statements from a prospective witness one month before Fields was arrested, and later served as the prosecuting attorney at Fields' trial, where he was ultimately convicted. *Id.* at 1111. Wharrie asserted absolute prosecutorial immunity for his

misconduct, which he argues extended to his investigative work. *Id*. The Seventh Circuit, however, did not buy Wharrie's argument. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; *every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial*." *Id*. at 1113-14 (emphasis in original). "A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrongdoing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity. That would create a 'license to lawless conduct,' which the Supreme Court has said that qualified immunity is not to do." *Id*. at 1114. As such, the Seventh Circuit held that Wharrie was not entitled to absolute immunity, and indeed, not even qualified immunity. *Id*.

Here, the facts alleged in Plaintiff Corsi's SAC align squarely with the facts in *Fields*. Like the prosecutor in *Fields*, who knew that the testimony procured was false, and therefore there was no basis to arrest and prosecute Fields, Defendant Mueller himself also tried to knowingly procure false testimony from Plaintiff Corsi. SAC. ¶ 22-23. Even worse that in *Fields*, who apparently was simply trying to win a case, Defendant Mueller here is alleged to have abused the criminal justice systems to "accomplish [his] designs to take down President Trump and have him removed from office, if not criminally prosecuted." SAC ¶ 41. Allowing this type of conduct to occur would definitely create a "license to lawless conduct," as prosecutors and those supervising them would be free to abuse to justice system for their own nefarious purposes.

//

### 2.     There is No Qualified Immunity

Defendant Mueller falsely asserts in that Plaintiff Corsi has not pled personal participation or a First Amendment violation.

As a threshold matter, Defendant Mueller attempts to escape liability by falsely claiming that the SAC does not allege Defendant Mueller's "personal participation." Defendant Mueller. However, Plaintiff Corsi has alleged that Defendant Mueller has personally engaged in, and/or directed numerous violations of Plaintiff Corsi's "clearly established" constitutional or statutory rights:

> In the course of his investigation, Defendant Mueller, and others on his staff at his direction have misrepresented the investigative research conducted by Plaintiff Corsi and spun the fake narrative that Plaintiff Corsi "colluded" with Russian intelligence and other services. SAC ¶ 20.

> Based on these misrepresentations by Defendant Mueller and his leftist and Democrat partisan prosecutorial and ethically and legally conflicted staff, Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide the false sworn testimony under oath that they demanded, even after being informed that the testimony desired would be false. As just one example, Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify under oath that he acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers. Am. Comp. ¶¶ 22-23.

> Furthermore, Defendant Mueller and his staff, at his direction, have criminally violated Rule 6(e)(2) of the Federal Rules of Criminal Procedure, governing the secrecy requirement of grand jury proceedings. Defendant Mueller and his staff have leaked grand jury information to the press concerning Plaintiff Corsi, in violation of Plaintiff Corsi's privacy rights as well as the Federal Rules of Criminal Procedure. SAC. ¶¶ 24-25.

> In this regard, Defendants Mueller, DOJ, NSA, CIA, and FBI have engaged in ongoing illegal, unconstitutional surveillance on Plaintiff Corsi, in violation of the Fourth Amendment and the USA Freedom Act as well targeted "PRISM" collection under Section 702 of the Foreign Intelligence Surveillance Act, 50 U.S.C §1881(a) et. seq., **at the direction of Defendant Mueller**. SAC ¶ 30 (emphasis added).

Of course, neither Plaintiff Corsi nor this Court knows exactly the detailed inner workings of Defendant Mueller and his staff absent discovery.  However, it is clear that Defendant Mueller was put in charge of the Russian collusion investigation. It thus logically follows, at least at this point in the case, that the actions of his staff were taken at his direction. Thus, at a minimum, this case must proceed to discovery to determine the scope of the misconduct taken at Defendant Mueller's direction.

Defendant Mueller next argues that Plaintiff Corsi failed to allege a First Amendment violation on three grounds, neither of which have merit. First Defendant Mueller apparently asserts that the SAC does not allege that Defendant Mueller learned of Plaintiff Corsi's refusal to provide false sworn testimony before someone made the threat. However, the SAC alleges that Defendant Mueller himself personally threatened Plaintiff Corsi and personally directed his staff to threaten Plaintiff Corsi. SAC ¶¶ 22-23. It is impossible for Defendant Mueller to have personally participated, yet not have been aware of his own personal participation. Thus, this argument is a non-starter.

Furthermore, Defendant Mueller apparently asserts that Plaintiff Corsi's does not allege a First Amendment violation because he does not allege that he changed his testimony. This is, of course, not what Plaintiff is alleging at all. He is alleging retaliation, in the form of threatened indictment, based on his refusal to provide testimony which Defendant Mueller knew to be false. Indeed, "[t]hreats of official sanctions aimed at discouraging protected activity can form the basis of a constitutional violation." *Jarita Mesa Livestock Grazing Ass'n v. United States Forest Serv.*, 921 F. Supp. 2d 1137, 1199 (D.N.M. 2013). *See also Evans v. Fogarty*, 241 F. App'x 542, 559 (10th Cir. 2007) ("On the other hand, threats of official sanctions aimed at discouraging protected activity can form the basis of a constitutional violation.") See *Bantam Books, Inc. v.*

*Sullivan*, 372 U.S. 58, 67 (1963). Thus, Plaintiff Corsi' claims, as <u>actually alleged</u>, does state a claim for First Amendment violation.  Even more, based on these cases, it is clear that Plaintiff Corsi's allegations set forth violation of a clearly established right of which any reasonable official would have known. Indeed, it is difficult to fathom that any prosecutorial official would fail to know that it is improper, unconstitutional, and illegal to threaten an individual with indictment that he knows to be without cause in order to obtain knowingly false testimony from that individual.  The alleged illegal conduct of Defendant Mueller significantly harmed Plaintiff Corsi, with severe emotional distress, lost personal and professional reputation, good will and business endeavors. The impact of Defendant Mueller's lawlessness is huge.

Defendant Mueller's last assertion fares no better, as it directly contravenes the facts pled in the SAC. Defendant Mueller argues that the SAC does not plausibly plead that Defendant Mueller actually threatened Plaintiff Corsi and was not simply acting under a "sincere belief that Corsi played some role in indictable misconduct." ECF No. 49 at 10. However, from what is pled in the SAC, it is clearly alleged that Defendant Mueller knowing threatened Plaintiff Corsi without basis in order to try to obtain false testimony from him.  SAC ¶¶ 22-23. Under these allegations and hard facts, it is impossible for Defendant Mueller to assert that the was operating in good faith. That he would make such a ridiculous argument, underscores the illegality and unconstitutionality at issue, as Defendant Mueller appears to not know the difference between "right and wrong!" Simply, put the ends do not justify the illegal and unconstitutional means.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff Corsi respectfully requests that this Court grant his Motion for Leave to File Second Amended Complaint and allow this matter to proceed expeditiously forthwith to discovery.

Plaintiff Corsi further respectfully requests oral argument before this Court.

Dated: July 5, 2019                              Respectfully submitted,


                                                 */s/ Larry Klayman*
                                                 Larry Klayman, Esq.
                                                 KLAYMAN LAW GROUP, P.A.
                                                 2020 Pennsylvania Avenue N.W.
                                                 Suite 800
                                                 Washington, D.C. 20006
                                                 (310) 595-0800
                                                 leklayman@gmail.com




## CERTIFICATE OF SERVICE

I, Larry Klayman, counsel for Plaintiffs hereby certify that on this day, July 5, 2019, a

copy of the foregoing was filed via this Court's ECF system and served upon all parties and/or

counsel of record.


                                                 */s/ Larry Klayman*
                                                 Larry Klayman

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

CARLOS LOUMIET,

     *Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

     *Defendants.*

Civil Action No. 12-1130 (CKK)

---

**MEMORANDUM OPINION**
(November 28, 2017)

Plaintiff Carlos Loumiet brought this suit against the United States Government for certain actions of its agency, the Office of the Comptroller of the Currency ("OCC"), and against Defendants Michael Rardin, Lee Straus, Gerard Sexton, and Ronald Schneck (together, the "Individual Defendants"), alleging a variety of torts under federal and state law. After a series of rulings by this Court and the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), on remand this Court granted-in-part and denied-in-part the United States' and Individual Defendants' latest motions to dismiss. *Loumiet v. United States*, 255 F. Supp. 3d 75 (D.D.C. 2017) ("*Loumiet V*"). The Court allowed the following claims to proceed: a First Amendment claim for retaliatory prosecution under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Defendants Rardin, Schneck, and Sexton, and claims under the Federal Tort Claims Act ("FTCA") for intentional infliction of emotional distress (Count I), invasion of privacy (Count II), negligent supervision (Count V), and civil conspiracy (Count VIII), against the United States. *Loumiet V*, 255 F. Supp. 3d at 81.

In light of the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017),

Individual Defendants now urge this Court to revisit its decision on their [62] motion to dismiss.[1] *See* Individual Defs.' Rule 54(b) Mot. to Reconsider in Light of *Ziglar v. Abbasi* and Supporting Mem. of P&A, ECF No. 74, at 1-2 ("Ind. Defs.' Mem."). While their specific request is somewhat ambiguous, Individual Defendants essentially ask the Court not to recognize subject-matter jurisdiction over Plaintiff's First Amendment *Bivens* claim, and in turn to reverse its decision to deny their motion with respect to Defendants Rardin, Schneck, and Sexton. *See Loumiet V*, 255 F. Supp. 3d at 82-83 (discussing standard for surviving Rule 12(b)(1) motion and recognizing First Amendment *Bivens* claim); Ind. Defs.' Mem. at 1-2 ("[T]his Court should . . . decline to recognize a *Bivens* remedy in this case.").

Upon consideration of the briefing and notices of supplemental authority,[2] the relevant legal authorities, and the record as a whole, the Court **DENIES** the Individual Defendants' [74] Rule 54(b) Motion to Reconsider in Light of *Ziglar v. Abbasi* and Supporting Memorandum of

---

[1] The United States has not filed a motion to reconsider the Court's decision on the United States' [63] Motion to Dismiss. Therefore, only the First Amendment claim for retaliatory prosecution under *Bivens* against Individual Defendants is considered here.

[2] The Court's consideration has focused on the following documents:

- Individual Defs.' Rule 54(b) Mot. to Reconsider in Light of *Ziglar v. Abbasi* and Supporting Mem. of P&A, ECF No. 74 ("Ind. Defs.' Mem.");
- Carlos Loumiet's Opp'n to Individual Defs.' Rule 54(b) Mot. to Reconsider in Light of *Ziglar v. Abbasi*, ECF No. 75 ("Opp'n Mem.");
- Reply Mem. in Supp. of Individual Defs.' Rule 54(b) Mot. to Reconsider in Light of *Ziglar v. Abbasi*, ECF No. 76 ("Reply Mem.");
- Carlos Loumiet's Mot. for Leave to File Sur-Reply, ECF No. 78 ("Sur-Reply Mot.);
- Carlos Loumiet's Sur-Reply in Opp'n to Individual Defs.' Mot. for Recons., ECF No. 78-1 ("Sur-Reply Mem.");
- Individual Defs.' Notice of Suppl. Auth., ECF No. 77 ("Notice Suppl. Auth.");
- Carlos Loumiet's Resp. to Individual Defs.' Notice of Suppl. Auth., ECF No. 79 ("Resp. to Notice Suppl. Auth.");
- Individual Defs.' Second Notice of Suppl. Auth., ECF No. 80 ("Second Notice Suppl. Auth.").

Points and Authorities ("Motion to Reconsider"). Plaintiff's First Amendment *Bivens* claim for

retaliatory prosecution shall proceed against Defendants Rardin, Schneck, and Sexton. Plaintiff's

FTCA claims for intentional infliction of emotional distress (Count I), invasion of privacy (Count

II), negligent supervision (Count V), and civil conspiracy (Count VIII) shall proceed against the

United States.

## I. BACKGROUND

In prior proceedings, the Court has extensively discussed the factual background, *e.g.*,

*Loumiet v. United States*, 968 F. Supp. 2d 142, 145-47 (D.D.C. 2013) ("*Loumiet I*"),[3] and shall

deal here only with those details necessary to evaluate Individual Defendants' [74] Motion to

Reconsider.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In order to hear Plaintiff's *Bivens* claim, the Court must be satisfied that it has subject-

matter jurisdiction. At the motion to dismiss stage, Plaintiff bore the burden of establishing that

the Court has subject-matter jurisdiction over its claims. *Moms Against Mercury v. FDA*, 483 F.3d

824, 828 (D.C. Cir. 2007); *Ctr. for Arms Control & Non-Proliferation v. Redd*, No. CIV.A. 05-

682 (RMC), 2005 WL 3447891, at *3 (D.D.C. Dec. 15, 2005). In determining whether there is

jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced

in the record, or the complaint supplemented by undisputed facts plus the court's resolution of

---

[3] The list of past rulings consists of *Loumiet v. United States*, 968 F. Supp. 2d 142 (D.D.C. 2013) ("*Loumiet I*"); *Loumiet v. United States*, 65 F. Supp. 3d 19 (D.D.C. 2014) ("*Loumiet II*"); *Loumiet v. United States*, 106 F. Supp. 3d 219 (D.D.C. 2015) ("*Loumiet III*"); *Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016) ("*Loumiet IV*"); and *Loumiet v. United States*, 255 F. Supp. 3d 75 (D.D.C. 2017) ("*Loumiet V*"). In addition, the D.C. Circuit previously ruled on Plaintiff's application for attorney fees under the Equal Access to Justice Act ("EAJA") in connection with his defense before the OCC. *Loumiet v. Office of Comptroller of Currency*, 650 F.3d 796, 798 (D.C. Cir. 2011) ("*Loumiet EAJA*").

disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks omitted).

### B. Motion to Reconsider

Now on a motion for reconsideration, the burden shifts. Under Federal Rule of Civil Procedure Rule 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). As it has before, the Court again shares the view in this district that a Rule 54(b) motion may be granted "as justice requires." *E.g.*, *Loumiet II*, 65 F. Supp. 3d at 24; *Coulibaly v. Tillerson*, Civil Action No. 14-189, 2017 WL 4466580, at *5 (D.D.C. Oct. 5, 2017) (Contreras, J.); *United States v. Dynamic Visions, Inc.*, Civil Action No. 11-695 (CKK), 2017 WL 1476102, at *2 (D.D.C. Apr. 24, 2017) (Kollar-Kotelly, J.); *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (Lamberth, J.)). While this is a broad standard, Individual Defendants carry the burden of proving "that some harm, legal or at least tangible, would flow from a denial of reconsideration," and accordingly persuading the Court that in order to vindicate justice it must reconsider its decision. *Dynamic Visions, Inc.*, Civil Action No. 11-695 (CKK), 2017 WL 1476102, at *2 (quoting *Cobell*, 355 F. Supp. 2d at 540) (internal quotation marks omitted). Among the ways that a movant may attempt to do so is by proposing that "a controlling or significant change in the law or facts has occurred

4

since the submission of the issue to the Court," *id.* (citing *Singh*, 383 F. Supp. 2d at 101), as Individual Defendants have done here. Ind. Defs.' Mem. at 1-2, 6-7. But "motions for reconsideration . . . cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Loumiet II*, 65 F. Supp. 3d at 24 (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011)) (internal quotation marks omitted).

## III. DISCUSSION

Only if *Abbasi* made a "controlling or significant change" to an aspect of the *Bivens* inquiry shall the Court need to reevaluate its decision to deny in pertinent part Individual Defendants' [62] motion to dismiss.[4] The Court shall first address Individual Defendants' arguments that *Abbasi* renders this a "new context" for a *Bivens* claim and that *Abbasi* further discourages courts from finding a new context. *See* Ind. Defs.' Mem. at 1-2. Next the Court shall evaluate whether *Abbasi* adjusted the two *Wilkie v. Robbins* inquiries into "any special factors counselling hesitation," and—although Individual Defendants do not discuss it quite this way—any "alternative, existing process" that should displace *Bivens*. *See Wilkie v. Robbins*, 551 U.S 537, 550 (2007); Ind. Defs.' Mem. at 2 (arguing that "*Abbasi* demonstrates that special factors preclude recognition of a *Bivens*

---

[4] The Court has no reason to doubt that a four-justice majority opinion issued when the Supreme Court had satisfied the six-justice quorum represents controlling precedent. *See* Reply Mem. at 1 n.1 (citing 28 U.S.C. § 1 (2015)); *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 461 n.1 (2013) (applying 28 U.S.C. § 1 to four-justice portion of opinion in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), which also met quorum of six justices).

remedy in this case," and naming among such alleged factors, "Loumiet's access to alternative statutory and judicial remedies").[5]

Consistent with the approach in *Wilkie*, the Court shall evaluate any alternative, existing process separately from the special factors analysis; the Court finds that *Abbasi*'s slightly different structure of discussing any alternative, existing process in the course of the special factors analysis makes no practical difference in this case. *See Wilkie*, 551 U.S. at 550-61 ("assessing the significance of any alternative remedies at step one" before proceeding to "*Bivens* step two [involving] weighing reasons for and against the creation of a new cause of action"); *Abbasi*, 137 S. Ct. at 1857-58, 1860-63 (discussing the "special factors" consideration before examining, "[i]n a related way," whether "there is an alternative remedial structure" (citing *Wilkie*, 551 U.S. at 550)).

While the Court endeavors to give complete consideration to the Individual Defendants' motion, and the parties' extensive briefing and supplemental notices, the Court addresses here only those aspects to which justice requires attention in the wake of *Abbasi*.[6]

## A. *Abbasi* Does Not Affect This Court's "New Context" Assumption

Individual Defendants make much of *Abbasi*'s articulation of what may be a new standard for finding a "new context" for a *Bivens* claim. Furthermore, they emphasize that *Abbasi* renders *this* case a new context. For example,

---

[5] Individual Defendants make no argument that *Abbasi* should affect this Court's prior determination regarding absolute prosecutorial immunity and qualified immunity. *See, e.g.*, *Loumiet V*, 255 F. Supp. 3d at 95-96.

[6] Individual Defendants point to various post-*Abbasi* cases in courts outside this circuit that allegedly "have already begun to decline invitations to expand the *Bivens* remedy to new contexts." Reply Mem. at 2; *see also* Notice Suppl. Auth.; Second Notice Suppl. Auth. The Court finds that these cases do not add meaningfully to the analysis in the parties' briefs or the Court's own analysis in this opinion.

After *Abbasi*, it is crystal clear that permitting a constitutional tort action in this case extends the *Bivens* remedy into a new context. *Abbasi* establishes that the familiar context of *Bivens* is now limited to the three cases—*Bivens*, *Davis*, and *Carlson*—in which <u>the Supreme Court itself</u> (not the Courts of Appeals) has approved of an implied damages remedy under the Constitution. *Abbasi*, 2017 WL 2621317, at *9 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Id.* [sic] at *15 ("The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases <u>decided by this Court</u>, then the context is new.") (emphasis added). Thus, after *Abbasi*, it is no longer appropriate to look to circuit precedent in determining whether a case presents a familiar or new *Bivens* context. *Id.*

Ind. Defs.' Mem. at 8. Even if the Supreme Court's language does establish a new standard for identifying a new *Bivens* context—a point that the D.C. Circuit has not yet addressed and which this Court need not decide—that point would not compel this Court to reevaluate its decision to recognize this *Bivens* claim. Because the Court decided the new context inquiry in the alternative, any adjustment that *Abbasi* may have made to the relevant standard is inapposite. *See Loumiet V*, 255 F. Supp. 3d at 85 ("Even assuming that this case presents a 'new context,' however, the special factor analysis does not preclude a *Bivens* remedy for Plaintiff's retaliatory prosecution claim."); Opp'n Mem. at 3 (citing *id.*).

Individual Defendants also insist that *Abbasi* raises the bar for finding that a *Bivens* remedy may be extended to a particular new context. Notably,

Abbasi emphasizes that expanding the *Bivens* remedy is "now a disfavored judicial activity," given Congress's primary role in deciding whether establishing a private right of action is the best means to enforce a constitutional guarantee. As a result, the determination that a plaintiff seeks to extend the *Bivens* remedy to a new context weighs heavily against permitting the claim to proceed, given the strong policy against expanding *Bivens* to any new context.

Ind. Defs.' Mem. at 2. Individual Defendants appear to make some kind of argument that *Abbasi* adds a further presumption against finding a *Bivens* remedy, a presumption that is suggested to exceed the Supreme Court's already clear trend against such findings, and that is somehow

7

independent of the "special factors" and "alternative, existing process" inquiries that the Supreme Court distilled in *Wilkie*. The Court is not persuaded that *Abbasi* should be read this way. As if in agreement, later in their brief Individual Defendants seem to back away from this argument because they never explain what this Court is supposed to do with such an added presumption aside from doing what it already did: assume *arguendo* a new context, and give serious attention to any special factors and any alternative, existing processes (or *vice versa*, in the *Wilkie* articulation) that should prevent extension of *Bivens* here.

Moreover, the Court finds unpersuasive Individual Defendants' argument to the effect that, after *Abbasi*, a district court may no longer rely on circuit court precedent recognizing a *Bivens* cause of action in a context that has not expressly been recognized (or expressly rejected) by the Supreme Court. *See* Ind. Defs.' Mem. at 10 ("*Abbasi* unequivocally declares that whether a case presents a new *Bivens* context is determined *only* by reference to the three decisions in which the Supreme Court has approved the remedy."). Rather, the Supreme Court observes simply that the "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. While this Court is of the view that *Abbasi* should not require relitigating the "new context" question for every *Bivens* action recognized by circuits but not (yet) by the Supreme Court, that issue need not be decided here due to the Court's assumption that this is, in fact, a new context.

Consequently, the Court shall proceed to consider whether any adjustments that *Abbasi* may have made to the subsequent two *Bivens*/*Wilkie* steps dictate a change in the Court's ruling on Individual Defendants' motion to dismiss.

**B.** *Abbasi* **Does Not Change the Outcome of This Court's "Special Factors" Inquiry**

Individual Defendants repeat arguments about special factors that they concede the Court already has considered.

> Three of the special factors that barred the plaintiffs' *Bivens* claims in *Abbasi* are the same special factors that the Individual Defendants argued in their motion to dismiss—specifically, (1) Loumiet's access to alternative statutory and judicial remedies; (2) the harmful effect introduction of a *Bivens* remedy will have on the performance of official duties; and (3) Congress has been establishing and extensively regulating national banks for two hundred years, but has never seen fit to establish a *Bivens* cause of action against federal bank regulators.

Ind. Defs.' Mem. at 2. As adverted above in the introduction to this Part III, the Court shall defer until the following subpart Individual Defendants' first argument, about alternative remedies—*Wilkie* clearly states that this deserves separate consideration, and *Abbasi* does not expressly state otherwise.

Turning to Individual Defendants' second argument, the Court is not convinced that *Abbasi* requires a change in the Court's analysis of any potential chilling effect in lawful enforcement activity. Unlike the facts in *Abbasi*, this is not a case in which "high officers who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." *Abbasi*, 137 S. Ct. at 1863. Rather, Plaintiff's prosecution was separate from, and subsequent to, the OCC's enforcement action against his bank client; the prosecution against Plaintiff does not seem to have been "urgent," driven by "crisis," or, for that matter, necessary to the underlying enforcement action against Plaintiff's client. *See, e.g.*, *Loumiet I*, 968 F. Supp. 2d at 145-47; Opp'n Mem. at 22 ("The Individual Defendants brought their retaliatory prosecution more than *four-and-a-half-years* after [Plaintiff's client] Hamilton Bank failed."). Indeed, the Court already made a fact-specific determination that a *Bivens* claim will not deter lawful enforcement activity. *See Loumiet V*, 255 F. Supp. 3d at 91 (considering the facts and finding that, "given the uniqueness of

the allegations in this case, in this Court's view, allowing Plaintiff to proceed with his First Amendment *Bivens* claim is unlikely to have a chilling effect on the proper regulatory activities of banking regulators like the Individual Defendants"). No further consideration of an alleged chilling effect is necessary.

As for their third argument, Individual Defendants resurrect assertions about Congress's extensive regulation of the banking system, but, despite copious citations to *Abbasi*, fail to identify why *Abbasi* dictates a different outcome. *See* Ind. Defs.' Mem. at 2, 13-14, 19. This Court already thoroughly considered whether a *Bivens* remedy should be implied in light of the statutory scheme established by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") and backstopped by review under the Administrative Procedure Act ("APA"). *See Loumiet V*, 255 F. Supp. 3d at 83-90. Individual Defendants contend that this Court "required [them] to affirmatively prove that Congress expressly considered and rejected a damages remedy against federal banking regulators." Ind. Defs.' Mem. at 2, 13. That is a distortion of the Court's rationale for concluding that the FIRREA and APA do not supplant a *Bivens* remedy here. Rather, Individual Defendants could not show "how Plaintiff, under the particular factual circumstances of this case, could have sought relief through the amalgam of FIRREA and the APA," *or in the alternative*, that "the absence of a remedy for Plaintiff under the circumstances of this case was the intentional product of how Congress constructed the administrative review procedures under FIRREA." *Loumiet V*, 255 F. Supp. 3d at 89. At least one of these indicators is necessary for the Court logically to conclude that Congress intended to forego an implied damages remedy.

In *Abbasi*, the Supreme Court noted that "the silence of Congress is relevant; and here that silence is telling," because none of the extensive congressional involvement in countering terrorism since September 11—including in addressing confinement conditions—had resulted in

a damages remedy. *Abbasi*, 137 S. Ct. at 1862-63. There is no parallel silence here, for the remedy at issue concerns a subject—retaliatory prosecution—which Individual Defendants have not shown that Congress even contemplated, much less expressly rejected, from the relevant statutory scheme. "[Individual] Defendants have completely failed to furnish any legislative or other evidence that Congress intentionally excluded claims similar to Plaintiff's from FIRREA. Nor does the statute itself indicate an intent to exclude such claims." *Loumiet V*, 255 F. Supp. 3d at 89. And as for "whether the absence of APA review for Plaintiff's claim is the product of intentional Congressional policymaking in constructing FIRREA," "no evidence has been proffered, nor does such intent seem likely." *Id.*

At the end of their opening brief, Individual Defendants also make the argument that "the existence of procedural safeguards against the retaliatory initiation of an OCC enforcement action is a special factor that weighs against implying a *Bivens* remedy in this case." Ind. Defs.' Mem. at 21-22. However, they do not explain why *Abbasi* dictates that the Court consider this argument, aside from observing that "*Abbasi* reaffirms that the purpose of *Bivens* is to deter misconduct by individual officers, not to challenge agency action or policy." *Id.* at 21 (citation omitted). The Court is aware of this purpose of a *Bivens* action and dealt with it before when addressing the chilling effect argument. Even if it were proper to raise this special factor now, the Court does not find Individual Defendants' treatment persuasive.

Elsewhere in *Abbasi*, the Supreme Court elaborates on the scope of "special factors," a point which Individual Defendants cite only summarily in their rush to urge deference to Congress. *See* Ind. Defs.' Mem. at 19. "[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," which "include[s] the burdens on Government employees who are sued personally, as well as the projected costs and consequences

to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Abbasi*, 137 S. Ct. at 1858. Such an "assessment" could potentially sweep quite broadly. But Individual Defendants have not raised any specific "burdens" or "costs and consequences" that the Court is not satisfied are otherwise addressed by the Court's dispatch of the "chilling effect" argument on the basis of the unique facts at issue. *See Loumiet V*, 255 F. Supp. 3d at 90-91. Moreover, on these facts, the Court is satisfied that this is not a case targeting public policy change—as *Abbasi* echoes precedent in prohibiting—but rather is properly focused on specific activities of individual officers. *See Abbasi*, 137 S. Ct. at 1860 (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *FDIC v. Meyer*, 510 U.S. 471, 485 (1994)).

In summary, Individual Defendants do not make any arguments about *Abbasi* that cause this Court to reevaluate its conclusion that the special factors inquiry does not preclude a *Bivens* remedy.

## C. Individual Defendants Have Not Proven That the Equal Access to Justice Act Is an "Alternative Remedial Structure" Sufficient to Preclude a *Bivens* Claim

Next, the Court turns to the Individual Defendants' argument about "[a]lternative avenues for protecting the interest at stake," insofar as they assert that "[t]he statutory and judicial remedies available to Loumiet under the FIRREA, [Equal Access to Justice Act ("EAJA")], and APA provided ample opportunity for him to protect his interests and thus render a *Bivens* action unnecessary." Ind. Defs.' Mem. at 18-19. At the outset, the Court observes a technical reason that this argument is flawed, as Plaintiff notes. Opp'n Mem. at 8-9.

Individual Defendants arguably forewent their opportunity to pursue this argument in their prior Motion to Dismiss. *See* Opp'n Mem. at 8; Individual Defs.' Mot. to Dismiss and Statement of P&A in Supp., ECF No. 62, at 12 ("[T]he defendants do not contend that the FIRREA afforded

Loumiet an 'alternative, existing process' to pursue his constitutional claims. In other words, the defendants are not invoking the first step of the *Wilkie* analysis." (citing *Wilkie*, 551 U.S. at 550)). And this Court already dealt with the issue. *Loumiet V*, 255 F. Supp. 3d at 84 ("[A] *Bivens* remedy will generally not be available if a comprehensive statutory scheme already exists for a plaintiff to seek redress of the alleged constitutional violation. Defendants concede that no such scheme exists here." (citing Reply Mem. of P&A in Supp. of the Defs.' Mots. to Dismiss, ECF No. 66, at 6)). The Court could have elaborated its citation of support:

> Individual Defendants do not contend that judicial review of agency action under the APA, standing alone, precludes a *Bivens* remedy. Rather, the defendants' position is that the comprehensive remedial scheme of the FIRREA, coupled with judicial review under the APA, is a special factor that counsels hesitation against authorizing a *Bivens* remedy in this case.

Reply Mem. of P&A in Support of the Defs.' Mots. to Dismiss, ECF No. 66, at 6. Together with Individual Defendants' aforementioned concession that FIRREA alone is not an "alternative, existing process," the concession here that APA is not either seals the deal. Defendants' last-gasp attempt to package FIRREA and APA together as a special factor does not suffice; the Court addresses above why the combination of these two statutory schemes is not a special factor causing the Court to hesitate from recognizing a *Bivens* remedy. *See supra* Part III.B. As such, the Court is not persuaded by Individual Defendants' argument that they did not waive this argument because *Abbasi* allegedly "characterized access to alternative forms of relief as a 'special factor.'" Reply Mem. at 6.

Having come this far, it may not do justice to decide a motion to reconsider based only on the argument (or lack thereof) in Individual Defendants' prior briefing. From a more substantive perspective, the Court observes one potential "alternative, existing process" that warrants further consideration, namely Plaintiff's recovery of attorney's fees under the EAJA. The parties only

skirted this argument when they briefed Individual Defendants' [62] Motion to Dismiss. At the time, they appeared to focus instead on Individual Defendants' argument that FIRREA and the APA qualified as alternatives. *See, e.g.*, Individual Defs.' Mot. to Dismiss and Statement of P&A in Supp., ECF No. 62, at 11 ("Not only did Loumiet have access to these remedies [i.e., through the FIRREA and the APA], but he successfully invoked them *and* recovered a substantial amount of attorney's fees as the prevailing party."); Carlos Loumiet's Opp'n to Individual Defs.' Mot. to Dismiss under Fed. R. Civ. P. 12(b)(6) and United States' Mot. to Dismiss under Fed. R. Civ. P. 12(b)(6) & (b)(1), ECF No. 64, at 18 ("[I]t's simply absurd to suggest that [future lawyers] will view FIRREA's procedures, its reference to the ADA [sic], or even the possibility of recovering attorneys' fees, as adequately protecting them, their careers, and their futures from the type of mercenary retaliatory conduct undertaken by the Individual Defendants in this case."). Accordingly, recovery under the EAJA was not a focus of this Court's decision in *Loumiet V* when it found no alternative remedies.

Fueled by *Abbasi*, the parties now devote significant portions of their briefing, especially in the reply and sur-reply, to the issue of whether attorney's fees under the EAJA amount to an alternative remedy sufficient to preclude a *Bivens* remedy. *See* Reply Mem. at 6-11 ("Having prevailed in the enforcement proceeding and pocketed $675,000 in fees and defense costs, how does Loumiet reasonably claim that 'it is damages or nothing' for him in this case?" (citing Opp'n Mem. at 20)); Sur-Reply Mem. at 4-5 (deeming Individual Defendants' EAJA argument a "red herring that hopes to distract the Court from the truly dispositive fact that there is a complete absence of congressional intent in any statutory scheme to which the Individual Defendants have pointed" and furthermore arguing "Loumiet did not 'pocket' anything"); *see also* Ind. Defs.' Mem. at 17 (noting in the course of their "new context" argument that "the recovery of attorney's fees

under EAJA is a remedy that Congress has expressly provided for a civil enforcement proceeding that was brought without substantial justification" (citing 5 U.S.C. § 504(a)(1) (2016)).

Even so, the Court would not feel compelled to overlook this omission and reconsider its decision, absent a plausible argument for some movement in the controlling case law. But *Abbasi* could be interpreted as lowering the threshold for finding an alternative remedy sufficient to preclude a *Bivens* claim. *See, e.g.*, *Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Individual Defendants parrot this line from *Abbasi*—italicizing "*alone*" without noting that the emphasis is their own, Ind. Defs.' Mem. at 18—but fail to provide any corresponding explanation of the practical difference that this purported standard makes, if any, in the pre-*Abbasi* approach to alternative processes for relief. On such a minimal showing, the Court does not feel obligated to trace the Individual Defendants' steps for them, but in the interest of a complete analysis, the Court shall consider whether *Abbasi* in fact adjusted the threshold for recognizing an alternative remedy, and even if not, whether this Court should consider the EAJA to be an alternative in the first instance.

As the Supreme Court has limited the availability of *Bivens* remedies in recent decades, the standard for recognizing an alternative to a *Bivens* claim has arguably evolved as well. Early Supreme Court cases set a high bar for a showing of congressional intent that an alternative would preclude *Bivens*. In *Bivens* itself, the Supreme Court rejected defendants' argument that it should defer to seemingly inadequate state tort law remedies and found "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." *Bivens*, 403 U.S. at 394-97. The *Bivens* Court thereby

demonstrated a concern with both the adequacy of a purported alternative, and any clear indication that Congress intended it, or any other remedy, to supplant damages against individual officers, finding neither to be so in that case. *See also Davis v. Passman*, 442 U.S. 228, 248 (1979) ("[W]ere Congress to create equally effective alternative remedies, the need for damages relief might be obviated." (citing *Bivens*, 403 U.S. at 397)).

Shortly thereafter in *Carlson v. Green*, the Supreme Court again decided that a candidate alternative was not sufficient to preclude a *Bivens* remedy. There, a deceased prisoner's estate sought to recover against individual prison officials for alleged violation of his Eighth Amendment and other constitutional rights. 446 U.S. 14, 16 (1980). The Court reasoned that a *Bivens* claim could only be defeated by a purported alternative "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* at 18-19 (citing *Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. at 245-47). The Court rejected the argument that the FTCA should count as such an alternative, because no evidence could be mustered "to show that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations"; on the contrary, legislative history to a pertinent FTCA amendment demonstrated beyond doubt that Congress intended the two causes of action to coexist. *Id.* at 19-20. Here again, the Supreme Court rejected a purported alternative for lack of congressional intent, this time without assessing whether that alternative would otherwise have been adequate to remedy the harm. Subsequent cases confirmed that the (in)adequacy of a purported alternative is not dispositive. *See Malesko*, 534 U.S. at 68-69 (discussing, *e.g.*, *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Bush v. Lucas*, 462 U.S. 367 (1983)).

More recently, consistent with the general curbing of the *Bivens* remedy, the Supreme Court has at least once declined to infer a *Bivens* remedy apparently without relying on either the adequacy of any alternatives *or* Congress's intent with respect to those alternatives. In *Correctional Services Corp. v. Malesko*, a former federal inmate sought to recover damages for injuries suffered while he was confined to a privately owned halfway house. 534 U.S. at 63-64. The Court refused to recognize a *Bivens* remedy because a suit against the operator of the halfway house fell outside the objective of the *Bivens* remedy, namely to deter constitutional torts by individual officers, not their employers, federal or otherwise. *Id.* at 70-71. This grounds was sufficient to preclude *Bivens*, *see id.* at 71 ("There is no reason for us to consider extending *Bivens* beyond this core premise here."), but the Court also observed the availability of alternative remedies. "It was conceded at oral argument that alternative remedies are at least as great, and in many respects greater, than anything that could be had under *Bivens*." *Id.* at 72. Those remedies included tort law, administrative processes, or a federal suit for injunction against future such harms. *Id.* at 72-74. While *Malesko* did not rest on the available alternatives, the Court still found it worthwhile to mention that there were some.

In *Wilkie*, however, we see that *Malesko* did not necessarily dispose of previous *Bivens* considerations. *Wilkie* demonstrated that Congressional intent behind a given alternative was again a focal point. The Supreme Court articulated perhaps its most definitive standard yet governing the availability of an alternative remedy. A court must ask "whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550 (citing *Bush*, 462 U.S. at 378); *see also Minneci v. Pollard*, 565 U.S. 118, 122-23 (2012) (describing two-step inquiry from *Wilkie* as "standards [that] seek to

17

reflect and to reconcile the Court's reasoning set forth in earlier cases"). The *Wilkie* Court discussed a number of alternative methods of addressing plaintiff-respondent's problems, some of which he did not exhaust—*e.g.*, tort law remedies for damages from trespass, administrative remedies for challenging administrative claims, and most analogously to the EAJA in this case, timely appeal of the district court's denial of attorney's fees sought under the Hyde Amendment in a criminal case—without finding that any of these disqualified his efforts to obtain a *Bivens* remedy. *Wilkie*, 551 U.S. at 553-54. Rather, considering the "patchwork" of remedies, "an assemblage of state and federal, administrative and judicial benches applying regulations, statutes, and common law rules," the Supreme Court declined to infer that Congress meant to preclude a *Bivens* remedy. *Id.* at 554 (finding it necessary to proceed to special factors inquiry). Accordingly, *Wilkie* demonstrates that as of at least 2007 it remained important in the Supreme Court's *Bivens* jurisprudence to consider congressional intent with respect to purported alternatives. For this reason, even a plethora of alternatives might not be sufficient to preclude a *Bivens* claim.

One might argue that the Supreme Court took a step in the restrictive direction, with respect to alternative remedies, in *Minneci*, but that argument would be flawed too. There the Court observed that a federal prisoner could pursue state law tort remedies against private employees operating the prison, and accordingly, no *Bivens* action for an alleged Eighth Amendment violation should be permitted. 565 U.S. at 120, 127. In dictum the Court appeared to recognize a low bar for a finding of an alternative remedy sufficient to preclude *Bivens*. *See id.* at 127 (referring to *Malesko* as "noting that the Court has implied *Bivens* action only where any alternative remedy against individual officers was 'nonexistent' or where plaintiff 'lacked *any alternative remedy*' at all" (quoting *Malesko*, 534 U.S. at 70)). Like *Malesko*, however, *Minneci* contained an alternative that did not test this bottom limit, for the Court "believe[d] that in the circumstances present here

state tort law authorizes adequate alternative damages actions—actions that provide both significant deterrence and compensation." *Id.* at 120 (citing *Wilkie*, 551 U.S. at 550).

As noted above in this subpart, certain language in *Abbasi* could be read to slightly lower the threshold for a finding of an alternative remedy sufficient to preclude a *Bivens* claim. *See supra* (discussing whether "an alternative remedial structure" "alone" suffices). But the facts of *Abbasi* did not test the lower limit. *Abbasi* observed that a habeas petition, an injunction, "or some other form of equitable relief" may have been available to plaintiff-respondents and concluded that "when alternative methods of relief are available, a *Bivens* remedy *usually* is not." *Abbasi*, 137 S. Ct. at 1863, 1865 (emphasis added). *Abbasi* carefully avoided a pronouncement that alternative remedies *always* will suffice; it also did not say—because that case was not before it—that a *single* candidate alternative about which there is some debate over the sufficiency (as the Court shall address below) will be enough to keep a court from inferring a *Bivens* remedy. In short, *Abbasi* does not conclusively address the only question remaining: whether the single candidate alternative remaining in this case, the EAJA, qualifies as an alternative remedy sufficient to keep the Court from inferring a *Bivens* remedy.

The D.C. Circuit has yet to interpret *Abbasi*, and D.C. Circuit cases since *Wilkie* have not had the opportunity to clarify that case's standard for the minimum alternative remedy sufficient to preclude *Bivens*. *See, e.g.*, *Meshal v. Higgenbotham*, 804 F.3d 417, 425 (D.C. Cir. 2015) (applying *Wilkie* steps and finding parties in agreement that plaintiff-appellant had no other remedies, before moving on to special factors inquiry). Perhaps the closest the D.C. Circuit came to directly addressing this issue was in *Wilson v. Libby*, which denied a *Bivens* claim after recognizing that plaintiff-appellants allegedly harmed by the disclosure of covert employment with the Central Intelligence Agency could seek *some*, albeit incomplete, relief under the Privacy Act.

535 F.3d 697, 709 (D.C. Cir. 2008). But it is not clear that this would have been enough for the court to preclude *Bivens* if not for the consideration of a congressional omission as a special factor. The D.C. Circuit found that the Privacy Act is a comprehensive remedial scheme from which Congress had "intentionally" excluded claims against certain of the Executive Branch officials being sued in that case, and that accordingly the court would "not supplement the scheme with *Bivens* remedies." *Id.* at 706-10; *see also Davis v. Billington*, 681 F.3d 377, 383-84 (D.C. Cir. 2012) (finding a "comprehensive remedial scheme" in which "Congress's choice to omit damages remedies for claimants in [plaintiff-appellee's] posture was a deliberate one").

In this case, by contrast, Individual Defendants have not demonstrated that the EAJA— alone or in combination with the FIRREA and APA—is such a "comprehensive remedial scheme" by which Congress intends to supplant a damages remedy against the OCC officials. *See Loumiet V*, 255 F. Supp. 3d at 89-90 (rejecting this argument with respect to the FIRREA and APA). Rather, the most they offer is a thin comparison to a statutory scheme that is not at issue in this case. *See* Reply Mem. at 11 ("The same congressional judgment [behind foregoing a *Bivens* remedy for improper criminal prosecutions in favor of the Hyde Amendment] is reflected in the EAJA, which operates similarly in the civil context to deter 'substantially unjustified' administrative enforcement actions.").

As the foregoing discussion illustrates, the parties have not identified, nor has this Court found, controlling case law that provides a clear, consistent standard for evaluating whether Plaintiff's recovery under the EAJA should preclude a *Bivens* remedy. *See, e.g.*, *Minneci*, 565 U.S. at 125 (noting that "the Court, in reaching its [*Bivens*] decisions, has not always similarly emphasized the same aspects of the cases," and proceeding with the *Wilkie* analysis). However, the case law does illustrate that at least three considerations have been significant to the disposition

of controlling *Bivens* cases: congressional intent (*see, e.g.*, Supreme Court decisions in *Bivens*, *Carlson*, and *Wilkie*, and D.C. Circuit decisions in *Wilson* and *Davis v. Billington*); deterrent effect (*see Malesko* and *Minneci*); and adequacy of the remedy (*see Bivens* and *Minneci*). And these considerations remain relevant in recent cases. *See, e.g.*, *Wilkie*, 551 U.S. at 554 (illustrating the continuing relevance of assessing whether "Congress expected the Judiciary to stay its *Bivens* hand"); *Minneci*, 565 U.S. at 120-21 (citing both "significant deterrence and compensation" from alternative remedies as reason for denying *Bivens* claim). Yet, none of these considerations suggests that the Court should decline a *Bivens* remedy here.

First, the Court is not persuaded by Individual Defendants' meager efforts to prove, by analogy alone, that Congress intended the EAJA to preclude a *Bivens* remedy. Individual Defendants point to congressional intent underlying the Hyde Amendment in 1997, which created a means by which prevailing criminal defendants could recover attorney's fees and other litigation costs under certain circumstances when "the position of the United States was vexatious, frivolous, or in bad faith." Reply Mem. at 10-11 (quoting Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A note (2016) (Award of Attorney's Fees and Litigation Expenses to Defense))) (internal quotation marks omitted); *see also id.* (citing Statement of Honorable Henry J. Hyde Before the House Rules Committee on an Amendment to H.R. 2267 to Allow for the Recovery of Attorneys Fees and Litigation Costs in a Criminal Prosecution, 1997 WL 545756 (Sept. 5, 1997) (showing amendment sponsor's satisfaction that this mechanism would "deter unjustifiable governmental conduct" even without "impos[ing] personal liability on prosecutors for negligence" or subjecting them to "the tort of malicious prosecution")). Even if Congressman Hyde's intentions were properly said to reflect those of the whole Congress, a point which Individual Defendants seem to assume without support, *see* Reply Mem. at 11, it is by no

21

means certain that Congress had the same intent in fashioning the EAJA in 1980. Moreover, the opportunity for the *Wilkie* plaintiff to pursue fees and costs under the Hyde Amendment following his acquittal in a prior criminal case was among the alternatives that collectively were found *not* to be sufficient to preclude *Bivens*. *Wilkie*, 551 U.S. at 545-46, 552-54. The facts of *Wilkie* are particularly salient because the prior criminal case concerned the *Wilkie* plaintiff's resistance to certain activity of an agency official against whom he later sought the *Bivens* remedy in his civil case. *See id.* at 545-46 (discussing charges of "knowingly and forcibly impeding and interfering with a federal employee"). Yet, Individual Defendants say nothing about why recovery under the EAJA alone—setting aside their FIRREA and APA arguments, which, as discussed above, the Court dispatched in its prior ruling, *see Loumiet V*, 255 F. Supp. 3d at 89-90—should be sufficient to preclude *Bivens* while the availability of the Hyde Amendment was not sufficient to do so in *Wilkie*. *See supra* Part III.B (discussing FIRREA and APA).

Second, the EAJA arguably lacks the deterrent effect on individual officers that a *Bivens* remedy would have. Recovery under the EAJA is awarded out of the pockets of the government, *not* the individual officers. 5 U.S.C. § 504(d) (2016) ("Fees and other expenses awarded under this subsection shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise.").[7] Moreover, *Abbasi* reinforces that deterrence is at the core of *Bivens*: "The purpose of *Bivens* is to deter the *officer*." *Abbasi*, 137 S. Ct. at 1860 (quoting *Meyer*, 510 U.S. at 485) (internal quotation marks omitted). Without damages recovery against the OCC officers themselves, provided that Plaintiff can prove his claims, it is

---

[7] Conceivably, the provision for payment through funds from appropriation "or otherwise" could include indemnification by the individual officers held responsible, but Individual Defendants do not pursue that argument.

not clear that officers similarly positioned in the future would find the personal risks of pursuing a retaliatory prosecution to caution adequately against it.

Lastly, Individual Defendants make much of the quantity of Plaintiff's recovery under the EAJA, effectively arguing that it adequately compensates his loss. *E.g.*, Reply Mem. at 10. While the Supreme Court has sometimes considered the adequacy of a given remedy, such as in *Bivens* and *Minneci*, Individual Defendants have not pointed to, nor is the Court aware of, any case considering whether attorney's fees under the EAJA are adequate. The closest case is *Wilkie*, where the availability of attorney's fees in the parallel criminal context was found to be part of an *inadequate* "patchwork" of remedies. *Wilkie*, 551 U.S. at 554. In evaluating a motion to dismiss, and without the benefit of discovery, the Court is not in a position to assess whether the award of $675,000 in attorney's fees under the EAJA adequately compensates Plaintiff's damages, alleged to be $4 million.[8]  *See* Compl. ¶ 148; *Coal. for Underground Expansion*, 333 F.3d at 198 (noting that only "the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" may be considered on motion to dismiss for lack of subject-matter jurisdiction); *cf. Koubriti v. Convertino*, No. 07-13678, 2008 WL 5111862, at *7 (E.D. Mich. Dec. 3, 2008), *aff'd in part, rev'd in part on other grounds*, 593 F.3d 459 (6th Cir. 2010) (finding in criminal case that opportunity to recover attorney's fees under Hyde Amendment is not "alternative process mandating restraint" from recognizing a *Bivens* remedy "[b]ecause recovery of attorney fees is such a minimal part of the damages resulting from the criminal prosecution that occurred here"). It is also true that the Supreme Court has on occasion found that the *inadequacy* of a given alternative to address fully a

---

[8] In their briefing, Individual Defendants often cite the $675,000 award; at one point Plaintiff quotes Individual Defendants' use of this figure without objecting to it. *See, e.g.*, Sur-Reply Mem. at 4 (quoting Reply Mem. at 8).

plaintiff's injury is not, of itself, a reason to permit a *Bivens* remedy. *See Malesko*, 534 U.S. at 68-69 (discussing, *e.g.*, *Schweiker*, 487 U.S. 412; *Bush*, 462 U.S. 367). But the Supreme Court has not gone so far as to say that an allegedly *inadequate* alternative that Congress does *not* clearly intend to supplant a *Bivens* remedy and that does *not* act as an adequate deterrent to the activity of individual officers is nevertheless a remedy sufficient to preclude *Bivens*.

***

Individual Defendants have failed to persuade the Court that *Abbasi* dictates reevaluating this Court's subject-matter jurisdiction over Plaintiff's *Bivens* claim against Individual Defendants. Discovery will make clear whether Plaintiff can support this claim. Until then, that claim must be allowed to go forward.

## IV. CONCLUSION

For all of the foregoing reasons, the Court **DENIES** the Individual Defendants' [74] Motion to Reconsider. Plaintiff's First Amendment *Bivens* claim for retaliatory prosecution shall proceed against Defendants Rardin, Schneck, and Sexton. Plaintiff's FTCA claims for intentional infliction of emotional distress (Count I), invasion of privacy (Count II), negligent supervision (Count V), and civil conspiracy (Count VIII) shall proceed against the United States.

An appropriate Order accompanies this Memorandum Opinion.

Dated: November 28, 2017

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge