## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JEROME CORSI,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 18-02885 (ESH)** |
| **ROBERT MUELLER,** *et al.,* | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff Jerome Corsi brings this action against the Department of Justice; the Federal Bureau of Investigation; the National Security Agency; the Central Intelligence Agency (collectively, "the government"); and Robert Mueller, in both his individual capacity and his official capacity as Special Counsel. Before the Court are defendants' three motions to dismiss and plaintiff's motion for leave to file a second amended complaint in order to add a First Amendment retaliation count against Mueller in his personal capacity. For the reasons stated herein, the motions to dismiss will be granted, and the motion to file a second amended complaint will be denied.

## BACKGROUND

### I.   FACTS

According to the amended complaint, Corsi is an "investigative conservative journalist and author," "a strong supporter of President Trump," and has researched Hillary Clinton's use of a private email server to conduct government business while Secretary of State. (Am. Compl. ¶¶ 15–16, 27, ECF No. 15.) The amended complaint alleges that Corsi's research and political affiliations prompted the government and Mueller, then-Special Counsel, to attempt "to coerce,

extort, threaten and/or blackmail Plaintiff Corsi into testifying falsely" before the grand jury convened to investigate Russian interference in the 2016 U.S. Presidential election.  (*Id.* ¶¶ 20–22.)  Specifically, Corsi claims that "Defendant Mueller and his prosecutorial staff" sought to force Corsi to testify before the grand jury that Corsi "acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers."  (*Id.* ¶ 23.)  Corsi allegedly told Mueller that the desired testimony would be false.  (*Id.* ¶ 22.)  Corsi claims that, despite this, "Defendant Mueller . . . threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life" if he did not provide the testimony Mueller wanted.  (*Id.* ¶ 22.)

Corsi further alleges that "Mueller and his staff have leaked grand jury information to the press concerning Plaintiff Corsi."  (*Id.* ¶ 25.)  Corsi cites two news articles that, he alleges, "contain[] confidential information regarding the grand jury proceedings about Plaintiff Corsi that could only possibly have come from Defendant Mueller."  (*Id.* ¶ 26; *see also id.* ¶¶ 26 n.3, 28 n.4.)  Corsi also claims that the government and Mueller "have engaged in ongoing illegal, unconstitutional surveillance on Plaintiff Corsi . . . at the direction of Defendant Mueller."  (*Id.* ¶ 30.)  To support this, he alleges that (1) the government "[n]ecessarily" discovered the identity of his stepson by "intercepting [his] text and other messages;" (2) by using a software that "prevent[s] the electronic surveillance of telephone conversations," he "has evidence of repeated attempts by government authorities to intercept electronically [his] telephone conversations;" and (3) he "routinely speaks with persons located overseas in regions that are surveilled under PRISM."[1]  (*Id.* ¶¶ 31, 33.)  Finally, he claims that the government and Mueller interfered with

---

[1] PRISM is a program established by Section 702 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a, et. seq. ("FISA"), that allows the government to "use[] selectors—like e-mail addresses—to collect online communications of non-U.S. persons located abroad."  *Montgomery*

his business relationships with his book publisher (Post Hill Press) and his book seller (Amazon),
by threatening them with subpoenas or other legal action, and with Dr. David Jones, Alex Jones,
and InfoWars, by falsely claiming that they were "paying him hush money to keep him quiet
about their actions." (*Id.* ¶¶ 60–63.)

Despite the alleged pressure put on him by defendants, Corsi states that he testified
truthfully before the grand jury.  (*See id.* ¶ 29; *see also* Pl.'s Opp'n to Mueller's Mot. at 2, ECF
No. 40 ("Plaintiff Corsi chose to exercise his First Amendment (and moral) right to give a
truthful account of the events of the Russian collusion investigation.").)  And although he alleges
that Mueller threatened to indict him, he has never been indicted.  (Hr'g Tr. at 35:4–35:5, Oct. 2,
2019, ECF No. 58 ("Tr.").)  Moreover, Mueller's investigation concluded on March 22, 2019,
the grand jury has been dismissed, and Mueller has resigned as Special Counsel.  (*See* Pl.'s
Opp'n to Mueller's Mot. at 4; Mueller's Mot. to Dismiss at 2, ECF No. 27 ("Mueller's Mot.").)

## II.   PROCEDURAL HISTORY

Corsi initiated this action on December 9, 2018, against the government and Mueller.  On
January 21, 2019, he filed an amended complaint, three defendants—Jeff Bezos, the *Washington
Post*, and a *Washington Post* reporter.  Count One alleges that Mueller and the government
violated the Fourth Amendment and Section 702 of the Foreign Intelligence Surveillance Act, 50
U.S.C. § 1881a, et. seq. ("FISA"), as amended by the USA FREEDOM Act, by conducting
illegal electronic surveillance of Corsi.  (Am. Compl. ¶¶ 30, 42–48.)  He alleges that Mueller is
personally liable for these violations under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971),

---

*v. Comey*, 300 F. Supp. 3d 158, 167 n. 2 (D.D.C. 2018) (citation omitted).  But Section 702
explicitly prohibits the government from targeting any person located within the United States or
targeting U.S. citizens abroad.  *Id.*; *see also Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39,
44–45 (D.D.C. 2017) (describing the PRISM program).

and he seeks "compensatory and actual damages, punitive damages, equitable relief, reasonable attorneys' fees, pre-judgment interest, [and] post-interest and costs." (*Id.* ¶¶ 47–48.) Count Two, brought only against Mueller, alleges a violation of Federal Rule of Criminal Procedure 6(e)(2). (*Id.* ¶¶ 49–53.) He specifically requests "preliminary injunctive relief as well as permanent injunctive relief." (*Id.* ¶ 53.) Count Three charges Mueller and the government with abuse of process for their alleged attempts to coerce Corsi into falsely testifying. (*Id.* ¶¶ 54–58.) Count Four alleges that all defendants tortuously interfered with Corsi's business relationships with his publisher, book distributor, David and Alex Jones, and InfoWars, for which he seeks damages. (*Id.* ¶¶ 59–65.) Finally, Count Five asserts a defamation claim against Bezos, the *Washington Post*, and the *Washington Post* reporter, which alleges that the latter two defendants, at the direction of Bezos, made defamatory statements about Corsi "to various news and media outlets." (*Id.* ¶¶ 66–72.) These statements, Corsi alleges, concerned the nature of payments he was receiving from Dr. David Jones, Alex Jones, and InfoWars. (*Id.* ¶ 67.) Corsi claims that, as a result, he lost the $15,000 per month he was receiving from InfoWars and the Jones. (*Id.* ¶ 69.)

In his prayer for relief, Corsi seeks "equitable, declaratory, and injunctive relief;" and general and punitive damages in excess of $1,600,000,000. (Notice of Errata, Ex. 1, ECF No. 16-1 (correcting amended complaint).) Since filing his amended complaint, Corsi has voluntarily dismissed Bezos, the *Washington Post*, and the *Washington Post* reporter. (Notice of Voluntary Dismissal, ECF No. 56.) Thus, Counts One through Four are the only remaining counts, and only the government and Mueller are named as defendants.

The government and Mueller have moved to dismiss Corsi's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). (*See generally*

Gov't's Mot. to Dismiss, ECF No. 22 ("Gov't's 1st Mot."); Gov't's Mot. to Dismiss Counts III & IV, ECF No. 28 ("Gov't's 2d Mot."); Mueller's Mot.)  Mueller's motion includes a certification from the Attorney General's designee that certifies that Mueller was acting within the scope of his office or employment at the time Corsi's claims arose.  (Mueller's Mot., Ex. A.) On May 30, 2019, Corsi moved for leave to amend his complaint a second time, seeking to add a First Amendment retaliation claim against Mueller only.  (*See generally* Pl.'s Mot. for Leave to File 2d Am. Compl., ECF No. 41 ("Pl.'s Mot.").)  Aside from the additional count, the proposed complaint is identical to the first amended complaint.

On October 2, 2019, the Court held a hearing, and it is now ready to rule on defendants' three motions to dismiss and plaintiff's motion for leave to file a second amended complaint.

## ANALYSIS

### I.   DEFENDANTS' MOTIONS TO DISMISS

#### A.  Legal Standards

##### 1.  Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a claim when it "lack[s] . . . subject-matter jurisdiction."  The plaintiff bears the burden of showing that jurisdiction exists.  *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  Although the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, the Court need not accept factual inferences that are unsupported by the facts alleged in the complaint, nor is the Court required to accept the plaintiff's legal conclusions.  *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (citing *United States v. Gaubert*, 499 U.S. 215, 327 (1991));

*Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 47 (D.D.C. 2003) (citing *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)).  In determining whether the plaintiff has met his burden, the Court may consider materials outside of the pleadings. *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1253 (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

## 2.  Federal Rule of Civil Procedure 12(b)(5)

Under Rule 12(b)(5), which governs service of process, the plaintiff bears the burden of showing that he has properly effected service.  *See Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987).  "[H]e must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.* (citations and internal quotation marks omitted).  Unless proper service has been effected, the Court lacks personal jurisdiction over a defendant.  *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002).

## 3.  Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).  Moreover, while the Court takes

a plaintiff's factual allegations as true, it is not required to accept his legal conclusions as such.

*Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  In considering a motion to dismiss under this Rule,

the Court may consider the allegations made within the four corners of the plaintiff's complaint,

"any documents either attached to or incorporated in the complaint[,] and matters of which [it]

may take judicial notice."  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624

(D.C. Cir. 1997).

### B.  The Service of Process on Mueller was Insufficient

In his motion to dismiss, Mueller argues that Corsi failed to serve him in accordance with

Federal Rule of Civil Procedure 4, and, therefore, all claims against him must be dismissed.  (*See*

Mueller's Mot. at 9–10.)  Because Corsi has sued Mueller in his individual capacity, Corsi was

required to serve Mueller in accordance with Rule 4(e).[2]  *See* Fed. R. Civ. P. 4(i)(3) ("To serve a

United States officer or employee sued in an individual capacity . . . , a party must serve the

United States and also serve the officer or employee under Rule 4(e), (f), or (g).").  Thus, service

must have been accomplished by either: (1) "delivering" the requisite documents "to the

individual personally," (2) leaving . . . cop[ies] . . . at the individual's dwelling or usual place of

abode with someone of suitable age and discretion who resides there," or (3) "delivering . . .

cop[ies] . . . to an agent authorized by appointment or by law to receive service of process."  Fed.

R. Civ. P. 4(e); D.C. Super. Ct. Civ. R. 4(e)(2).  Moreover, under Rule 4(m), service must have

occurred within 90 days of the filing of the original complaint.  Corsi's original complaint was

filed on December 9, 2018, so he was required to serve Mueller on or before March 11, 2019.

---

[2] Rule 4(e) governs service of an individual in the United States who is not a minor or
incompetent person.

Corsi never even attempted to serve Mueller before March 11, nor did he request an extension of time for service.  Instead, Corsi claims that he subsequently attempted to serve Mueller twice, once on April 12, 2019, through employees at the Office of Special Counsel,[3] and again on April 17, 2019, at the Department of Justice.  (Pl.'s Opp'n to Mueller's Mot. at 3–4.)  Without offering any proof of service, Corsi asserts that "service was . . . effected on April 17, 2019[,] through the Department of Justice."  (*Id.* at 4.)

Corsi has failed to meet his burden of establishing that service was effected in accordance with either the timeliness or manner requirements of Rule 4.  With regard to the former, Corsi made no attempt to serve Mueller within 90 days (by March 11, 2019).  Instead, his first attempt, which was unsuccessful, came a month later, and his second attempt occurred 38 days after the time for service had expired.  (*See id.* at 3–4.)  While Rule 4(m) requires the Court to extend the time for service if the plaintiff shows good cause for his failure to serve, "[a] plaintiff must employ a reasonable amount of diligence in determining . . . how to effect service before good cause . . . may be found."  *Anderson v. Gates*, 20 F. Supp. 3d 114, 121 (D.D.C. 2013) (citation and internal quotation marks omitted).  Corsi's failure to request an extension of the time for service has been considered by some courts to be indicative of a lack of good cause.  *See, e.g.*, *Etheredge-Brown v. Am. Media, Inc.*, No. 13-cv-1982, 2015 WL 4877298, at *2 (S.D.N.Y. Aug. 14, 2015) (collecting cases); *Falconer v. Gibsons Rest. Grp.*, No. 10 C 1013, 2011 WL 833613, at *3 (N.D. Ill. Mar. 4, 2011) (declining to afford the plaintiff an extension where he did not request one); *Montcastle v. Am. Health Sys., Inc.*, 702 F. Supp. 1369, 1377 n.4 (E.D. Tenn. 1988) (noting that "plaintiff's counsel never requested an extension of time in which to effect service").

---

[3] Mueller notes that Corsi's process server went to the U.S. Office of Special Counsel, which is an independent agency unrelated to Mueller's investigation.  (Reply in Supp. of Mueller's Mot. at 2 n.2, ECF No. 50; *see also* Aff. of Process Server, ECF No. 40-1.)

In a feeble attempt to show cause, Corsi claims, without any evidentiary support, that "[a]ny short delay in serving Defendant Mueller was caused by difficulties locating him due to his occupation and his being effectively in hiding." (Pl.'s Opp'n to Mueller's Mot. at 4.) However, the first attempt at service was not made until after the 90 days had expired. Given the undisputed facts, there is no basis for finding good cause.

Corsi has also failed to show that he served Mueller as required by Rule 4. Corsi's mere statement that Mueller was served "through the Department of Justice" is insufficient under Rule 4(e)(2), since co-workers and employees are not automatically authorized agents for purposes of service. *See Ilaw v. Dep't of Justice*, 309 F.R.D. 101, 105 n.3 (D.D.C. 2015) (service of process is invalid where co-workers or employees are not specifically authorized to accept service); *see also Yi Tai Shao v. Roberts*, No. 18-1233, 2019 WL 249855, at *8 (D.D.C. Jan. 17, 2019) (plaintiff failed to establish service of process when she served defendants' employees, even though plaintiff alleged that the employees claimed to be authorized to accept service). Thus, Corsi has failed to show that he accomplished proper service.

Corsi asks the Court to overlook this failure because "it is clear that Defendant Mueller and his attorneys have received notice of this lawsuit, as evidenced by the filing of this instant motion." (Pl.'s Opp'n to Mueller's Mot. at 4.) But "simply being on notice of a lawsuit cannot cure an otherwise defective service." *United States ex rel. Cody v. Computer Scis. Corp.*, 246 F.R.D. 22, 26 (D.D.C. 2007) (citations and internal quotation marks omitted); *see also Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) ("Service is . . . not only a means of notifying a defendant of the commencement of an action against him, but a ritual that marks the court's assertion of jurisdiction over the lawsuit." (citation and internal quotation marks omitted)).

Since Corsi has not served Mueller in accordance with Rule 4, his claims against Mueller in his individual capacity will be dismissed without prejudice.  But because Mueller's other arguments for dismissal are meritorious and provide a basis for dismissal with prejudice, the Court will consider those as well.  *See Simpkins v. District of Columbia*, 108 F.3d 366, 369–70 (D.C. Cir. 1997) (holding that the district court was allowed to proceed to evaluate the merits of the plaintiff's *Bivens* claims even though it held that service of process had not been accomplished); *Dominguez v. District of Columbia*, 536 F. Supp. 2d 18, 22 (D.D.C. 2008) ("If dismissing the claim without prejudice due to insufficient service would lead to the refiling of a meritless claim, however, our Circuit has held that it is proper to consider other means of dismissing the case.").

### C.  Corsi's Fourth Amendment Claims

The first count of Corsi's amended complaint alleges that both Mueller and the government conducted "illegal and unconstitutional surveillance" of Corsi in violation of the Fourth Amendment and Section 702 of FISA, 50 U.S.C. § 1881a.  (Am. Compl. ¶¶ 30–33, 42–48.)  Corsi claims that the government "[n]ecessarily" identified his stepson by "intercepting [Corsi's] text and other messages," since his stepson does not share a name with Corsi.  (Am. Compl. ¶ 31.)  Corsi also alleges that "[a]uthor Jim Garrow, who resides in Toronto, Canada, and has developed a 'DEAF' system to prevent the electronic surveillance of telephone conversations has applied DEAF to Plaintiff Corsi's cellphone and has evidence of repeated attempts by government authorities to intercept electronically Plaintiff Corsi's telephone conversations." (*Id.*)  To support his claim that defendants intercepted his communications with his contacts abroad in violation of FISA, he alleges that he "routinely speaks with persons located overseas in regions that are surveilled under PRISM."  (Am. Compl. ¶ 33.)  Corsi claims that the defendants

conducted this surveillance "to coerce, extort, threaten and/or blackmail him into submission to provide false sworn testimony to be used to attempt to indict and/or remove the current president of the United States." (*Id.* ¶ 45.)

The government argues that this Court lacks jurisdiction under Rule 12(b)(1) because Corsi lacks standing. (*See* Gov't's 1st Mot. at 10–14.) And Mueller argues, *inter alia*, that Corsi has failed to state a claim under *Bivens* and that *Bivens* should not be extended to his claim. (*See* Mueller's Mot. at 13–32; Reply in Supp. of Mueller's Mot. at 7–9.) All of these arguments are persuasive.

### 1.   Corsi Lacks Standing to Bring Count One

As a threshold matter, the Court considers whether Corsi has alleged sufficient facts to establish standing. The party invoking federal jurisdiction has the burden of establishing standing by showing that (1) he suffered an injury in fact, (2) the injury is "fairly traceable" to the defendant's conduct, and (3) it is likely redressable by a favorable judicial decision. *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). To satisfy the first element, the alleged injury must be "(1) concrete, (2) particularized, and (3) actual or imminent." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) (citation and internal quotation marks omitted). And, "[a]n actual or imminent injury is certainly impending and immediate— not remote, speculative, conjectural, or hypothetical." *Id.* (citation and internal quotation marks omitted).

Corsi fails to plead an actual or imminent injury. His claim regarding FISA is foreclosed by the Supreme Court's ruling in *Clapper*, where the plaintiffs sought an injunction to prevent the government from conducting surveillance under Section 702 of FISA. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). They alleged that "they communicate by telephone and e-

mail with people the Government 'believes or believed to be associated with terrorist organizations,' 'people located in geographic areas that are a special focus' of the Government's counterterrorism or diplomatic efforts, and activists who oppose governments that are supported by the United States Government." *Id.* at 406. Based on these allegations, they argued that they had standing "because there is an objectively reasonable likelihood that their communications will be acquired under [Section 702] at some point in the future." *Id.* at 401. But the Supreme Court disagreed, concluding that they failed to show an imminent injury because their claims "relie[d] on a highly attenuated chain of possibilities": that (1) their foreign contacts would be targeted, (2) the government would do so under [Section 702], (3) a court would authorize such surveillance, (4) the government would successfully obtain the contacts' communications, and (5) those communications would include communications with the plaintiffs. *See id.* at 410–14. Thus, the Court held that allegations of communications with foreign nationals who may be monitored under Section 702 do not suffice to establish an injury. *See id.* at 414.

In disregard of this ruling, plaintiff's counsel, Larry Klayman, has on multiple occasions attempted to bring claims of illegal surveillance identical to or even more deficient than the claims alleged by the plaintiffs in *Clapper*. In *Klayman v. Obama*, plaintiff's counsel, representing himself and other plaintiffs, alleged that the government had targeted the plaintiffs' communications using the PRISM program. 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013), *vacated and remanded on other grounds*, 800 F.3d 559 (D.C. Cir. 2015). The district court held that the plaintiffs lacked standing to bring this claim, noting that "plaintiffs here have not even alleged that they communicate with anyone outside the United States at all," making their claims "even less colorable than those of the plaintiffs in *Clapper*." *Id.*

12

Undeterred, plaintiff's counsel filed a separate complaint, again on behalf of himself and other plaintiffs and again alleging that the plaintiffs' communications were being illegally collected via the PRISM program. *See Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 55–56 (D.D.C. 2017). This time, the complaint alleged that plaintiff's counsel "frequents and routinely telephones and e-mails individuals and high-ranking government officials in Israel, a high-conflict area where the threat of terrorism is always present"; that he met and communicated "with persons in Israel, Spain, the United Kingdom, and several other European nations which have very large Muslim populations and where terrorist cells are located"; and that, while "participating in a radio interview about the NSA, . . . the show experienced a tech meltdown." *Id.* at 56 (internal quotation marks omitted). The complaint also alleged that other plaintiffs "make telephone calls and send and receive e-mails to and from foreign countries and . . . have received threatening e-mails and texts from overseas, in particular Afghanistan." *Id.* (internal quotation marks omitted). Despite plaintiff's counsel's efforts to overcome the lack of standing found in his prior litigation, the district court held that "plaintiffs' allegations remain plainly insufficient under the standard the Supreme Court articulated in *Clapper*." *Id.* The court found plaintiffs' allegations that they communicated with individuals in foreign countries to "fall far short even of the *Clapper* plaintiffs' allegations." *Id.* at 57. The court also held that "[plaintiff's counsel's] assertions that his foreign contacts have, in fact, been targeted by the Government under the PRISM program 'are necessarily conjectural,' because the identities of PRISM targets are classified." *Id.* (quoting *Clapper*, 568 U.S. at 412). The D.C. Circuit affirmed, ruling that:

> Appellants here allege no more than that they communicate with various individuals in countries Appellants imagine might attract government surveillance. They provide no more specific reason to suspect their contacts are targets of the PRISM program or that their own communications will be collected. They therefore have

> failed to allege the kind of actual or imminent injury required by
> *Clapper*.

*Klayman v. Obama*, 759 F. App'x 1, 4 (D.C. Cir. 2019) (per curiam).

Most recently, in *Montgomery v. Comey*, plaintiff's counsel again raised the same claim of illegal surveillance through the PRISM program on behalf of himself and another plaintiff. 300 F. Supp. 3d 158, 166–67 (D.D.C. 2018). Plaintiff's counsel alleged that he "made international phone calls and exchanged correspondence with individuals located in foreign nations within the past two years." *Montgomery v. Comey*, 752 F. App'x 3, 4 (D.C. Cir. 2019) (per curiam). The district court again relied on *Clapper* to dismiss the plaintiffs' PRISM surveillance claim. 300 F. Supp. 3d at 167–68. The D.C. Circuit affirmed, holding that plaintiff's counsel's single allegation "without elaboration" was a "threadbare claim . . . inadequate under *Clapper*." *Montgomery v. Comey*, 752 F. App'x at 4.

Despite the fact that his prior claims of illegal surveillance under PRISM have consistently been rejected, plaintiff's counsel persists with an even more deficient allegation here—that Corsi "routinely speaks with persons located overseas in regions that are surveilled under PRISM." (Am. Com. ¶ 33.) This type of claim has been rejected by the Supreme Court in *Clapper* and in the three cases that plaintiff's counsel has brought in this Court. Accordingly, there is no basis for the Court to find standing in this case.

Corsi's Fourth Amendment claim fares no better. His assertion that the government discovered the identity of his stepson by intercepting his electronic communications relies on nothing but speculation. (Am. Compl. ¶ 31.) As Corsi cannot show that the government actually intercepted his communications, as opposed to using other investigative methods that would not implicate his Fourth Amendment rights, he has no basis to support an inference of standing. *See, e.g.*, *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

Similarly, he claims to have evidence that the government has attempted to intercept his cellphone conversations.  Corsi fails, however, to allege an injury because there is no claim that the government *successfully* intercepted any of his conversations.  Instead, he only describes *attempts*.  Moreover, he concedes that the software used to detect these attempts "*prevent[s]* the electronic surveillance of telephone conversations" and has been "applied" to his phone.  (Am. Compl. ¶ 31 (emphasis added).)  Corsi again asks the Court to draw purely speculative inferences, unsupported by the allegations in his complaint, to conclude that the government has violated his Fourth Amendment rights.  He has, therefore, failed to show any injury that is actual or imminent.[4]  Accordingly, Count One of Corsi's amended complaint will be dismissed without prejudice for lack of standing.[5]

### 2.   Corsi Fails to State a *Bivens* Claim Against Mueller

In addition to a lack of standing, Corsi fails to state a claim against Mueller in his individual capacity, for he does not allege personal involvement on the part of Mueller.  It is well established that "*Bivens* claims cannot rest merely on respondeat superior."  *Simpkins*, 108 F.3d at 369 (citation omitted); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

---

[4] Corsi appears to argue that there is standing because there is a threat of future injury.  (*See* Am. Compl. ¶ 30 ("Defendants . . . have engaged in *ongoing* illegal, unconstitutional surveillance on Plaintiff Corsi . . . ." (emphasis added)); Pl.'s Opp'n to Mueller's Mot. at 2–3 ("[I]t is incumbent upon this Court to act . . . as a deterrent to future unconstitutional and illegal conduct.").)  But his claims of illegal surveillance are tied to Mueller's investigation, which, he concedes, has ended.  Thus, there is no evidence of a threat of future injury.

[5] To the extent that Corsi seeks injunctive relief against the government, he cannot show imminent harm.  *See infra* at Section I.D.; *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'" (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)).

*superior*.").  Instead, "a plaintiff must plead that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 (emphasis added); *see also Simpkins*, 108 F.3d at 369 ("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct.").  Instead of alleging any individualized conduct by Mueller, Corsi baldly asserts, without factual support, that any alleged violations took place "at the direction of Defendant Mueller."  (Am. Compl. ¶ 30; *see also id.* ¶ 32 ("This illegal and unconstitutional surveillance is being carried out . . . at the direction of Mueller . . . .").)  But "to show that . . . action was taken at the direction of another requires more than just the conclusion that this is what occurred."  *Acosta Orellana v. CropLife Inter.*, 711 F. Supp. 2d 81, 112 (D.D.C. 2010).

At the hearing, when asked what facts in the complaint supported the allegation that Mueller directed his subordinates to violate Corsi's constitutional rights, plaintiff's counsel cited only to "the mandate that [Mueller] got from the Department of Justice which puts him in charge."  (Tr. at 9:5–9:6.)  This, he claimed, shows that Mueller "is responsible for what goes on in the office," he "is the guy in charge," and "[t]he buck stops on his desk."[6]  (*Id.* at 7:5–7:6, 9:7–9:8.)  When asked for facts beyond the mandate, plaintiff's counsel replied, "I've been a lawyer for 42 years.  I've been in Washington for many years.  I know the way things work in Washington."  (*Id.* at 10:18–10:20.)  Neither the mandate nor plaintiff's counsel's personal experience will suffice to hold Mueller personally liable.  Thus, Count One does not properly state a *Bivens* claim against Mueller.

---

[6] At the hearing, plaintiff's counsel also advocated for the legally incorrect position that there is *respondeat superior* liability under *Bivens*.  (Tr. at 7:7–7:12.)

### 3.   Corsi's Claim Presents a New *Bivens* Context and Special Factors Counsel Against Recognizing a *Bivens* Claim in This Case

In *Bivens*, the Supreme Court allowed a victim of a warrantless search and seizure with no alternative remedies to sue a federal official personally for damages for an allegedly abusive search and arrest in his home.  *Bivens*, 403 U.S. at 389.  But since then the Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citation omitted), and no case has extended *Bivens* to warrantless wiretaps.  In fact, several courts have expressly declined to do so based on "alternative, existing process[es]."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see, e.g.*, *Attkisson v. Holder*, 925 F.3d 606, 621–22 (4th Cir. 2019) (declining to extend *Bivens* to alleged illegal electronic surveillance because "Congress has legislated extensively in the area of electronic surveillance and intrusions into electronic devices without authorizing damages for a Fourth Amendment violation in such circumstances"); *Brunoehler v. Tarwater*, 743 F. App'x 740, 742–43 (9th Cir. 2018) (declining to extend *Bivens* to an alleged illegal wiretap in part because the Wiretap Act provides an alternative remedial structure); *Kelley v. FBI*, 67 F. Supp. 3d 240, 270–72 (D.D.C. 2014) (declining to extend *Bivens* in part because the alleged unlawful search and seizure of the plaintiff's emails is redressable under the Electronic Communications Privacy Act); *see also Mitchell v. Forsyth*, 472 U.S. 511, 542 (1985) (Stevens, J., concurring) ("[I]t is highly doubtful whether the rationale of *Bivens* . . . even supports an implied cause of action for damages after Congress has enacted legislation comprehensively regulating the field of electronic surveillance but has specifically declined to impose a remedy for [a specific type of wiretap].").  These remedies include the Wiretap Act, which provides equitable and declaratory relief, money damages, and fees to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" unlawfully, 18 U.S.C. §§ 2511, 2520(a), (b); the Stored

Communications Act, which imposes civil penalties upon those who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . or . . . intentionally exceeds an authorization to access that facility . . . [,] and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system," 18 U.S.C. §§ 2701, 2707; and FISA, which provides a private right of action against the United States for money damages to persons aggrieved by unlawful use or disclosure of their communications, 18 U.S.C. § 2712.  *See also Attkisson*, 925 F.3d at 621–22.

Corsi offers nothing to rebut these cases; instead, he relies on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), to argue that a *Bivens* action exists to remedy the violation he alleges. (Pl.'s Opp'n to Mueller's Mot. at 9–11.)  But *Carpenter* is neither a *Bivens* case nor is it about illegal surveillance of cellular communications.  Instead, it addressed the need for a warrant to obtain a defendant's cell phone location data.  *See Carpenter*, 138 S. Ct. at 2211; *see also id.* at 2220 ("Our decision today is a narrow one.  We do not express a view on matters not before us . . . .").  Whether the Fourth Amendment imposes a warrant requirement for cell data tells us nothing about Mueller's personal liability under *Bivens* for alleged violations of FISA and the wiretap laws.

Despite the existence of these statutes, Corsi claims that no alternative remedy exists for the particular constitutional violation he alleges.  (Pl.'s Opp'n to Mueller's Mot. at 12–13.)  Even if that were true—which it is not—it is not dispositive.  Indeed, the relevant analysis "does not turn on whether the statute provides a remedy to the particular plaintiff for the particular claim he or she wishes to pursue."  *Wilson v. Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008); *see also id.* ("[A] comprehensive statutory scheme precludes a *Bivens* remedy even when the scheme provides the

plaintiff with no remedy whatsoever." (citation and internal quotation marks omitted)). "Instead, it is the 'comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention.'" *Jangjoo v. Sieg*, 319 F. Supp. 3d 207, 218 (D.D.C. 2018) (quoting *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988)). Where "Congress has put in place a comprehensive system to administer public rights, has not inadvertently omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies, we cannot create additional remedies." *Wilson*, 535 F.3d at 709–10 (citation and internal quotation marks omitted). Thus, in the area of electronic surveillance, Congress, not the Court, "should decide whether [the remedy sought by Corsi] should be provided." *Liff v. Office of Inspector Gen.*, 881 F.3d 912, 918 (D.C. Cir. 2018); *see also Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012) (listing cases denying a *Bivens* claim even where an alternative remedial scheme did not provide the plaintiff with any relief for the alleged constitutional violations).[7]

Accordingly, Corsi has failed to state a claim in Count One against Muller in his individual capacity, and the Court will dismiss that claim with prejudice.

---

[7] There is also a meritorious argument that Mueller is entitled to qualified immunity on Count One. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). To satisfy the latter prong, a plaintiff must identify "existing precedent [that] place[s] the statutory or constitutional question beyond debate." *Id.* at 741. This has not been done. *See Attkisson*, 925 F.3d at 623. And, even where "courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." *Abbasi*, 137 S. Ct. at 1868; *see also infra* at Section II.C.

### D.  Corsi Has No Cause of Action Under Federal Rule of Criminal Procedure 6(e)(2)

Count Two of Corsi's amended complaint, brought against only Mueller, alleges that

Mueller violated Federal Rule of Criminal Procedure 6(e)(2), which prohibits disclosure of

matters occurring before a grand jury.[8]  *See* Fed. R. Crim. P. 6(e)(2)(vi).  Corsi complains that

"Defendant Mueller and his staff have leaked grand jury information to the press concerning

Plaintiff Corsi" with the intent "to pressure Plaintiff Corsi into providing . . . false sworn

testimony" and "to send a message to other supporters of the president that they had best comply

with the unlawful demands of Defendant Mueller and his prosecutorial staff or be indicted or at

the least be irreparably smeared and destroyed in the public domain."  (Am. Compl. ¶¶ 25, 52.)

Corsi attempts to support his claim by reference to two news articles that, he alleges, "contain[]

confidential information regarding the grand jury proceedings about Plaintiff Corsi that could

only possibly have come from Defendant Mueller."[9]  (*Id.* ¶ 26; *see also id.* ¶¶ 26 n.3, 27 n.4.)

The first reports that Corsi was scheduled to appear before the grand jury for a second time and

states, "Corsi has emerged as a central figure of interest to Mueller as he builds his case, sources

confirm to ABC News."  Ali Dukakis, *Conspiracy theorist becomes key figure as Mueller builds

case*, ABC News (Oct. 31, 2018, 6:39 p.m.), https://abcnews.go.com/Politics/conspiracy-

theorist-key-figure-mueller-builds-case/story?id=58886291 (the "ABC News Article").  With

regard to Mueller's investigation, the article reports that:

> Mueller's interest in Corsi is believed to stem from his alleged
> early discussions about efforts to unearth then-candidate Hillary

---

[8] Corsi has reaffirmed that this count is not brought as a *Bivens* action.  (Pl.'s Opp'n to Mueller's Mot. at 8 n.1.)

[9] In addition to these articles, Corsi refers generally to "a major leak concerning President Donald J. Trump . . . made by Defendant Mueller to BuzzFeed," but he does not contend that it has any relevance to his claims.  (Am. Compl. ¶ 26.)

> Clinton's emails.  The special counsel has evidence that suggests
> Corsi may have had advance knowledge that the email account of
> Clinton's campaign manager, John Podesta, had been hacked and
> that WikiLeaks had obtained a trove of damning emails from it,
> two sources with direct knowledge of the matter told ABC News.

*Id.*  The remainder of the article provides general background information on Corsi.  *See id.*

The second article cited by Corsi reports that Corsi helped to raise $25,000 to pay for an

Alaskan man's cancer treatment by a doctor "who doesn't appear to exist."  Chuck Ross, *Mueller*

*Target Raised $25,000 In Charity To Pay Cancer Doctor Who Doesn't Appear To Exist*, Daily

Caller (Dec. 13, 2018, 10:26 p.m.), https://dailycaller.com/2018/12/13/corsi-mueller-doctor-

cancer/ (the "Daily Caller Article").  With regard to Mueller's investigation, the article notes that

Corsi was subpoenaed by Mueller and states:

> Mueller is interested in Corsi's links to Trump confidant Roger
> Stone and WikiLeaks.  Corsi claimed Mueller wants him to testify
> that he was a link between Stone and WikiLeaks, which on Oct. 7,
> 2016, published emails stolen from Clinton campaign chairman
> John Podesta.

*Id.*  Corsi alleges that the author of this article "told Dr. Corsi that he indeed had obtained

information about this grand jury testimony from persons working under the direction of . . .

Mueller."  (Am. Compl. ¶ 28.)

According to his amended complaint, Corsi seeks only injunctive relief to remedy these

putative violations.  (Am. Compl. ¶ 53.)  At oral argument, plaintiff's counsel asserted that

Count Two names Mueller in both his individual and official capacities.  (Tr. at 21:8–10.)  But

injunctive relief is not available against officials in their personal capacities.  *BEG Invs. v.*

*Alberti*, 34 F. Supp. 3d 68, 80 (D.D.C. 2014) ("Courts have concluded that there is no basis for

suing a government official for declaratory and injunctive relief in his or her individual or

personal capacity." (citations and internal quotation marks omitted)); *see also Hatfill v.*

*Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007) (denying injunctive relief from the defendants

in their individual capacities and reasoning that the relief sought "can only be provided by the government through government employees acting in their official capacities because deprivation of a constitutional right can only be remedied by the government").

Corsi has also failed to show that he is entitled to an injunction against Mueller in his official capacity.  "Injunctive relief is an 'extraordinary and drastic' remedy, which is available only upon an evidentiary showing of 'certain,' 'great,' and imminent harm." *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F. Supp. 3d 73, 79 (D.D.C. 2018) (quoting *Munaf v. Geren*, 553 U.S. 674, 689 (2008), and *Wis. Gas Co.*, 758 F.2d at 674). Mueller's investigation has ended, and the grand jury is no longer in existence.  The only imminent harm he now asserts is a fear of future grand jury leaks, based on his predictions that "[s]tuff [will] start flying out of files again."  (Tr. at 44:22.)  But this speculative harm cannot suffice.

Corsi changed his tune at the hearing, and he now seeks to hold Mueller in civil contempt.  (*Id.* at 21:12.)  While civil contempt is available to remedy violations of Rule 6(e)(2), a plaintiff only has "a very limited right to seek [that relief] through the district court supervising the grand jury." *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1070 (D.C. Cir. 1998) (citation and internal quotation marks omitted); *Finn v. Schiller*, 72 F.3d 1182, 1188 (4th Cir. 1996) (a Rule 6(e) plaintiff "may not proceed by way of a civil action against the alleged violator"); *Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir. 1988) ("[T]here is no such thing as an independent cause of action for civil contempt."); *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 213 (5th Cir. 1980) (allowing the target of a grand jury investigation to bring a complaint before the judge supervising the grand jury); *Camm v. Kennickell*, No. 85-3844, 1990 WL 198621, at *7 (D.D.C. Nov. 20, 1990) (holding that there is no *Bivens* action for a Rule 6(e)

22

violation), *aff'd*, 946 F.2d 1563 (D.C. Cir. 1991) (per curiam).  Plaintiff's counsel acknowledged

the existence of such a procedure and admitted that he attempted to go to Chief Judge Howell,

who supervised the grand jury investigation.  (Tr. at 21:16–21:19, 42:17–42:19.)  According to

plaintiff's counsel, the Chief Judge "never responded to [his] communication," and although he

agreed that he may still file a complaint before her, he claims that doing so will not have any

effect because "nothing works in this town any more [sic] when you are dealing with someone

like Robert Mueller."  (*Id.* at 21:18–21:19, 44:7–44:9.)  To solve this dilemma, he now asks this

Court to either refer the matter to Chief Judge Howell or to find Mueller in contempt.  (*Id.* at

21:13–21:15, 21:23–22:1, 42:3–42:6.)  This Court will not do either; there is an established

procedure for addressing alleged Rule 6(e)(2) violations, and, having failed before the grand jury

judge, Corsi cannot seek relief from this Court.

There is also a serious question as to whether the allegations in Corsi's complaint

constitute a Rule 6(e)(2) violation.  "[A] *prima facie* case of a violation of Rule 6(e)(2) is made

when the media reports disclosed information about 'matters occurring before the grand jury'

*and* indicated that the sources of the information included attorneys and agents of the

Government."  *In re Sealed Case No. 98-3077*, 151 F.3d at 1067 (citation omitted) (emphasis

added).  Moreover, the information disclosed by a prosecutor must "*directly reveal* grand jury

matters."  *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999).  A prosecutor's

statement about her own investigation, rather than a grand jury's investigation, does not

implicate the rule.  *Id.*

The articles cited by Corsi neither "directly reveal grand jury matters," nor indicate that

the source of the information is Mueller or his staff.  The ABC News Article article merely

suggests a reason for Mueller's interest in Corsi and asserts that he has evidence that may prove

a fact but does not reveal what that evidence is.  The article explicitly references Mueller's "case," indicating that the information relates to his investigation and not to the grand jury's investigation.[10]  Moreover, the article does not attribute any information to Mueller or anyone else associated with the grand jury investigation.

Corsi alleges that the Daily Caller Article contains information on matters occurring before the grand jury because it "report[s] . . . that a physician known as Dr. Mendelsohn and others who received cancer treatment by him . . . were subpoenaed to appear before the Mueller grand jury."  (Am. Compl. ¶ 28.)  But this allegation is flatly contradicted by the article, which names only Corsi, and no one else, as having been subpoenaed by the grand jury.  And the article identifies Corsi, not Mueller or his staff, as the source of that information.[11]

### E.  Corsi Cannot Bring Claims for Abuse of Process and Tortious Interference with Business Relationships

Counts Three and Four of Corsi's amended complaint allege abuse of process and tortious interference with business relationships against all defendants.  (*See* Am. Compl. ¶¶ 54–65.)  Specifically, Count Three alleges that defendants "abused and perverted the Court's judicial processes by threatening Plaintiff Corsi with prosecution and prison if he did not provide sworn testimony that Defendants knew to be false . . . ."  (*Id.* ¶ 55.)  He also claims that "Mueller has . .

---

[10] Corsi argues that such a distinction is one without meaning.  (*See* Pl.'s Opp'n to Gov't's Mots. at 9–10, ECF No. 34.)  But the D.C. Circuit disagrees, finding that the distinction between a prosecutor's investigation and that of a grand jury is "a distinction of the utmost significance." *In re Sealed Case No. 99-3091*, 192 F.3d at 1002.

[11] To circumvent this problem, Corsi asks us to rely on his assertion that the author of this article "told Dr. Corsi that he indeed had obtained information about this grand jury testimony from persons working under the direction of Special Counsel Robert Mueller."  (Am. Compl. ¶ 28; *see also* Pl.'s Opp'n to Gov't's Mots. at 9.)  But, as Corsi concedes, whether a plaintiff establishes a *prima facie* violation of Rule 6(e)(2) is "typically . . . based solely on an assessment of news articles submitted by the plaintiff."  (Pl.'s Opp'n to Gov't's Mots. at 9 (quoting *In re Sealed Case No. 98-3077*, 151 F.3d at 1067) (internal quotation marks omitted).)

. abused this Court's grand jury and other legal processes by subpoenaing, without any

reasonable or probable cause, members of Plaintiff's family . . . to appear before the grand jury

and/or to be interviewed by his FBI agents . . . ."  (*Id.* ¶ 57.)  Count Four alleges that defendants

> intentionally and/or negligently tortuously [sic] interfered with
> Plaintiff's existing business relationships by recently threatening
> one or more of these publishers and sellers of his book with a
> subpoena or other legal action and by threatening and intimidating
> and having published and publishing false information [about] Dr.
> David Jones, Alex Jones, InfoWars and Plaintiff Corsi, maliciously
> and falsely claiming that Dr. David Jones, Alex Jones and
> InfoWars was [sic] paying hush money to keep him quiet about
> their actions, with the intent to get them to terminate their business
> relationships with Plaintiff, thus depriving Plaintiff of income to
> pay his legal fees and expenses as well as for him and his family to
> survive generally.

(*Id.* ¶ 63.)

Mueller argues that these claims may not be brought against him because the government

has certified that he was acting within the scope of his employment, and, thus, under 28 U.S.C. §

2679(b)(1), he must be dismissed from the suit.[12]  (*See* Mueller's Mot. at 12–13.)  The

government argues that the claims must be dismissed for lack of subject-matter jurisdiction

because Corsi has not exhausted his administrative remedies, as required by the Federal Tort

Claims Act (the "FTCA"), and the FTCA's waiver of sovereign immunity excludes claims for

---

[12] 28 U.S.C. § 2679(b)(1) provides:

> The remedy against the United States provided by sections 1346(b)
> and 2672 of this title . . . is exclusive of any other civil action or
> proceeding for money damages . . . .  Any other civil action or
> proceeding for money damages arising out of or relating to the
> same subject matter against the employee or the employee's estate
> is precluded without regard to when the act or omission occurred.

abuse of process and tortious interference with business relationships.  (Gov't's 2d Mot. at 3–4.)

The Court agrees.

### 1.  Individual Capacity Claims Against Mueller Must Be Dismissed Due to the Westfall Certification

The Court first considers whether Counts Three and Four may be maintained against

Mueller in his individual capacity.  "The Federal Employees Liability Reform and Tort

Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees

absolute immunity from common-law tort claims arising out of acts they undertake in the course

of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C.

§ 2679(b)(1)).  When a federal employee is sued for a tort, the Westfall Act authorizes the

Attorney General or his designee to certify that the employee "was acting within the scope of his

office or employment at the time of the incident out of which the claim arose."  28 U.S.C.

§ 2679(d)(1), (2); *see also Osborn*, 549 U.S. at 229–30.  In general, "[u]pon the Attorney

General's certification, the employee is dismissed from the action, . . . the United States is

substituted as defendant in place of the employee," and "[t]he litigation is thereafter governed by

the Federal Tort Claims Act."  *Osborn*, 549 U.S. at 230.

Although the Attorney General's certification "constitutes *prima facie* evidence that the

employee was acting within the scope of his employment," a plaintiff may only rebut the

certification and obtain discovery by "alleg[ing] sufficient facts that, taken as true, would

establish that the defendant's actions exceeded the scope of his employment."  *Wuterich v.*

*Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) (citations and internal quotation marks omitted).  In

determining whether a plaintiff has met this burden, this Court looks to the Restatement (Second)

of Agency, *id.* at 383, which provides:

> (1) Conduct of a servant is within the scope of employment if, but
> only if:

(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space
limits;
(c) it is actuated, at least in part, by a purpose to serve the master,
and
(d) if force is intentionally used by the servant against another, the
use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it
is different in kind from that authorized, far beyond the authorized
time or space limits, or too little actuated by a purpose to serve the
master[,]

Restatement (Second) of Agency § 228.  This test has been interpreted broadly, such that it "is

akin to asking whether the defendant merely was on duty or on the job when committing the

alleged tort." *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (citation omitted).  In

determining whether conduct is "of the kind [an employee is] employed to perform," courts must

"focus on the type of act [the defendant] took that allegedly gave rise to the tort, not the wrongful

character of the act."  *Id.* at 221 (citation omitted); *see also Council on Am. Islamic Relations v.

Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) ("The appropriate question, then, is whether that

telephone conversation—not the allegedly defamatory sentence—was the kind of conduct

Ballenger was employed to perform.").

The Attorney General's designee has certified that Mueller was acting within the scope of

his employment at the time Corsi's tort claims arose.  (*See* Mueller's Mot., Ex. A.)  Corsi

contests this certification, arguing that, since Mueller "actively circumvent[ed] grand jury

secrecy provisions and tr[ied] to obtain false sworn testimony from Plaintiff Corsi," his conduct

is not the kind he was employed to perform.[13]  (Pl.'s Opp'n to Mueller's Mot. at 6.)  But

---

[13] Initially, Corsi conceded that "[t]he tortious conduct set forth herein were [sic] also clearly performed within the scope of his office or employment."  (Pl.'s Opp'n to Gov't's Mots. at 12, ECF No. 34.)  When questioned about this statement, plaintiff's counsel first called it a "misquote," but then he said that he is not bound by it and can change his position now.  (Tr. at 25:19–26:9.)

Mueller's or his staff's interactions with Corsi, who was a witness before the grand jury,

certainly qualify as actions taken "on duty or on the job" of Special Counsel.  *See Jacobs*, 724

F.3d at 221–22.  Whether this conduct was wrongful is irrelevant to assessing the propriety of the

certification.  *Id.*

At the hearing, plaintiff's counsel asserted that he is entitled to discovery to determine

whether Mueller was acting within the scope of his employment.  (Tr. at 22:17–22:22, 30:12–

30:16.)  But the sole case he cited in support of this assertion only permits discovery if the

plaintiff first meets his burden of "alleg[ing] sufficient facts that, taken as true, would establish

that the defendant's actions exceeded the scope of his employment."  *Wuterich*, 562 F.3d at 381

(citations and internal quotation marks omitted).  Corsi has not met this burden.

Counts Three and Four are dismissed insofar as they are brought against Mueller, and the

United States is substituted as the sole defendant under the FTCA.

### 2. The Tort Claims Fail Against the Government Under the FTCA

Corsi's claims against the government fail because he did not comply with the FTCA's

exhaustion requirement.  Under that requirement,

> [a]n action shall not be instituted upon a claim against the United
> States for money damages for injury or loss of property or personal
> injury or death caused by the negligent or wrongful act or omission
> of any employee of the Government while acting within the scope
> of his office or employment, *unless the claimant shall have first
> presented the claim to the appropriate Federal agency and his
> claim shall have been finally denied by the agency in writing and
> sent by certified or registered mail.*

28 U.S.C. § 2675(a) (emphasis added).  Moreover, this administrative exhaustion is a

"jurisdictional prerequisite to the maintenance of a tort suit against the United States."  *GAF*

*Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987); *see also Smith v. Clinton*, 886 F.3d

122, 127 (D.C. Cir. 2018).

Corsi does not contend that he has satisfied this requirement.  Instead, he argues that his claims fall under a supposed exception to the exhaustion requirement "where any resort to administrative remedies would have been futile."  (Pl.'s Opp'n to Gov't's Mots. at 10–11, ECF No. 34 (quoting *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 49 (D.D.C. 2005) (alteration and internal quotation marks omitted)).)  However, his only citation is inapposite, for *Johnson* discusses the exhaustion requirement in the context of a different law—the District of Columbia Comprehensive Merit Personnel Act.  *See* 368 F. Supp. 2d at 39–40.  By contrast, the FTCA's exhaustion requirement is jurisdictional and cannot be waived.  *See Chien v. United States*, No. 17-2334 (CKK), 2019 WL 4602119, at *8 (D.D.C. Sept. 23, 2019) ("[A] court may not waive the FTCA's exhaustion requirement on equitable grounds." (citing *Hohri v. United States*, 782 F.2d 227, 245–46 (D.C. Cir. 1986), *rev'd on other grounds*, 482 U.S. 64 (1987)); *Smith v. Clinton*, 253 F. Supp. 3d 222, 238 (D.D.C. 2017) (holding that "the FTCA's exhaustion requirement is jurisdictional and cannot be excused" and stating that futility applies only to non-jurisdictional exhaustion), *aff'd*, 886 F.3d 122 (D.C. Cir.), *cert. denied*, 139 S. Ct. 459 (2018).

In addition, these counts are subject to dismissal for lack of jurisdiction because the FTCA's limited waiver of sovereign immunity does not apply to the claims stated in Counts Three and Four.  That waiver excepts "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, *abuse of process*, libel, slander, misrepresentation, deceit, or *interference with contract rights*."  28 U.S.C. § 2680(h) (emphasis added).  Both Corsi's claims for abuse of process and tortious interference with business relationships are clearly covered by this language.  *See Moore v. United States*, 213 F.3d 705, 713 n.7 (D.C. Cir. 2000) ("[T]he actions of a prosecutor cannot give rise to an abuse-of-process claim under the FTCA."); *Wagdy v. Sullivan*, No. 16-2164, 2018 WL 2304785, at *2 (D.D.C.

May 18, 2018) (plaintiff's claim for tortious interference with business relations is barred by §

2680(h) "because tortious interference with business or economic relations is a claim 'arising out

of . . . interference with contract rights'"); *see also Art Metal-U.S.A., Inc. v. United States*, 753

F.2d 1151, 1153–55 (D.C. Cir. 1985) (claims for interference with prospective advantage were

"barred as claims arising out of interference with contract rights").

     Corsi does not contest the conclusion that Counts Three and Four fall within the above-

quoted language from § 2680(h).  Instead, he argues that they fall within an exception-to-the-

exception from the government's waiver of sovereign immunity contained within that provision,

which allows claims "arising . . . out of assault, battery, false imprisonment, false arrest, abuse of

process, or malicious prosecution" to proceed "with regard to the acts or omissions of

investigative or law enforcement officers of the United States Government."  (*See* Pl.'s Opp'n to

Gov't's Mots. at 11–12.)

     Corsi's argument fails.  First, Corsi ignores the fact that claims arising out of interference

with contract rights are not included in the list of claims that may proceed if involving the acts or

omissions of an investigative or law enforcement officer.  Second, the law is clear that Mueller is

not an investigative or law enforcement officer as defined by § 2680(h).[14]  28 C.F.R. § 600.6

states that a Special Counsel has "the full power and independent authority to exercise all

investigative and prosecutorial functions of any United States Attorney."  And, this Circuit has

held that United States Attorneys are not "investigative or law enforcement officers" as defined

by § 2680(h).  *See Moore*, 213 F.3d at 710, 713 n.7.  As a result, neither of Corsi's claims falls

under the "investigative or law enforcement officer" proviso of § 2680(h).

---

[14] Section 2680(h) defines "investigative or law enforcement officer" as "any officer of the
United States who is empowered by law to execute searches, to seize evidence, or to make
arrests for violations of Federal law."

For these reasons, Counts Three and Four of Corsi's amended complaint will be dismissed with prejudice.[15]

## II.     CORSI'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Although the Court will dismiss the four counts in Corsi's amended complaint, he seeks leave to file a second amended complaint.  Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires."  But "[c]ourts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  The Court must therefore evaluate Corsi's motion under Rule 12(b)(6) standards.  *See United States v. All Assets Held at Bank Julius*, 229 F. Supp. 3d 62, 70 (D.D.C. 2017) (citing *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 223–24 (D.C. Cir. 2012)).

Corsi's proposed second amended complaint alleges a First Amendment retaliation claim against Mueller under *Bivens*.  This is the only change from the first amended complaint.  This new count is based entirely on facts set forth in the first amended complaint.  (*See* Am. Compl. ¶¶ 20, 22–23, 55–56.)  Specifically, the first amended complaint alleges that "Defendant Mueller and his prosecutorial staff have demanded that Plaintiff Corsi falsely testify under oath that he acted as a liaison between Roger Stone and Wikileaks leader Julian Assange concerning the public release of emails obtained from the DNC's servers."  (*Id.* ¶ 23.)  Corsi claims that

---

[15] This count is being dismissed with prejudice even though the Court lacks subject matter jurisdiction because "[a]bsent any waiver [of sovereign immunity], such claims must be dismissed with prejudice."  *Superior Fibre Prods., Inc. v. Dep't of the Treasury*, 156 F. Supp. 3d 54, 63 (D.D.C. 2016) (citing *Sloan v. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001)); *see also Nations v. United States*, No. 14-cv-00618, 2015 WL 1704195, at *2 (D.D.C. Apr. 15, 2015) (dismissing tort claims with prejudice where sovereign immunity was not waived and citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)); *Menifee v. Dep't of the Interior*, 931 F. Supp. 2d 149, 162 (D.D.C. 2013) (same).

"Defendant Mueller has threatened to indict Plaintiff Corsi and effectively put him in federal prison for the rest of his life unless Plaintiff Corsi would provide [that testimony], even after being informed that the testimony desired would be false." (*Id.* ¶ 22.) Corsi does not identify in his complaint the offense for which he was allegedly threatened to be indicted.

At the hearing, plaintiff's counsel acknowledged that, to the best of his knowledge, Corsi had never met Mueller and any alleged threats were conveyed to Corsi by the prosecutors in his office, not by Mueller. (Tr. at 6:4–6:21.) Counsel also acknowledged that Corsi gave the *Washington Post* a copy of the plea papers that had been presented to him by the prosecutors as part of the plea negotiations.[16] (Tr. at 17:6–18:4.) Corsi concedes that he never testified falsely, he declined to enter the plea agreement, he was never indicted, and Mueller's investigation has been concluded. (Tr. at 53:3–53:10.) Further, plaintiff's counsel was asked if there was any additional evidence, besides Corsi's assertion that he told the prosecutors it was false, to support his claim that the defendant knew the testimony the prosecutors were requiring him to provide to get a favorable plea deal was false. Counsel first responded, "that's enough," but he later added that the prosecutors knew that Corsi was not an intermediary because Corsi had turned over all his emails and text messages. (Tr. at 36:6–36:23, 40:3–40:18, 51:21–52:1.)

As set forth in the proposed second amended complaint, Corsi claims that Mueller engaged in a retaliatory violation of his First Amendment rights. Corsi alleges that he "engaged in constitutionally protected speech and/or activity by testifying truthfully and giving an accurate account of the events related to Defendant Mueller's Russian collusion investigation to the best

---

[16] With the agreement of the parties, the Court admitted as Exhibit A at the hearing a draft Information charging an 18 U.S.C. § 1001 count relating to allegedly false statements made on September 10, 2018, to "the Special Counsel's Office, including Special Agents of the Federal Bureau of Investigation;" a Statement of the Offense; and a proposed plea agreement. (Hr'g, Ex. A, Information at 1.)

of his personal knowledge and belief." (2d Am. Compl. ¶ 50, ECF No. 41-1.)  He claims that

"[a]s a direct and proximate result of [this], Plaintiff Corsi was threatened with indictment

because he did not testify falsely and provide information that Defendant Mueller wanted."  (*Id.*

¶ 51.)  He also alleges that "Defendant Mueller formed a retaliatory motive and threatened

Plaintiff Corsi with indictment because he was exercising his First Amendment rights."  (*Id.* ¶

52.)

     For the reasons set forth below, the Court will deny the motion to amend on the grounds

that the amendment would be futile.

### A.  Corsi Fails to State a Claim for First Amendment Retaliation

### 1.  Corsi's Speech Was Not Adversely Affected

     Few courts have recognized First Amendment retaliation claims under *Bivens*.  In support

of his contrary position, Corsi principally relies on a 2001 Fourth Circuit case—*Trulock v.*

*Freeh*, 275 F.3d 391 (4th Cir. 2001).  In *Trulock*, the plaintiff claimed that the defendants

violated his First Amendment right to free speech by conducting a retaliatory warrantless search

of his residence and computer after he wrote an article that was highly critical of the FBI.  *Id.* at

397–99.  The court set forth the elements of a claim for First Amendment retaliation:  "[A]

plaintiff must prove . . . (i) that his speech was protected; (ii) that the defendant's alleged

retaliatory action adversely affected his constitutionally protected speech; and (iii) that a causal

relationship existed between his speech and the defendant's retaliatory action."  *Id.* at 404

(citation omitted).  The D.C. Circuit has recognized similar elements.  *See Doe v. District of*

*Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015).

     Even assuming he engaged in protected speech by testifying before a grand jury pursuant

to subpoena, Corsi cannot satisfy the second element—that the defendant engaged in retaliatory

action that adversely affected his protected speech.  The alleged retaliatory action was a threat of

indictment, but Corsi was not indicted.  And, although a "[f]ear of retaliation may chill an

individual's speech," there was no chill here.  *Trulock*, 275 F.3d at 404.  Corsi did not change his

testimony or enter a plea.  Instead, he spoke "openly" with the press "about his dealings with the

special counsel," and he provided reporters with the proposed plea papers that had been given to

him by the prosecutors.  Sharon LaFraniere & Maggie Haberman, *Roger Stone Sought*

*WikiLeaks' Plans Amid 2016 Campaign, Associate Says*, N.Y. Times (Nov. 27, 2018),

https://www.nytimes.com/2018/11/27/us/politics/jerome-corsi-roger-stone-wikileaks.html; *see*

*also* Carol D. Leonnig, Rosalind S. Helderman, & Manuel Roig-Franzia, *Corsi provided early*

*alert to Stone about WikiLeaks release, according to draft special counsel document*, The Wash.

Post (Nov. 27, 2018, 7:44 p.m.), https://www.washingtonpost.com/politics/corsi-provided-early-

alert-to-stone-about-wikileaks-release-according-to-draft-special-counsel-

document/2018/11/27/9cb68b06-f28e-11e8-80d0-f7e1948d55f4_story.html.  Thus, any threat did

not adversely affect his constitutionally protected speech.[17]  *See Hatfill v. Ashcroft*, 404 F. Supp.

2d 104, 118–19 (D.D.C. 2005) (plaintiff failed to show that his First Amendment rights were

chilled where he "continued to fully exercise his . . . right to comment on the investigation and

seek redress for alleged wrongs that ha[d] purportedly been committed in the course of the

investigation"); *see also Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a

party can show no change in his behavior, he has quite plainly shown no chilling of his First

Amendment right to free speech."); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (lack of

---

[17] At the hearing, plaintiff's counsel asserted that Corsi "seriously consider[ed] caving" to the
alleged demands of the prosecutors.  (Tr. at 55:1–2.)  But, "[a]llegations of a subjective 'chill'
are not an adequate substitute for a claim of specific present objective harm."  *Laird v. Tatum*,
408 U.S. 1, 13–14 (1972).

change in plaintiff's behavior "offer[ed] some evidence that" the alleged retaliatory action did

not affect his constitutionally protected speech).

### 2. Corsi Does Not Claim Prosecutors Lacked Probable Cause to Indict Him

Corsi also fails to state a claim for retaliatory prosecution because he does not allege that

the prosecutors lacked probable cause to indict him.  "[A] plaintiff in a retaliatory-prosecution

action must plead and show the absence of probable cause for pressing the underlying criminal

charges."  *Hartman v. Moore*, 547 U.S. 250, 256–57 (2006).  Neither Corsi's amended complaint

nor his proposed second amended complaint alleges an absence of probable cause underlying the

threatened false statement charge.  When asked his position on this issue at the hearing,

plaintiff's counsel responded that probable cause "has nothing to do with this case," and the

Court is "not here to litigate whether there was probable cause."  (Tr. at 19:22–20:1.)  Because

he does not provide facts to permit an inference of an absence of probable cause for the draft

Information and Statement of the Offense, he fails to state a retaliatory prosecution claim.[18]

### B.  There Is No Basis to Extend *Bivens*

Courts follow a two-part test when asked to extend a *Bivens* remedy in a particular case.

First, a court must determine whether the plaintiff seeks the remedy in a new context.  A new

*Bivens* context arises when a case differs "in a meaningful way from previous *Bivens* cases

decided by" the Supreme Court.  *Abassi*, 137 S. Ct. at 1859.  If no new context is presented, then

---

[18] Corsi's proposed *Bivens* claim would also be subject to dismissal under Rule 12(b)(6) because he relies on *respondeat superior* to hold Mueller liable.  As previously discussed, *respondeat superior* is not a viable basis for holding a supervisor liable in a *Bivens* action.  *See supra* at Section I.C.2. (citing *Iqbal*, 556 U.S. at 676, and *Simpkins*, 108 F.3d at 369).  Plaintiff's counsel admitted that Corsi had never met Mueller and only interacted with prosecutors in Mueller's office.  (Tr. at 6:4–6:21.)  Also, Corsi's proposed amended complaint lacks facts upon which to infer that Mueller instructed his subordinates to threaten Corsi.  Again, this is insufficient under *Iqbal*, 556 U.S. at 676.

the claim is cognizable.  On the other hand, if a plaintiff asserts *Bivens* in a new context, the court must determine whether "special factors" exist that "counsel[] hesitation in the absence of affirmative action by Congress."  *Id.* at 1857 (citation and internal quotation marks omitted).

### 1.  Corsi's First Amendment Retaliation Claim Is Novel

Corsi's First Amendment retaliation claim attempts to apply *Bivens* to a new context. First, and perhaps most importantly, the Supreme Court has never recognized a *Bivens* action for any First Amendment violation.  *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.").  And to the extent it has addressed retaliation claims, it has declined to extend the remedy.  *See Wilkie*, 551 U.S. at 561–62 (denying a *Bivens* remedy for claims of retaliation for the exercise of property rights); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to a claim that the plaintiff, a federal employee, was demoted because he exercised his First Amendment rights).  Even more to the point, the Supreme Court has suggested that a claim of "retaliatory investigation with a view to promote prosecution" is not a cognizable constitutional tort, let alone a cognizable claim under *Bivens*. *Hartman*, 547 U.S. at 262 n.9 ("No one here claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort. . . .  Whether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation is not before us.").

When asked to name a case that recognized a *Bivens* action for a mere threat of prosecution in retaliation for an exercise of First Amendment rights, plaintiff's counsel stated that he "suspect[s] there are cases out there," but that this may be "a case of first impression." (Tr. at 32:16–32:17.)  Alternatively, he urged that Corsi's claim does not present a new *Bivens* context "if you put together *Bivens*" with other cases in which the remedy was extended.  (*Id.* at

32:4–32:15.)  The cases he cites, however, are distinguishable.  The plaintiffs in those cases had

been the subject of an actual prosecution or enforcement action, rather than the subject of an

unrealized threat.  *See Hartman*, 547 U.S. at 253–57 (assuming, without deciding, the existence

of a First Amendment retaliatory prosecution claim where the plaintiff was prosecuted and

eventually acquitted); *Fields v. Wharrie*, 740 F.3d 1107, 1109 (7th Cir. 2014) (allowing a § 1983

claim against state prosecutors to proceed where the plaintiff had been wrongly convicted of two

murders based on evidence manufactured by the defendants);[19] *Haynesworth v. Miller*, 820 F.2d

1245, 1255–57 (D.C. Cir. 1987) (extending *Bivens* where the alleged retaliatory action was an

indictment for disorderly conduct), *abrogated on other grounds*, *Hartman*, 547 U.S. 250 (2006);

*Loumiet v. United States*, 292 F. Supp. 3d 222, 225–26 (D.D.C. 2017) (extending *Bivens* where a

baseless enforcement proceeding was brought against the plaintiff in retaliation for the exercise

of his First Amendment rights); *see also Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007)

("[D]amages actions have been permitted under the First Amendment against federal officials

who *instituted criminal prosecutions* in retaliation for the exercise of protected speech rights."

(emphasis added)).[20]  Therefore, Corsi seeks a *Bivens* remedy in a new context, and a special

factors analysis is warranted.

---

[19] *Wharrie* was not a *Bivens* action, so there was no need to determine whether *Bivens* should be extended to a new context.

[20] Corsi also relies upon *Trulock*, in which the plaintiff alleged that federal officers retaliated against him by conducting a warrantless search of his home and his computer for writing an article criticizing certain government actions.  275 F.3d at 397–99.  Unlike this case, Trulock was not the subject of a criminal prosecution or a grand jury investigation, and there was no threat of indictment.  Rather, the FBI agents allegedly undertook a warrantless search in retaliation for plaintiff's exercise of his First Amendment rights.  The district court had dismissed the case on Rule 12(b)(6) grounds, and the Fourth Circuit reversed to allow the *Bivens* claim to proceed.  *Id.* at 399, 406.  But in doing so, neither the district court nor the Fourth Circuit conducted a *Bivens* analysis.  Instead, the Fourth Circuit's analysis centered on qualified immunity, which it held did not apply because the defendants "d[id] nothing more than offer their bald assertions that they are entitled to qualified immunity."  *Id.* at 406.  *Trulock* also pre-

## 2. Special Factors Counsel Against Recognizing a *Bivens* Action

Corsi's First Amendment claim implicates special factors that demonstrate that Congress, not the courts, should decide whether a damages remedy for retaliatory threat of prosecution should be recognized.   First, recognition of Corsi's novel claim would violate the separation of powers doctrine by "burdening and interfering with the executive branch's investigative and prosecutorial functions."  *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (citing *Abbasi*, 137 S. Ct. at 1861); *see also Clinton v. Jones*, 520 U.S. 681, 701 (1997) ("[T]he separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." (citation and internal quotation marks omitted)).  The recognition of a *Bivens* remedy for retaliatory threats of prosecution could cause the judiciary to have to supervise situations where a prosecutor indicates that an individual may be indicted if he or she does not provide desired testimony.

Relatedly, allowing such a claim would interfere with the well-recognized principle that prosecutorial discretion is not subject to judicial review.  *Wayte v. United States*, 470 U.S. 598, 607–08 (1985) ("[T]he decision to prosecute is particularly ill-suited to judicial review."); *In re Sealed Case No. 97-3025*, 131 F.3d at 214 ("[T]he exercise of prosecutorial discretion . . . has long been held presumptively unreviewable.").  The judiciary's deference to prosecutors stems from concerns that judicial oversight would "delay[] the [underlying] criminal proceeding,

---

dated *Abbasi*, in which the Supreme Court warned that extending *Bivens* is "disfavored." *Abbasi*, 137 S. Ct. at 1857 (citation and internal quotation marks omitted).

   Plaintiff's counsel also cited *Navob-Safavi v. Broadcasting Board of Governors*, in which this Court recognized a *Bivens* claim where the plaintiff, a federal contractor, alleged that she was terminated for exercising her First Amendment rights.  650 F. Supp. 2d 40, 76 (D.D.C. 2009). Because that case involved a retaliatory employment action, rather than a retaliatory threat of prosecution, it does not follow that *Navob* supports Corsi's argument that *Bivens* applies to pre-indictment plea negotiations.

threaten[] to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, . . . undermine prosecutorial effectiveness by revealing the Government's enforcement policy," "cause an official to second-guess difficult but necessary decisions," "impair intelligence gathering[,] and cause sources to close up like a clam." *Wayte*, 470 U.S. at 607; *Abbasi*, 137 S. Ct. at 1861; *Wilson*, 535 F.3d at 710 (quoting *Tenet v. Doe*, 544 U.S. 1, 11 (2005)) (internal quotation marks omitted).

Allowance of Corsi's claim could also overwhelm prosecutors with *Bivens* actions, thereby affecting their ability to perform their duties.  Prosecutors would risk subjecting themselves to personal liability each time they indicate to a potential defendant that they may indict him or her, since such an indication could be construed as a "threat."  And would-be defendants might be *encouraged* to bring *Bivens* actions based on a putative threat, since doing so could prove advantageous in plea negotiations.  "[T]he burden and demand of litigation" that would result from an extension of *Bivens* in this instance "might well prevent [prosecutors] . . . from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860.

Moreover, application of *Bivens* to threats of prosecution would create line-drawing problems that the courts are ill-equipped to handle.  Specifically, plaintiffs could challenge legitimate plea offers on the basis that a prosecutor "demanded too much and went too far." *Wilkie*, 551 U.S. at 557.  But "[a] 'too much' kind of liability standard . . . can never be as reliable a guide to conduct and to any subsequent liability as a 'what for' standard, and that reason counts against recognizing freestanding liability in a case like this." *Id.*  This is especially true where the challenged conduct—in this instance, plea bargaining—is considered a "legitimate tactic[] designed to improve the Government's negotiating power." *Id.*

Finally, recognition of Corsi's claim could threaten the practice of plea bargaining, which is an "important component[] of this country's criminal justice system." *Bordenkircher v. Hayes*, 434 U.S. 357, 361 (1978) (holding that the Fourteenth Amendment's Due Process Clause is not violated when a "prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged"). Indeed, in 2012, "[n]inety-seven percent of federal convictions . . . [we]re the result of guilty pleas," and the Supreme Court has hesitated to create rules "that would drive the practice of plea bargaining . . . into the shadows." *Missouri v. Frye*, 566 U.S. 134, 143 (2012); *Bordenkircher*, 434 U.S. at 365. An extension of *Bivens* here could do just that by encouraging prosecutors to avoid plea bargaining so as to minimize the risk of being sued in their personal capacities.

Because these special factors counsel against extending *Bivens* to this new context, the Court concludes that Corsi cannot bring a First Amendment retaliation claim under *Bivens*.

### C.  Mueller Is Entitled to Qualified Immunity

In the alternative, Corsi's claim would be barred by qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate.'" *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (quoting *Reichle*, 566 U.S. at 664). The allegedly violated right must

be defined "narrowly" so that it "fit[s] the factual pattern confronting the officers." *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015). The party asserting the existence of the right at issue—in this case, Corsi—"has the burden to show that the particular right in question . . . was clearly established for qualified immunity purposes." *Daugherty*, 891 F.3d at 390 (citation and internal quotation marks omitted).

But, as noted before, "simply conducting a retaliatory investigation with a view to promote a prosecution" has not been recognized as a constitutional tort. *Hartman*, 547 U.S. at 262 n.9; *see supra* at Section II.B.1. Indeed, the Supreme Court has expressed skepticism that such a tort should be cognizable. *See Hartman*, 547 U.S. at 262 n.9. Given *Hartman*'s acknowledgement that such a right has not been recognized and the lack of any authority among lower courts extending such a right to preindictment plea negotiations, there is no basis to argue that such a right was clearly established.[21] *See Pitt v. District of Columbia*, 491 F.3d 494, 511–12 (D.C. Cir. 2007).

Corsi's proposed amendment to his complaint would be futile, and, therefore, the Court will deny him leave to amend.

---

[21] While this Court does not rest on absolute immunity, it notes that the Tenth Circuit, in an opinion authored by now-Justice Gorsuch, found that absolute immunity "extends to 'conditional prosecutorial decisions,' which provisionally withhold charges in exchange for a quid pro quo, so long as the threat of prosecution is not tied to a demand 'manifestly or palpably beyond [the prosecutor's] authority.'" *Blazier v. Larson*, 443 F. App'x 334, 336 (10th Cir. 2011) (Gorsuch, J.) (quoting *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989)) (the plaintiff sued the prosecutor for a threatened prosecution where the prosecutor dropped charges of harming a victim but threatened to reinitiate the criminal proceedings if the plaintiff did not cease his online campaign against the victim).

## CONCLUSION

For the reasons stated above, the Court will grant defendants' motion to dismiss and deny plaintiff's motion for leave to amend his complaint.  A separate Order accompanies this Memorandum Opinion.


ELLEN S. HUVELLE
United States District Judge


Date:   October 31, 2019